IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

**No. 25-2860**

---

KYLE BEATTY,
Appellant

v.

CLINTON GARDNER and CALVIN IRVIN
Appellees

---

**BRIEF OF APPELLANT and APPENDIX**

---

Appeal from Order, Decision, and Judgment entered
in the United States District Court for the Middle District of Pennsylvania
at No. 4:23-CV-00364-KMN on August 29, 2025

---

Joshua J. Cochran, Esquire
Pa. I.D.# 206807
Attorney for Appellant
333 Market Street
Williamsport, PA 17701
Telephone: (570) 321-7554
Email: josh@sz-law.com

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........................................... iii

STATEMENT OF JURISDICTION .................................... 1

STATEMENT OF ISSUES ............................................ 2

STATEMENT OF RELATED CASES AND PROCEEDINGS ........ 3

STATEMENT OF THE FACTS ....................................... 4

SUMMARY OF ARGUMENT ......................................... 11

ARGUMENT ......................................................... 12

CONCLUSION ....................................................... 31

CERTIFICATE OF MEMBERSHIP .................................. 32

CERTIFICATE OF WORD COUNT ................................. 33

CERIFICATE OF IDENTICAL FILING ............................. 34

CERTIFICATE OF VIRUS CHECK ................................. 35

APPENDIX

    Docket Entries      Appx 1-5
    Notice of Appeal    Appx 6-7
    Memorandum and Order August 29, 2025 Appx 8-29

CERTIFICATE OF SERVICE ......................................... 36

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218
    (3rd Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12,18,20,25

Doe v. Groody, 361 F.3d 232, 238 (3rd Cir. 2004) . . . . . . . . . . . . .   23,24

Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3rd Cir. 2004) . . .   27

Halsey, 750 F.3d at 288 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

Hartman v. Moore, 547 U.S. 250, 256 (2006) . . . . . . . . . . . . . . .   27,29

Harvard v. Cesnalis, 973 F.3d 190, 199 (3d Cir. 2020) . . . . . . . . .   13,14

Irving v. Chester Water Auth., 439 F. App'x 125, 127
    (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17,28

Mack v. Yost, 63 F.4th 211, 233 (3d Cir. 2023)(emphasis added) . . .   22,29

Navarette v. California, 572 U.S. 393, 396, 134 S. Ct. 1683, 1687,
    188 L. Ed. 2d 680 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . .   19

Nieves v. Bartlett, 587 U.S. 391, 401 (2019) . . . . . . . .   27, 29

Palardy v. Township of Milburn, 906 F.3d 76, 80-81 (3rd Cir. 2018). .   27

Pearson v. Callahan, 555 U.S. 223, 244 (2009) . . . . . . . . . . . . . . .   21

Reichle v. Howards, 566 U.S. 658 (2012) . . . . . . . . . . . . . . . . . . .   29

Saucier v. Katz, 533 U.S. 194, 202 (2001) . . . . . . . . . . . . . . . . . .   22

Terry v. Ohio, 392 U.S. 1, 32 (1968) . . . . . . . . . . . . . . . . . . . . . .   23

Thomas v. City of Harrisburg, 88 F.4th 275, 284 (3d Cir. 2023) . . .    22,29

United States v. Broomfield, 417 F.3d 654, 655 (7th Cir. 2005)
        (emphasis added) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19

United States v. Kithcart, 134 F.3d 529, 531 (3d Cir. 1998) . . . . .    14

Ybarra v. Illinois, 444 U.S. 85, 94-96 (1979) . . . . . . . . . . . . . .    23, 24

**STATUTES**

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

## <u>STATEMENT OF JURISDICTION</u>

The Third Circuit Court of Appeals has jurisdiction of this appeal under 28 U.S.C. § 1291.    The Notice of Appeal was filed September 23, 2025, following the grant of summary judgment entered in the police officers' favor, in the United States District Court for the Middle District of Pennsylvania, by the Honorable Keli M. Neary, on August 29, 2025.

## STATEMENT OF THE ISSUES

1.  Did the trial court err by disregarding and discounting Kyle Beatty's evidence, facts, and inferences, disregarding the standard and scope of review, and committing legal errors granting summary judgment for the police officers because no probable cause supported the arrest and the search incident to the arrest. This issue was raised in the Complaint and at summary judgment.

2.  Did the trial court err by discounting Kyle Beatty's evidence, facts, and inferences, disregarding the standard of review, and committing legal errors granting summary judgment for the police officers finding reasonable suspicion for the stop. This issue was raised in the Complaint and at summary judgment.

3.  Did the trial court err by granting summary judgment for the police officers on qualified immunity for unreasonable strip search. This issue was raised in the Complaint and documents opposing summary judgment.

4.  Did the trial court err in granting by disregarding and discounting Kyle Beatty's evidence, facts, and inferences, disregarding the standard and scope of review, and committing legal errors granting summary judgment for the police officers on First Amendment retaliation. This issue was raised in the Complaint and at summary judgment.

## **STATEMENT OF RELATED CASES AND PROCEEDINGS**

This case has not been before this Court on any prior date.

## STATEMENT OF THE FACTS

The material facts in this matter demonstrate the following scenario. In the early afternoon of August 31, 2021, Kyle Beatty, and his girlfriend, Ms. Lopez, got into her vehicle to run errands in Williamsport, which included a state representative's office and later a dress store. Appx613-615, 622-623. While Ms. Lopez was inside the dress store, Beatty saw Gardner, a Williamsport police officer, and Irvin, a Lycoming County detective, drive past him very slowly and look him over closely before driving off. Appx616-617.   Ms. Lopez left the dress shop and Beatty drove west on 4th Street, discussing eating lunch in western Williamsport.   Appx617-618. Mr. Beatty suggested that they should go east where there was more variety of restaurants, so they turned right on 6th Street and drove towards the intersection of High Street to turn right and drive east.   Appx618-619. As he stopped at a stop sign at 6th Street and High Street, the officers pulled up opposite on High Street before making a U-turn and following closely behind as he drove east.   Appx619-620.   Mr. Beatty told Ms. Lopez that "we'll be fine" because "we didn't do anything" and drove east with the officers following for many blocks until Mr. Beatty pulled the car into the Turkey Hill convenience store along Washington Boulevard and parked at the fuel pumps, entering the store to purchase a drink and gas.   Appx620-621, 624-625.   During the drive, Mr. Beatty committed no vehicle

code violations or other crimes.   Appx839, 916-917, 944.

The officers parked alongside the parked vehicle, Gardner exited the cruiser, approached the car, and reached through the open window and down into the space between the seat and the steering wheel with his flashlight to illuminate the interior of the vehicle so he could see inside. Appx604. Exhibit A (videos), video 1, at 19-22; video 2, at 1:00-1:08; video 3, at :17-20, 8:40-8:46.   Ms. Lopez exited the store with a water she purchased and the officers intercepted her, detaining her near her car for alleged "marijuana in the car". Appx604.   Exhibit A (videos), video 1, at 0:30- 0:40, video 3, at 0:30-0:52. There was no marijuana, joint, flakes, paraphernalia, or other drugs or residue within the vehicle, no marijuana had been smoked in the car, and no "odor of marijuana coming from the vehicle." Appx604. Exhibit A (videos); Exhibit B, at 25:11-27:1; Exhibit F (Receipt Inventory of Property Seized); Exhibit G, at 8:10-9:7.   Gardner entered the store, detained, and searched Mr. Beatty, who was approaching the register to buy a soda. Appx604. Exhibit A (videos), video 1, at 0:40-1:20.   Gardner then took Plaintiff out to the car and placed him on the hood of the vehicle, while openly lying that he wanted "to talk about the roach and weed in your car." Appx604.   Exhibit A (videos), video 1, at 0:40-1:20. When Ms. Lopez flatly denied having marijuana in the car, Gardner lied again, claiming to have observed a roach in the driver's side cup

holder and "scraps of bud on the driver's floor". Appx604.   Exhibit A (videos), video 1, at 1:20-1:35.   There was no marijuana, joint, flakes, paraphernalia, or other drugs or residue within the vehicle, and no "odor of marijuana coming from the vehicle." Appx604, 630-632, 961, 970-971.

Gardner then informed Beatty and Ms. Lopez that they had two options: (1) they could give consent to search the car or (2) he could tow the car and apply for a search warrant. Appx604. Exhibit A (videos), video 1, at 1:40-1:50. They agreed to permit a search of the vehicle since they had done nothing wrong, were trying to placate the officers, and hoped to be released from police custody as quickly as possible to continue their day. Appx604, 628.   Exhibit A (videos), video 1, at 1:40-1:50.   Ms. Lopez said, "There is literally nothing in it." Appx604. Exhibit A (videos), video 1, at 1:45- 1:55.   Mr. Beatty attempted to step away from the car while the officers searched it, but Gardner physically pushed him back on the hood of the car. Appx604.   Exhibit A (videos), video 1, at 1:50-2:00. Instead of searching the car for the "roach" and "weed" the officers had lied about, they asked Mr. Beatty if he had an I.D. on him, and he stated that he had not done anything wrong.   Appx604. Exhibit A (videos), video 1, at 2:00-2:17.   Mr. Beatty suggested to Ms. Lopez that she not let them search the car. Appx604.   Exhibit A (videos), video 1, at 2:00-2:18.   Immediately, Gardner and Irvin arrested Beatty by

seizing him physically and handcuffing him and Ms. Lopez. Appx604.   Exhibit A (videos), video 1, at 2:00-2:40.   Mr. Beatty and Ms. Lopez again denied doing anything wrong *seven* more times. Appx604. Exhibit A (videos), video 1, at 2:15-2:45.   Fearing for his safety, Mr. Beatty conversationally requested bystanders to record police actions. Appx604.   Exhibit A (videos), video 1, at 2:40-2:45.

The officers placed Mr. Beatty and Ms. Lopez against the hood of the car and requested additional officers despite their peaceful demeanors. Appx604. Exhibit A (videos), video 1, at 2:40-3:05. Ms. Lopez requested a sergeant and a female police officer be provided, a request that further angered the officers. Appx604. Exhibit A (videos), video 1, at 2:55-3:15.   Mr. Beatty and Ms. Lopez again stated their innocence five additional times, to which Irvin threatened to place them into the police vehicle. Appx604.   Exhibit A (videos), video 1, at 3:10-3:25.   Ms. Lopez, who was handcuffed, began to pace slowly back and forth in front of the car when Gardner physically seized her and forcefully put her on the hood of the vehicle again. Appx604. Exhibit A (videos), video 1, at 3:15-3:30. Mr. Beatty, still handcuffed, then stood up and in a conversational tone, asked the officers to stop touching Ms. Lopez, before adding again, conversationally, "you're real tough." Appx604. Exhibit A (videos), video 1, at 3:30-3:45.   Immediately, at Gardner's instruction, Irvin seized Beatty forcefully and slammed him face first on

–7–

the hood of the car, conducting a second and invasive search of his person, including reaching into his pockets and groin area and seizing all possessions on his person. Appx604. Exhibit A (videos), video 1, at 3:40-4:05, video 3, at 3:30-4:30. Irvin told Mr. Beatty, "It's not you. You're being cool, okay." Appx604. Exhibit A (videos), video 3, at 4:00-4:05.   Mr. Beatty emphasized again, "There's nothing in the car, Dude, I'm telling you." Appx604. Exhibit A (videos), video 3, at 4:00-4:25.   To which Irvin then agreed, "*And there very well may not be*." Appx604. Exhibit A (videos), video 3, at 4:00-4:15 (emphasis added).    Ms. Lopez then expressed her exasperation at the situation, "You all are going to look so fucking stupid when you find no fucking weed on me," continuing to deny any drug materials in her vehicle.   Appx604.   Exhibit A (videos), video 1, at 3:40-4:15, video 3, at 3:30-4:40.    Mr. Beatty then stated, "If you say there is a roach in there, that might be the most that you will find in there.   I'm saying if you see one." Appx604. Exhibit A (videos), video 3, at 4:00-4:15.    To which Ms. Lopez then added if somehow the officers were seeing a roach, "It's a roach. I'm from Massachusetts. I have an old roach from when I smoked in Massachusetts literally two days ago.   Where it's legal. " Appx604. Exhibit A (videos), video 1, at 4:15-4:25.   Gardner then lies again, "It's a roach." Appx604.   Exhibit A (videos), video 1, at 4:15- 4:25.    Irvin took Mr. Beatty to the police vehicle and placed him

–8–

in the back seat, where he remained for some time until he was transported to the police station and subjected to an invasive strip search of his person, which revealed no contraband. Appx604, 859-860, 932-934.  Exhibit A (videos); Exhibit C, at 32:20-33:9; Exhibit D, at 26:15-28:4. Ms. Lopez, who was handcuffed, was seized by Gardner and another officer, who had arrived, and dragged by her arms into a different police cruiser and flung bodily into the vehicle. Appx604.  Exhibit A (videos), video 1, at 5:25-5:40, video 3, at 5:20-5:35.  After Mr. Beatty was arrested, the officers learned his identity and that he still possessed an ignition interlock license even though he was eligible for a regular license as of 8/16/21 and had applied for it. Appx604, 985-986.   Mr. Beatty and Ms. Lopez denied wrongdoing or having marijuana in the car at least 16 times.

After Mr. Beatty and Ms. Lopez had been locked into the respective police cruisers, an African American female bystander asked police whether they were searching for her 12-year-old daughter whom she had reported missing to police approximately one month before. Appx604, 853-855. In response to these good faith queries, Gardner approached her aggressively and several times threatened to arrest her for "obstructing" despite the officers not actually investigating anything at that point as Ms. Lopez was leaving the scene and Mr. Beatty was handcuffed in the cruiser. Appx604, 932.  Exhibit A (videos), video 1, at 6:40-7:15. Mr. Beatty

–9–

was transported to the police department and invasively strip searched before he was finally released from police custody later that evening after no contraband was found on his person and no charges were ever filed against him. Appx860-863, 933-934. The strip search was allegedly performed for evidence of illegal drugs or contraband. Appx857-860.   On September 2, 2021, Gardner obtained a search warrant for the vehicle for "any and all illegal narcotics, and related packaging material, scales, means of ingestion and measuring devices.   Specifically marijuana and marijuana related paraphernalia." Appx959.   Gardner searched the car at the police impound lot and found no contraband. Appx629-632, 865, 870-871, 961, 970-971.

## SUMMARY OF ARGUMENT

The trial court committed error in granting summary judgment for the police officers. In its opinion, the trial court disregarded the evidence and inferences in Mr. Beatty's favor including that police lied about the presence of a roach and flakes because **when the impounded vehicle was searched, no contraband at all was found**.   This is crucial, because the entire "investigation" and incident has to be viewed through the lens in which all reasonable inferences and evidence are credited to Mr. Beatty.   The court weighed, discounted, and completely disregarded inferences and compelling evidence of record, namely that the officers found no contraband in the vehicle after impounding and searching it, just as Mr. Beatty and Ms. Lopez had asserted over and over, that the officers had lied about the presence of a roach and/or marijuana in the car, and that the strip search of Mr. Beatty was the third search of his person to which he had been subjected during the police interaction.   Furthermore, the Court erred in finding that the law concerning evidentiary strip searches in the absence of probable cause was not well established, in light of the well-established standards for all evidentiary searches. In granting summary judgment for the officers, the court misapplied the substantive law and the standard of review at summary judgment incorrectly depriving Mr. Beatty of a trial on the claims in the Complaint.

−11−

## ARGUMENT

**I.    The trial court erred by disregarding, weighing, and discounting Kyle Beatty's evidence, facts, and inferences and holding that probable cause supported the arrest and the search incident to the arrest.**

### A.    <u>Standard and scope of review for grant of summary judgment</u>

"We exercise plenary review over a district court's grant of summary judgment. A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."   <u>Chavarriaga v. N.J. Dep't of Corr.</u>, 806 F.3d 210, 218 (3rd Cir. 2015).

### B.    <u>Probable cause did not exist for the arrest and search.</u>

The court erred in finding that probable cause existed for the arrest and search incident to the arrest.   Specifically, the court erroneously held: "Officer Gardner provided uncontroverted testimony that he saw a marijuana roach and marijuana flakes in the vehicle.   It is irrelevant that Beatty claims there was nothing illegal in the vehicle since he was not present and has offered no evidence whatsoever to counter Officer Gardner's eyewitness account.   In fact, Officer Gardner's observations were bolstered by Lopez's later admission that there was a marijuana roach in the car."   In so finding, the trial court violated the standard and

–12–

scope of review at summary judgment, completely disregarding evidence that Mr. Beatty had proffered indicating that **the police lied about the presence of the roach and marijuana flakes in the car**, including but not limited to (1) the fact that the car search at the impound lot found no contraband, (2) Mr. Beatty and Ms. Lopez denied wrongdoing or having marijuana in the car at least 16 times, (3) Detective Irvin conceded that there may very well not be contraband in the car, and (4) even what the court mischaracterizes as an admission by Lopez that there was a marijuana roach in the car must be interpreted as an explanation for how a roach could have been in the car—if there had actually been a roach in the car—and not an "admission" that there was a roach in the vehicle.   But, crucially, this "admission" by Ms. Lopez was after Kyle Beatty had already been arrested.   Thus, the evidence, facts, and inferences in Mr. Beatty's favor do not show probable cause and the trial court erred and must be reversed.

"To bring a claim for false arrest, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause."   Harvard v. Cesnalis, 973 F.3d 190, 199 (3d Cir. 2020).   Similarly, "to state a claim for false imprisonment, a plaintiff must establish: (1) that he was detained; and (2) that the detention was unlawful."   Id. at 202.   Consistently, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false

–13–

imprisonment based on a detention pursuant to that arrest." Id. For the search

incident to the arrest, "when a warrantless search is made pursuant to an arrest, the

constitutional validity of the search must depend upon the constitutional validity of

the arrest." United States v. Kithcart, 134 F.3d 529, 531 (3d Cir. 1998) (finding

search incident to arrest lacking probable cause was invalid).   Timing is crucial as

"whether that warrantless arrest was constitutionally valid depends in turn upon

whether, at the moment the arrest was made, the officers had probable cause to

make it." Id.   The test is "whether at that moment the facts and circumstances

within their knowledge and of which they had reasonably trustworthy information

were sufficient to warrant a prudent man in believing that the suspect had

committed or was committing an offense." Id.    Probable cause to arrest exists

"when the facts and circumstances within the arresting officer's knowledge are

sufficient in themselves to warrant a reasonable person to believe that an offense

has been or is being committed by the person to be arrested. Cesnalis, 973 F.3d at

199–200.   Also, "in determining probable cause, arresting officers must consider

plainly exculpatory evidence in addition to inculpatory evidence." Id. at 200.

This requirement is mandatory "*even if substantial inculpatory evidence standing

by itself suggests that probable cause exists*." Id. at 200 (emphasis added).

    Here, the plainly exculpatory evidence demonstrates there was no roach or

marijuana in the car at any time, evidence that the trial court simply disregarded. First, the search warrant for the vehicle which was towed to the police impound lot sought "any and all illegal narcotics, and related packaging material, scales, means of ingestion and measuring devices. Specifically marijuana and marijuana related paraphernalia." Appx959. Any "roach" or "weed" was sought that would have been in the car, and the Return of Search, completed by Gardner after conducting the search, showed "***Nothing Recovered***". Appx629-632, 865, 870-871, 961, 970-971. Thus, no roach or weed was ever in the car. Appx629-632, 865, 870-871, 961, 970-971. Second, nothing besides the return of search was preserved from this vehicle search, whether by video, photograph, evidence, or otherwise and there was never any testing done because nothing was seized. So, nothing incriminating was in the car, as Mr. Beatty and Ms. Lopez had stated at least 16 times throughout the incident. Third, Detective Irvin agreed with Mr. Betty on video that "***there may very well not be***" any contraband in the car, after supposedly being shown the roach and flakes by Officer Gardner. Appx 604. Exhibit A (videos) video 3, at 3:30-4:40. Fourth, Officer Tyson Minier was allegedly shown the "roach" in the cupholder at the time of the arrest, but was unable to confirm seeing anything there at all. Exhibit G, at 8:10-9:7. Fifth, Mr. Beatty and his girlfriend repeatedly denied any wrongdoing or that there was contraband in the car at least 16 times,

−15−

facts confirmed in the Return of Search.   Sixth, the officers were not interested in searching the vehicle when consent was given.   Rather, they pivoted to harassing Mr. Beatty and Ms. Lopez about their identities, and then immediately handcuffing them, without even giving them a real chance to show their identities.   Mr. Beatty later identified himself in response to a question from Irvin.   The police were interested in harassment and intimidation, not a real investigation. This evidence negates any inference of probable cause and must be credited.

Finally and crucially, the court found Ms. Lopez admitted a roach was in the car, but this holding is a violation of the standard of review as her comment ***must*** be construed in Mr. Beatty's favor because she was responding to a conversation in which police were continuing to lie about the existence of a roach and marijuana flakes on the floor. And the officers had incorrectly arrested both Mr. Beatty and Ms. Lopez prior to her comment.   Specifically, Kyle Beaty had said to Detective Irving, "If you say there is a roach in there, that might be the most that you will find in there.   I'm saying if you see one." Appx604. Exhibit A (videos), video 3, at 4:00-4:15.    To which Ms. Lopez then stated if somehow the officers were seeing a roach, "It's a roach. I'm from Massachusetts. I have an old roach from when I smoked in Massachusetts literally two days ago.   Where it's legal. " Appx604. Exhibit A (videos), video 1, at 4:15- 4:25.   Gardner then lied again, "It's a roach."

–16–

Appx604.    Exhibit A (videos), video 1, at 4:15- 4:25. Important to the interpretation of this exchange, the record evidence, including the Return of Search demonstrates conclusively there was no marijuana or roach in the car. Appx629- 632, 865, 870-871, 961, 970-971. While the court credited the officers' assertions of a roach and marijuana in the car over contrary evidence, they are entitled to no weight at all, as they are self-serving statements contradicted by the clear evidence of record, including the return of search. *See e.g.* Irving v. Chester Water Auth., 439 F. App'x 125, 127 (3d Cir. 2011) ("subsequent self-serving deposition testimony is insufficient to raise a genuine issue of material fact.").   Thus, the evidence and inferences provided by Mr. Beatty demonstrate that no probable cause existed for drug charges against Mr. Beatty.

One final, crucial point remains concerning timing, which the trial court completely disregarded.   Mr. Beatty was arrested when he was handcuffed immediately after he had suggested to Ms. Lopez she revoke permission to search the car. Appx604.   Exhibit A (videos), video 1, at 2:00-2:40. And Gardner had Irvin search Beatty again to place him in the car shortly after he was handcuffed. Appx604. Exhibit A (videos), video 1, at 3:40-4:05, video 3, at 3:30-4:30.   Both his arrest and the search incident to that arrest occurred *prior* to Lopez's saying anything at all about any roach potentially being in the car.   So, her statement was

irrelevant to probable cause for the arrest and search incident to the arrest, because

***both had already occurred***.   Thus the court erred in granting summary judgment.

**II.    The trial court erred in granting summary judgment by disregarding, weighing, and discounting Kyle Beatty's evidence, facts, and inferences and holding that reasonable suspicion supported the initial stop.**

**A.    Standard and scope of review for grant of summary judgment**

"We exercise plenary review over a district court's grant of summary

judgment. A court may grant a motion for summary judgment if, after it considers

all probative materials of record, with inferences drawn in favor of the non-moving

party, the court is satisfied that there are no genuine issues of material fact and the

movant is entitled to judgment as a matter of law."   Chavarriaga v. N.J. Dep't of

Corr., 806 F.3d 210, 218 (3rd Cir. 2015).

**B.    Reasonable suspicion did not support the stop.**

The lower court erred in finding reasonable suspicion to stop Mr. Beatty

inside the convenience store because "Officer Gardner believed he saw marijuana

in the vehicle and the forms of marijuana—a joint and marijuana flakes—are

prohibited by Pennsylvania law." In doing so, the court openly disregarded crucial

evidence and inferences and weighed evidence against Mr. Beatty violating the

standard of review for summary judgment and committing reversible error.

"The Fourth Amendment permits brief investigative stops . . . when a law

enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." Navarette v. California, 572 U.S. 393, 396, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014).   However, "a mere 'hunch' does not create reasonable suspicion." Id. at 397.   Indeed, "Whether you stand still or move, drive above, below, or at the speed limit, you will be described by the police as acting suspiciously should they wish to stop or arrest you. Such ***subjective, promiscuous appeals to an ineffable intuition should not be credited***." United States v. Broomfield, 417 F.3d 654, 655 (7th Cir. 2005) (emphasis added). Here, the trial court disregarded Mr. Beatty's evidence and inferences there was no particularized and objective basis of criminal activity, crediting the officers' subjective, promiscuous, ineffable intuition.

Specifically, Mr. Beatty's claim concerns the seizure inside the convenience store where he was escorted outside and placed against the vehicle. Appx604. Exhibit A (videos), video 1, at 0:40-1:20. To begin, the officers observed no vehicle code violations or other criminal conduct while following the car. Appx839, 916-917, 944.   Furthermore, there was no criminal conduct in how Mr. Beatty and Ms. Lopez entered the store to make legitimate purchases.   Appx604. Exhibit A (videos), video 1, at 0:30- 1:20, video 3, at 0:30-0:52. Furthermore, Ms. Lopez and Mr. Beatty were seized before they said or did anything else, as it is

−19−

clear that they are seized from the outset of the interaction between Ms. Lopez and Mr. Beatty and the officers. Appx604.   Exhibit A (videos), video 1, at 0:30- 1:20, video 3, at 0:30-0:52.   So, the only contention of actual criminal conduct is the officers' unsupported assertion that a "roach" and "weed" was in the car, but that evidence cannot be credited as the trial court did because it is conclusively negated by the Return of Search which indicated ***"Nothing Recovered"*** in the search of the vehicle. Appx629-632, 865, 870-871, 961, 970-971. This evidence flatly negates that "Officer Gardner believed he saw marijuana in the vehicle", and the trial court erred in crediting that self-serving testimony to find reasonable suspicion for the stop.   Therefore, the trial court erred and must be reversed on appeal.

**III.   The trial court erred when it found qualified immunity for the strip search by failing to consider all evidence of record and the inferences therefrom, by weighing evidence, and by misapplying the substantive law qualified immunity for searches of a person.**

**A.   Standard and scope of review for order granting summary judgment**

"We exercise plenary review over a district court's grant of summary judgment. A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."   Chavarriaga, 806 F.3d at 218.

–20–

**B.**    **Qualified immunity does not justify the illegal strip search.**

Next, the trial court erred by granting qualified immunity to the officers for their strip search of Mr. Beatty.   The court did so, despite correctly holding that the strip search was done in the complete absence of an particularized justification because (1) they had already searched Mr. Beatty twice prior to the strip search finding no contraband either time, and (2) the vehicle where the roach and marijuana flakes were claimed to be was Ms. Lopez's and not Mr. Beatty's.   Yet the court still erroneously granted qualified immunity, finding "this right was not clearly established when defendants conducted the strip search", since "neither the Supreme Court nor the Third Circuit directly addressed constitutional standards governing non-institutional strip searches."   Yet, the law of non-institutional searches for evidence was clearly established such that any reasonable officer would have known that the strip search palpably violated Mr. Beatty's rights.

Qualified immunity shields a defendant from personal liability when that defendant reasonably believed that his conduct complied with the law.   Pearson v. Callahan, 555 U.S. 223, 244 (2009).   The qualified immunity analysis is two-fold. Id. First, a court decides whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right.   Id. at 232. Here, the Court found a violation of Mr. Beatty's rights in the strip search, establishing the first prong of

the analysis.    Second . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."    Id. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."    Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [state actor] … that his conduct was unlawful in the situation he confronted."    Saucier v. Katz, 533 U.S. 194, 202 (2001). "Although . . . the right must be defined beyond a high level of generality, there need not be a case directly on point for a right to be clearly established." Thomas v. City of Harrisburg, 88 F.4th 275, 284 (3d Cir. 2023).    An identical case is not required for a violation "that ***appears so obvious, even in the absence of closely analogous precedent, that every objectively reasonable government official facing the circumstances would know that the Defendants' conduct ... violated federal law when they acted***." Mack v. Yost, 63 F.4th 211, 233 (3d Cir. 2023) (emphasis added).    "A public official, after all, does not get the benefit of one liability-free violation simply because the circumstance of his case is not identical to that of a prior case."    Id.    The burden of proof lies on the defendant asserting qualified immunity.    Halsey, 750 F.3d at 288.

Turning now to the law of searches, some basic, long-established principles demonstrate that the law was clearly established. To begin it has long been the law

–22–

in this country that, "the scope of the search must be strictly tied to and justified by the circumstances which rendered its initiation permissible."   Terry v. Ohio, 392 U.S. 1, 32 (1968).   It is also well established that searches for evidence, including strip searches in a non-institutional setting, "must normally be supported by probable cause, and with certain exceptions, must be authorized by a warrant." Doe v. Groody, 361 F.3d 232, 238 (3rd Cir. 2004).   In Groody, a mother and her 10 year-old-daughter had their 4th Amendment rights violated when they were strip searched by police for evidence in the absence of probable cause indicating that they were implicated at all in the criminal scheme of the defendant.   Id. at 236, 243. In so holding, the Groody Court noted "Simply put, there is none of the kind of 'particularized' probable cause required for a search in circumstances such as these." Id.   The Court went on to address qualified immunity for the strip searches, finding it inapplicable, stating "Finally, even if an exception to the warrant requirement did apply, it is clear that the search of [the mother and child] for evidence had to be based on probable cause and not on a generalized concern that those present at a search might hide evidence.   That principle was established as early as 1979." Id. at 244 (citing Ybarra v. Illinois, 444 U.S. 85, 94-96 (1979). The Supreme Court has continued to resist attempts to erode the requirement that evidentiary searches must be supported by probable cause.   Ybarra v. Illinois, 444

−23−

U.S. 85, 94-96 (1979). Applying this law to the facts demonstrates the trial court's error in affording qualified immunity for the strip search.

Here, the officers testified that the strip search was allegedly an evidentiary search for illegal drugs or contraband only. Appx857-860. There was no concern that Mr. Beatty was armed. There was no warrant, so the search had to be authorized by an exception to the warrant requirement and probable cause contraband would be found.   But, probable cause was not present since police knew there was no roach or flakes in the car and they had been lying about that fact. And the strip search occurred after Mr. Beatty had been frisked in the convenience store and after he had been searched incident to his illegal arrest, when he was placed on the hood of the car, prior to being placed in the car, and after officers knew the vehicle was owned by Ms. Lopez.   In short, the officers *knew* there was no probable cause whatsoever that contraband would be found in the strip search, and could articulate only trivial, pretextual generalized hunches that Mr. Beatty could possibly have contraband on his person. So, a reasonable police officer would have known that strip searching Mr. Beatty for alleged evidentiary purposes in the absence of probable cause would be illegal. But, even if somehow Groody is not completely dispositive in and of itself, the legal principles regarding the law of evidentiary searches, reflected in Ybarra, always requiring

–24–

probable cause indicates that the officers' violation of Mr. Beatty's rights in the strip search appears so obvious, even in the absence of closely analogous precedent, that every objectively reasonable government official facing the circumstances would know that the strip search violated Mr. Beatty's rights. Indeed, counsel is aware of no case that would permit an officer to benefit from qualified immunity after lying about a material fact in a case, here the presence of marijuana and a roach in the car.   The court erred by affording the officers qualified immunity and must be reversed.

**IV.    The trial court erred when it granted summary judgment for the officers for First Amendment retaliation by failing to consider all evidence of record and the inferences therefrom, by weighing evidence, and by misapplying the substantive law.**

**A.    Standard and scope of review for order granting summary judgment**

"We exercise plenary review over a district court's grant of summary judgment. A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."   Chavarriaga, 806 F.3d at 218.

**B.    Mr. Beatty has a valid claim for First Amendment retaliation for the arrest, search incident to the arrest, and the strip search.**

The trial court also erred by finding that Mr. Beatty's claim of First Amendment retaliation for the arrest, search incident to the arrest, and strip search because "Defendants had probable cause to arrest Beatty" and search him incident to that arrest and since case law "does not clearly establish the right to be free from retaliation relating to . . . a strip search." As noted earlier in Section I of this Brief, the trial court violated the standard and scope of review at summary judgment, completely disregarding evidence indicating that the police lied about the presence of the roach and marijuana flakes in the car, including but not limited to the fact that the car search at the impound lot found no contraband, Mr. Beatty and Ms. Lopez denied wrongdoing or having marijuana in the car at least 16 times, and even what the court mischaracterizes as an admission by Lopez that there was a marijuana roach in the car must be interpreted as an explanation for how a roach could have been in the car—if there had actually been a roach in the car—and not an "admission" that there was a roach in the vehicle.   Thus, the facts and inferences do not show probable cause and the court erred in not so finding. Additionally, as indicated in Section III of this Brief the court erred since the law for non-institutional searches for evidence was clearly established such that any reasonable officer would have known that the strip search in the absence of probable cause palpably violated Mr. Beatty's rights.

As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." Nieves v. Bartlett, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019), (citing Hartman v. Moore, 547 U.S. 250, 256 (2006). The Supreme Court recently noted, "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." Id. The elements of a First Amendment Retaliation Claim are: (1) that Plaintiff engaged in constitutionally protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation. Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3rd Cir. 2004); Palardy v. Township of Milburn, 906 F.3d 76, 80-81 (3rd Cir. 2018). Generally, the plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest. Nieves v. Bartlett, 587 U.S. 391, 401 (2019). "But if the plaintiff establishes the absence of probable cause, then . . . the plaintiff must show that the retaliation was a substantial or motivating factor behind the arrest, and, if that showing is made, the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation." Id. at 204.

Here, with respect to the arrest, search incident to the arrest, and the strip search

−27−

after the arrest, it is clear there was no probable cause for any of these actions as there was no roach or marijuana in the car, evidence that the trial court simply disregarded.   The Return of Search, completed by Gardner after conducting the search, showed "***Nothing Recovered***". Appx629-632, 865, 870-871, 961, 970-971. Thus, no roach or weed was ever in the car.   Appx629-632, 865, 870-871, 961, 970-971.   Additionally, nothing besides the return of search was preserved from this vehicle search, whether by video, photograph, evidence, or otherwise and there was never any testing done because nothing was seized.   So, nothing incriminating was in the car, as Mr. Beatty and Ms. Lopez had stated at least 16 times throughout the incident.   Also, officer Tyson Minier was allegedly shown the "roach" in the cupholder at the time of the arrest, but was unable to confirm seeing anything there at all. Exhibit G, at 8:10-9:7.   Finally while the court credited the officers' assertions of a roach and marijuana in the car over contrary hard evidence, this was error, as they are self-serving statements contradicted by the clear evidence of record, including the return of search.   *See e.g.* Irving, 439 F. App'x at 127 (3d Cir. 2011).   Thus, the evidence and inferences provided by Mr. Beatty demonstrate that no probable cause existed for drug charges against Mr. Beatty and the trial court erred by dismissing his First Amendment retaliation claims for the arrest, search incident to arrest, and the subsequent strip search after he had been

–28–

arrested.

Lastly, qualified immunity does not protect the officers either. "Although . . . the right must be defined beyond a high level of generality, there need not be a case directly on point for a right to be clearly established." Thomas, 88 F.4th at 284. Moreover, an identical case is not required for a violation "that *appears so obvious, even in the absence of closely analogous precedent, that every objectively reasonable government official facing the circumstances would know that the Defendants' conduct ... violated federal law when they acted*." Mack, 63 F.4th at 233 (emphasis added). Furthermore, it is well established that First Amendment retaliation will lie for a retaliatory arrest for speech in the absence of probable cause. *See e.g.* Reichle v. Howards, 566 U.S. 658 (2012); Nieves v. Bartlett, 587 U.S. 391 (2019). First Amendment retaliation lies as well for subsequent retaliatory actions related to such an arrest in the absence of probable cause, such as malicious prosecution. *See e.g.* Hartman v. Moore, 547 U.S. 250 (2006). Clearly, the same logic applies to post arrest retaliatory actions related to the arrest without probable cause, such as the search incident to arrest and the strip search in this case. Moreover, counsel has been unable to find any precedent that indicates that searches incident to arrest or strip searches in the absence of probable cause are not actionable in connection with an arrest without probable cause. And,

–29–

counsel is aware of no case that would permit an officer to benefit from qualified immunity after lying about a material fact in a case, here the presence of marijuana and a roach in the car.   Thus, qualified immunity does not shield the officers from liability for First Amendment retaliation. Thus, the trial court erred by granting summary judgment.

## CONCLUSION

In conclusion and in accord with the reasoning contained in this Brief, Kyle Beatty respectfully requests this Court to grant his appeal in full, reverse the trial court's grant of summary judgment, and remand the matter for trial.

Respectfully submitted,

**SCHEMERY ZICOLELLO, P.C.**

By:   *s/Joshua J. Cochran*

Joshua J. Cochran, Esquire
Pa. I.D.# 206807
Attorneys for Appellant

333 Market Street
Williamsport, PA 17701
Telephone: (570) 321-7554
Email: josh@sz-law.com

## CERTIFICATE OF MEMBERSHIP

I, Joshua J. Cochran, hereby certify that I am a member of the Bar of this Court.

**SCHEMERY ZICOLELLO, P.C.**

By:    s/Joshua J. Cochran

Joshua J. Cochran, Esquire
Pa. I.D.# 206807
Attorneys for Appellant

333 Market Street
Williamsport, PA 17701
Telephone: (570) 321-7554
Email: josh@sz-law.com

## CERTIFICATE OF WORD COUNT

I, Joshua J. Cochran, hereby certify that this Brief contains 6,643 words and meets the word count requirements.

**SCHEMERY ZICOLELLO, P.C.**

By:    *s/Joshua J. Cochran*
       Joshua J. Cochran, Esquire
       Pa. I.D.# 206807
       Attorneys for Appellant

       333 Market Street
       Williamsport, PA 17701
       Telephone: (570) 321-7554
       Email: josh@sz-law.com

## CERTIFICATE OF IDENTICAL FILING

I, Joshua J. Cochran, do hereby certify that the document presented for e-filing is the identical document filed as a hard copy.

**SCHEMERY ZICOLELLO, P.C.**

By:    *s/Joshua J. Cochran*
Joshua J. Cochran, Esquire
Pa. I.D.# 206807
Attorneys for Appellant

333 Market Street
Williamsport, PA 17701
Telephone: (570) 321-7554
Email: josh@sz-law.com

−34−

## CERTIFICATE OF VIRUS CHECK

I, Joshua J. Cochran, Esquire, do hereby certify that the e-filing was

checked for a virus through Malwarebytes' Anti-malware and is virus free.

**SCHEMERY ZICOLELLO, P.C.**

By:    *s/Joshua J. Cochran*

Joshua J. Cochran, Esquire
Pa. I.D.# 206807
Attorneys for Appellant

333 Market Street
Williamsport, PA 17701
Telephone: (570) 321-7554
Email: josh@sz-law.com

APPEAL,CLOSED,MEDSNR,MM,STANDARD,WMSPT

# United States District Court
## Middle District of Pennsylvania (Williamsport)
## CIVIL DOCKET FOR CASE #: 4:23–cv–00364–KMN

| | |
|---|---|
| Beatty v. Gardner et al | Date Filed: 02/28/2023 |
| Assigned to: Honorable Keli M. Neary | Date Terminated: 08/29/2025 |
| Cause: 42:1983 Civil Rights Act | Jury Demand: Both |
| | Nature of Suit: 440 Civil Rights: Other |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Kyle Beatty**                                represented by    **Joshua J. Cochran**
Schemery Zicollello
333 Market Street
Williamsport, PA 17701
570–321–7554
Email: josh@sz–law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*


V.

**Defendant**

**Clinton Gardner**                            represented by    **Shawna R Laughlin**
William J. Ferren & Associates
PO Box 2903
Hartford, CT 06104
570–343–6570
Fax: 800–689–9694
Email: slaughli@travelers.com
*ATTORNEY TO BE NOTICED*


**Defendant**

**Calvin Irvin**                               represented by    **Austin White**
McCormick Law Firm
835 West Fourth Street
Williamsport, PA 17701
570–326–5131
Email: awhite@mcclaw.com
*ATTORNEY TO BE NOTICED*

**Stephen Hartley**
McCormick Law Firm
835 West 4th Street
Williamsport, PA 17701
570–326–5131
Email: shartley@mcclaw.com
*ATTORNEY TO BE NOTICED*


**Mediator**

**Mediator**                                   represented by    **Joseph P. Green**
*TERMINATED: 11/06/2023*                                        Lee Martin Green & Reiter, Inc.
115 East High Street
P.O. Box 179
Bellefonte, PA 16823
814–355–4769
Email: clenhart@lmgrlaw.com
*TERMINATED: 11/06/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/28/2023 | 1 | COMPLAINT against Clinton Gardner, Calvin Irvin ( Filing fee $402, Receipt Number APAMDC−6212556), filed by Kyle Beatty. (Attachments: # 1 Civil Cover Sheet)(jw) (Additional attachment(s) added on 3/1/2023: # 2 Exhibit A) (nr). (Entered: 02/28/2023) |
| 03/01/2023 | 2 | Summons Issued as to Clinton Gardner, Calvin Irvin and provided TO ATTORNEY ELECTRONICALLY VIA ECF for service on Defendant(s)in the manner prescribed by Rule 4 of the Federal Rules of Civil Procedure. (NOTICE TO ATTORNEYS RECEIVING THE SUMMONS ELECTRONICALLY: You must print the summons and the attachment when you receive it in your e−mail and serve the complaint on all defendants in the manner prescribed by Rule 4 of the Federal Rules of Civil Procedure). (Attachments: # 1 Summons Packet) (nr) (Entered: 03/01/2023) |
| 03/02/2023 | 3 | Letter to Counsel Re: Case Assignment and Procedures. (See Letter for further details.) Signed by Chief Judge Matthew W. Brann on 3/2/2023. (jr) (Entered: 03/02/2023) |
| 04/04/2023 | 4 | SUMMONS Returned Executed by Kyle Beatty. Clinton Gardner served on 3/31/2023, answer due 4/21/2023. (Cochran, Joshua) (Entered: 04/04/2023) |
| 04/04/2023 | 5 | SUMMONS Returned Executed by Kyle Beatty. Calvin Irvin served on 3/31/2023, answer due 4/21/2023. (Cochran, Joshua) (Entered: 04/04/2023) |
| 04/05/2023 | 6 | NOTICE of Appearance by Austin White on behalf of Calvin Irvin. (White, Austin) (Entered: 04/05/2023) |
| 04/05/2023 | 7 | NOTICE of Appearance by Stephen Hartley on behalf of Calvin Irvin (Hartley, Stephen) (Entered: 04/05/2023) |
| 04/06/2023 | 8 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint *or Otherwise Respond to Complaint* by Calvin Irvin. (Attachments: # 1 Proposed Order)(White, Austin) (Entered: 04/06/2023) |
| 04/06/2023 | 9 | ORDER − IT IS HEREBY ORDERED that Defendant Irvin's 8 Motion for Extension of Time is GRANTED. Defendant Calvin Irvin's response to Plaintiff's complaint is due on or before 5/11/2023. Signed by Chief Judge Matthew W. Brann on 04/06/2023 (ea) (Entered: 04/06/2023) |
| 04/19/2023 | 10 | NOTICE of Appearance by Shawna R Laughlin on behalf of Clinton Gardner (Laughlin, Shawna) (Entered: 04/19/2023) |
| 04/19/2023 | 11 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint by Clinton Gardner.(Laughlin, Shawna) (Entered: 04/19/2023) |
| 04/19/2023 | | DOCKET ANNOTATION: Attorney Laughlin is directed to file proposed orders as an attachment in the future. Please do not refile the motion. (ea) (Entered: 04/19/2023) |
| 04/19/2023 | 12 | ORDER granting 11 Motion for Extension of Time to Answer. Defendant Clinton Gardner's Answer to Plaintiff's Complaint is due on or before 5/11/2023. Signed by Chief Judge Matthew W. Brann on 4/19/2023. (jr) (Entered: 04/19/2023) |
| 05/09/2023 | 13 | *Defendant Calvin Irvin's* ANSWER to 1 Complaint *with Affirmative Defenses* by Calvin Irvin.(White, Austin) (Entered: 05/09/2023) |
| 05/11/2023 | 14 | ANSWER to 1 Complaint *with Affirmative Defenses* by Clinton Gardner.(Laughlin, Shawna) (Entered: 05/11/2023) |
| 05/12/2023 | 15 | SCHEDULING ORDER: Telephonic Initial Case Management Conference scheduled for 6/12/2023 at 3:00 PM before Chief Judge Matthew W. Brann. (See Order for further details.) Signed by Chief Judge Matthew W. Brann on 5/12/2023. (jr) (Entered: 05/12/2023) |
| 06/05/2023 | 16 | CASE MANAGEMENT PLAN by Kyle Beatty. (Cochran, Joshua) (Entered: 06/05/2023) |

| | | |
|---|---|---|
| 06/14/2023 | 18 | ORDER − STANDARD CASE MANAGEMENT TRACK − Following an Initial Case Management conference, the following dates apply to this case: Discovery due by 02/05/2024. Dispositive Motions due by 04/05/2024. Plaintiff Expert Report is due by 07/05/2024. Defendant Expert Report is due by 08/05/2024. Expert Discovery Deadline is due by 08/19/2024. Pretrial Memos due by 09/17/2024. Final Pretrial Conference scheduled for 09/24/2024 in Chambers before Chief Judge Matthew W. Brann. Case placed on November 2024 trial term. (See Order for further details.) Signed by Chief Judge Matthew W. Brann on 06/14/2023. (ea) (Entered: 06/14/2023) |
| 06/14/2023 | 19 | ORDER REFERRING CASE to Mediation. Joseph P. Green added as Mediator. (See Order for further details.) Signed by Chief Judge Matthew W. Brann on 6/14/2023. (jr) (Entered: 06/14/2023) |
| 07/10/2023 | 20 | WAIVER OF SERVICE Returned by Kyle Beatty. (Cochran, Joshua) (Entered: 07/10/2023) |
| 11/06/2023 | 21 | REPORT OF MEDIATOR (Settlement Not Reached) Mediator Joseph P. Green terminated.(rr) (Entered: 11/06/2023) |
| 11/07/2023 | | VERBAL ORDER REASSIGNING CASE − Case reassigned to Honorable Julia K Munley for all further proceedings. (jr) (Entered: 11/07/2023) |
| 04/04/2024 | 22 | MOTION for Summary Judgment by Clinton Gardner. (Attachments: # 1 Proposed Order, # 2 Statement Undisputed Material Facts, # 3 Exhibit(s) A, # 4 Exhibit(s) B, # 5 Exhibit(s) C, # 6 Exhibit(s) D, # 7 Exhibit(s) E, # 8 Exhibit(s) F, # 9 Exhibit(s) G, # 10 Exhibit(s) H, # 11 Exhibit(s) I, # 12 Exhibit(s) J, # 13 Exhibit(s) K, # 14 Exhibit(s) L, # 15 Exhibit(s) M)(Laughlin, Shawna) (Entered: 04/04/2024) |
| 04/04/2024 | 23 | BRIEF IN SUPPORT re 22 MOTION for Summary Judgment filed by Clinton Gardner.(Laughlin, Shawna) (Entered: 04/04/2024) |
| 04/05/2024 | 24 | EXHIBIT F (flash drive forwarded to chambers in Scranton for storage) by Clinton Gardner re 25 Statement of Facts. (ea) (Entered: 04/05/2024) |
| 04/05/2024 | | DOCKET ANNOTATION: Attorney Laughlin is directed to refile the Statement of Facts and exhibits attached to Motion for Summary Judgment (Doc. 22) using the correct civil event; Civil Events > Motions and Related Filings > Responses and Replies (Briefs) > Statement of Facts. Please label each exhibit with a short description to clearly identify what each exhibit is on the docket. (ea) (Entered: 04/05/2024) |
| 04/05/2024 | 25 | STATEMENT OF FACTS re 22 MOTION for Summary Judgment filed by Clinton Gardner. (Attachments: # 1 Exhibit(s) A − Complaint, # 2 Exhibit(s) B − Plaintiff's Transcript, # 3 Exhibit(s) C − Irvin Transcript, # 4 Exhibit(s) D − Incident RPT, # 5 Exhibit(s) E − Gardner Transcript, # 6 Exhibit(s) F − Videos, # 7 Exhibit(s) G − Trial Transcript 1, # 8 Exhibit(s) H − PennDOT Info, # 9 Exhibit(s) I − PennDOT Letter, # 10 Exhibit(s) J − Search Warrant, # 11 Exhibit(s) K − Inventory RCPT, # 12 Exhibit(s) L − Trial Transcript 2, # 13 Exhibit(s) M − Gardner CV)(Laughlin, Shawna) (Entered: 04/05/2024) |
| 04/05/2024 | 26 | MOTION for Summary Judgment by Calvin Irvin. (Attachments: # 1 Proposed Order for Defendant Irvin's Motion for Summary Judgment)(White, Austin) (Entered: 04/05/2024) |
| 04/05/2024 | 27 | STATEMENT OF FACTS re 26 MOTION for Summary Judgment filed by Calvin Irvin.(White, Austin) (Entered: 04/05/2024) |
| 04/05/2024 | 28 | APPENDIX by Calvin Irvin to 26 MOTION for Summary Judgment , 27 Statement of Facts *in Support.* (Attachments: # 1 Exhibit A − Defendant Calvin Irvin's Axon_Body_3_Video_2021−08−31_1348_X60A0485A & Axon_Body_3_Video_2021−08 31_1413_X60A0485A, # 2 Exhibit B − Defendant Clinton Gardner's Axon_Body_3_Video_2021−08−31_1355_X60A09928 & Axon_Body_3_Video_2021−08−31_1402_X60A09928, # 3 Exhibit C − Deposition Transcript of Defendant Clinton Gardner, # 4 Exhibit D −Deposition Transcript of Defendant Calvin Irvin, # 5 Exhibit E − Deposition Transcript of Plaintiff Kyle Beatty, # 6 Exhibit F − Transcript of August 3, 2022 Proceedings, case captioned Commonwealth of Pennsylvania v. Anaise M. Lopez, Lycoming County, Docket No. CR−1281−2021, # 7 Exhibit G − Transcript of ruling in August 3, 2022 Proceedings − Sentencing, case captioned Commonwealth of Pennsylvania v. Anaise M. Lopez, |

| | | |
|---|---|---|
| | | Lycoming County, Docket No. CR−1281−2021, # 8 Exhibit H − Court of Common Pleas of Lycoming County Criminal Docket for case captioned Commonwealth of Pennsylvania v. Anaise M. Lopez, Lycoming County, Docket No. CR−1281−2021, # 9 Exhibit I − August 31, 2021, Police Criminal Complaint, Lycoming County, captioned Commonwealth of Pennsylvania v. Anaise Margarita Lopez, and August 31, 2021 Affidavit of Probable Cause, # 10 Exhibit J − September 9, 2021, Defendant Calvin Irvins Lycoming County District Attorneys Office Supplemental Report #1, # 11 Exhibit K − August 31, 2021, Officer Gearys Supplement to Officer Report)(White, Austin) Modified on 5/10/2024 (jr). (Entered: 04/05/2024) |
| 04/05/2024 | 29 | EXHIBITS A and B (flash drives forwarded to chambers Scranton for storage) re 28 Appendix, by Calvin Irvin. (ea) (Entered: 04/05/2024) |
| 04/19/2024 | 30 | BRIEF IN SUPPORT re 26 MOTION for Summary Judgment filed by Calvin Irvin.(White, Austin) (Entered: 04/19/2024) |
| 04/25/2024 | 31 | ANSWER TO STATEMENT OF FACTS re 23 Brief in Support of Motion for Summary Judgment filed by Kyle Beatty. (Attachments: # 1 Exhibit List, # 2 Exhibit A − Video(s) (Provided to court by Thumb Drives), # 3 Exhibit B − Transcript of Deposition of Kyle Beatty, # 4 Exhibit C − Transcript of Deposition of Clinton Gardner, # 5 Exhibit D − Transcript of Deposition of Calvin Irvin, # 6 Exhibit E − Warrant/Affidavit of Probable Cause, # 7 Exhibit F − Receipt Inventory of Property Seized, # 8 Exhibit G − Transcript of Deposition of Tyson Minier, # 9 Exhibit H − Application for Search Warrant, # 10 Exhibit I − Strip Search Policy of Williamsport)(Cochran, Joshua) Modified on 4/25/2024 to correct docket text(nr). (Entered: 04/25/2024) |
| 04/25/2024 | 32 | BRIEF IN OPPOSITION re 22 MOTION for Summary Judgment filed by Kyle Beatty.(Cochran, Joshua) (Entered: 04/25/2024) |
| 04/25/2024 | | DOCKET ANNOTATION: Attorney Cochran is instructed to label each exhibit with a description in all future filings. (See DOC #31 for example − Entry #31 corrected by clerk) (nr) (Entered: 04/25/2024) |
| 04/25/2024 | 33 | EXHIBIT A sent to court by Kyle Beatty in re 31 ANSWER TO STATEMENT OF FACTS − Exhibit A − Videos. ((2) Thumb drives sent to SCR for filing purposes) (nr) (Entered: 04/25/2024) |
| 05/08/2024 | 34 | REPLY BRIEF re 22 MOTION for Summary Judgment filed by Clinton Gardner. (Attachments: # 1 Exhibit(s) N − Minier Transcript)(Laughlin, Shawna) (Entered: 05/08/2024) |
| 05/10/2024 | 35 | COUNTERSTATEMENT OF FACTS re 26 MOTION for Summary Judgment filed by Kyle Beatty. (Attachments: # 1 Appendix Exhibit List, # 2 Exhibit A − Videos, # 3 Exhibit B − Transcript Deposition of Kyle Beatty, # 4 Exhibit C − Transcript Deposition of Clinton Gardner, # 5 Exhibit D − Transcript Deposition of Calvin Irvin, # 6 Exhibit E − Application for Search Warrant, # 7 Exhibit F − Receipt Inventory of Property Seized, # 8 Exhibit G − Transcript Deposition of Tyson Minier, # 9 Exhibit H − Strip Search Policy of Wiliamsport, # 10 Exhibit I − Ignition Interlock Letter)(Cochran, Joshua) Modified on 5/10/2024 (jr). Modified on 5/10/2024 (nr). (Entered: 05/10/2024) |
| 05/10/2024 | 36 | BRIEF IN OPPOSITION re 26 MOTION for Summary Judgment filed by Kyle Beatty.(Cochran, Joshua) (Entered: 05/10/2024) |
| 05/10/2024 | 37 | EXHIBIT A (Flash drive forwarded to Chambers in Scranton for storage) by Kyle Beatty re 35 COUNTERSTATEMENT OF FACTS. (nr) (Entered: 05/10/2024) |
| 05/21/2024 | 38 | Unopposed MOTION for Extension of Time to File Brief to 26 MOTION for Summary Judgment *in Further Support* filed by Calvin Irvin. (Attachments: # 1 Proposed Order Proposed Order − Def Irvin's Motion for Extn of Time to File Reply Brief)(White, Austin) (Entered: 05/21/2024) |
| 05/22/2024 | 39 | ORDER granting 38 Motion for Extension of Time to File Response/Reply Brief re MOTION for Summary Judgment Reply Brief due by 5/31/2004. Signed by Honorable Julia K Munley on 5/22/24 (sm) (Entered: 05/22/2024) |

| 05/31/2024 | 40 | REPLY BRIEF re 26 MOTION for Summary Judgment *in Support* filed by Calvin Irvin.(White, Austin) (Entered: 05/31/2024) |
|---|---|---|
| 09/03/2024 | 41 | Unopposed MOTION to Stay *Remaining Pre−trial Deadlines* by Calvin Irvin. (Attachments: # 1 Proposed Order Suspending Deadlines)(White, Austin) (Entered: 09/03/2024) |
| 09/04/2024 | 42 | ORDER granting 41 Motion to Stay case management deadlines Signed by Honorable Julia K Munley on 9/4/24 (sm) (Entered: 09/04/2024) |
| 01/24/2025 |  | VERBAL ORDER REASSIGNING CASE − Case reassigned to Honorable Keli M. Neary for all further proceedings. (jw) (Entered: 01/24/2025) |
| 08/29/2025 | 43 | MEMORANDUM (Order to follow as separate docket entry). Signed by Honorable Keli M. Neary on 8/29/2025. (mw) (Entered: 08/29/2025) |
| 08/29/2025 | 44 | ORDER (Memorandum filed previously as separate docket entry) − it is hereby ORDERED that defendants' motions (Docs. 22, 26) for summary judgment are GRANTED on Counts 1−4. Counts 5−7 are DISMISSED without prejudice because the court declines to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c). The Clerk of Court is respectfully requested to CLOSE this case. Signed by Honorable Keli M. Neary on 8/29/2025 (mw) (Entered: 08/29/2025) |
| 09/23/2025 | 45 | NOTICE OF APPEAL in NON−PRISONER Case as to 43 Memorandum (Order to follow as separate docket entry), 44 Order on Motion for Summary Judgment,,, by Kyle Beatty. Filing Fee and Docket Fee PAID. Filing fee $ 605, receipt number APAMDC−7124122. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (Cochran, Joshua) (Entered: 09/23/2025) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE BEATTY | : | NO. 4:23-CV-00364 |
| | : | |
| v. | : | JUDGE NEARY |
| | : | |
| CLINTON GARDNER and CALVIN | : | CIVIL ACTION - LAW |
| IRVIN | : | JURY TRIAL DEMANDED |

### NOTICE OF APPEAL

Notice is hereby given that Plaintiff, Kyle Beatty, hereby appeals to the United States Court of Appeals for the Third Circuit from the trial court's Order and Memorandum dated August 29, 2025, granting Defendants' Motion for Summary Judgment and entering judgment in favor of Defendants and against Plaintiff. This Court has jurisdiction of this Appeal under 28 U.S.C. § 1291.

**SCHEMERY ZICOLELLO**

By:   s/Joshua J. Cochran
      Joshua J. Cochran
      ID No. 206807
      Attorney for Plaintiff
      333 Market Street
      Williamsport, PA 17701
      (570) 321-7554

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE BEATTY | : | NO.   4:23-CV-00364 |
| | : | |
| v. | : | JUDGE NEARY |
| | : | |
| CLINTON GARDNER and CALVIN | : | CIVIL ACTION - LAW |
| IRVIN | : | JURY TRIAL DEMANDED |

## CERTIFICATE OF SERVICE

Joshua J. Cochran hereby certifies that the Notice of Appeal has been served upon the following individuals and in the manner indicated below on this 23rd day of September 2025:

### VIA ELECTRONIC FILING

Shawna Laughlin, Esquire
William J. Ferren & Associates
slaughli@travelers.com

Austin White, Esquire
McCormick Law Firm
awhite@mcclaw.com

**SCHEMERY ZICOLELLO**

By:   s/Joshua J. Cochran

Joshua J. Cochran
ID No. 206807
Attorney for Plaintiff
333 Market Street
Williamsport, PA 17701
(570) 321-7554

Appx7

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KYLE BEATTY,** | : | **CIVIL ACTION NO. 4:23-CV-364** |
| | : | |
| **Plaintiff** | : | **(Judge Neary)** |
| | : | |
| **v.** | : | |
| | : | |
| **CLINTON GARDNER and CALVIN IRVIN,** | : | |
| | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 29th day of August, 2025, upon consideration of the motion for summary judgment filed by Clinton Gardner and Calvin Irvin (collectively "defendants") (Docs. 22, 26), and the parties' respective briefs in support of and in opposition to the defendants' motion, (Docs. 23, 30, 32, 34, 36, 40), and for the reasons set forth in the accompanying memorandum of today's date, it is hereby ORDERED that:

1. Defendants' motions (Docs. 22, 26) for summary judgment are GRANTED on Counts 1-4.

2. Counts 5-7 are DISMISSED without prejudice because the court declines to exercise supplemental jurisdiction. <u>See</u> 28 U.S.C. § 1367(c).

3. The Clerk of Court is respectfully requested to CLOSE this case.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KYLE BEATTY,** | : | **CIVIL ACTION NO. 4:23-CV-364** |
| | : | |
| **Plaintiff** | : | **(Judge Neary)** |
| | : | |
| v. | : | |
| | : | |
| **CLINTON GARDNER and CALVIN** | : | |
| **IRVIN,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Law enforcement officers have two key responsibilities. The first is to protect and defend the communities they serve from those who are alleged to have offended the law. And the second is to respect the legal protections afforded to these alleged offenders while the officers engage in their law enforcement duties. This case concerns the latter responsibility.

Plaintiff Kyle Beatty alleges seven constitutional and state law claims against defendants Officer Clinton Gardner and Detective Calvin Irvin resulting from the parties' interactions at a Williamsport gas station in August 2021. (Doc. 1). Defendants have moved for summary judgment on all claims. (Docs. 22, 26). The court will grant these motions insofar as they relate to Beatty's federal claims, decline to exercise supplemental jurisdiction over his state law claims, and dismiss those state law claims without prejudice.

## I.    <u>Factual Background & Procedural History</u>[1]

At issue here is whether Officer Gardner and Detective Irvin violated Beatty's constitutional rights and state tort law during the parties' encounter on August 31, 2021. That day, police saw Beatty and his girlfriend, Anaise Lopez, running errands in downtown Williamsport, Pennsylvania. (Doc. 25 ¶ 5). Beatty stopped at a Turkey Hill gas station to fuel up on gas and purchase food and drink; a police vehicle then parked near Lopez's Nissan Altima that Beatty had been driving. (<u>Id.</u> ¶¶ 1-2, 9-11). It is undisputed the police did not stop the vehicle. (<u>Id.</u> ¶ 10). Beatty and Lopez exited the Altima and went inside the gas station, leaving the driver's side window down. (<u>Id.</u> ¶ 12). Officer Gardner then walked over to the vehicle, looked inside the open window with a flashlight, and signaled for Detective Irvin to come to the vehicle. (<u>Id.</u> ¶ 15; Doc. 31-2 ("Detective Irvin 1") at 0:00:00-0:00:26).

What happened next is disputed by the parties. Defendants claim Officer Gardner "immediately detected the odor of marijuana coming from the Vehicle" and "observed a marijuana joint and marijuana flakes inside the vehicle," as did

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. <u>Id.</u> Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (<u>See</u> Docs. 25, 27, 31, 35). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

2

Detective Irvin (Doc. 25 ¶¶ 16-18; Doc. 25-3 ("Detective Irvin Dep.") at 12:1-5, 14:3-6; Doc. 25-5 ("Officer Gardner Dep.") at 13:18-14:21). Beatty denies the presence of marijuana or any "drugs or residue within the vehicle." (Doc. 31 ¶¶ 16). Officer Tyson Minier, who also was on the scene but is not a named defendant, testified that while he recalls Officer Gardner telling him that there was marijuana in the vehicle, he did not remember whether he saw any marijuana when he looked into the vehicle. (Doc. 31-8 at 9:15-23).

Turning back to what the record clearly reflects, Lopez exited the gas station and approached the defendants, inquiring about what was happening. (Doc. 27 ¶ 25g-h). Officer Gardner told Detective Irvin to "stay with her," and thereafter entered the gas station and patted Beatty down while Detective Irvin remained outside with Lopez. (Doc. 25 ¶ 21; Doc. 31-2 ("Officer Gardner 1") at 0:00:38-0:00:50). Before Officer Gardner searched Beatty, Beatty stated "Do you want to search me? Go ahead." (Officer Gardner 1 at 0:00:54-0:00:56). Officer Gardner escorted Beatty to the vehicle while telling Beatty to "come out and chat" and that he "just want[s] to talk about the roach and the weed in [Beatty's] car." (Officer Gardner 1 at 0:00:58-0:01:12). Meanwhile, Detective Irvin informed Lopez she was under investigation due to marijuana in the vehicle and she needed to walk to, and remain outside of, the car with Detective Irvin. (Doc. 27 ¶ 25h-i; Detective Irvin 1 at 0:00:40-0:01:20).

Once Officer Gardner returned with Beatty and rejoined Detective Irvin and Lopez around the Altima, Lopez stated there was no marijuana in the vehicle, and Officer Gardner responded there was a "roach in the cupholder" and "scraps of bud on the driver's floor." (Officer Gardner 1 at 0:01:24-0:01:34). Officer Gardner

3

instructed Beatty and Lopez that they could either consent to Officer Gardner searching the vehicle or Officer Gardner would tow the vehicle and apply for a search warrant. (Doc. 27 ¶ 25n). Beatty responded to Officer Gardner with "you can search it right now," and Lopez added "there's literally nothing in it." (Doc. 27 ¶ 25o). Before either defendant initiated a search of the vehicle, defendants asked Beatty and Lopez if they had any identification. (Officer Gardner 1 at 0:02:08-0:02:11). Detective Irvin then asked Beatty for his name, Beatty replied with "I'm not under arrest" and told Lopez not to let defendants search the vehicle, an instruction with which Lopez complied. (Id. at 0:02:12-0:02:18; Doc. 25 ¶ 24).

After Lopez revoked her consent, Officer Gardner proceeded to place Beatty in handcuffs with Detective Irvin's help, and defendants similarly restrained Lopez. (Detective Irvin 1 at 0:02:16-0:02:36). Officer Gardner claims there was "escalation in their demeanor . . . [s]o ultimately they were handcuffed" and that Beatty was antagonizing Lopez. (Officer Gardner Dep. at 19:13-20:8). Defendants told Lopez to stop as Lopez repeatedly and increasingly in volume requested a female officer, and defendants pressed Beatty's chest to have him sit on the hood of the vehicle. (Officer Gardner 1 at 0:02:48-0:03:40). Beatty said to defendants, "You're real tough;" Detective Irvin turned Beatty around, placed him face-down on the hood of Lopez's vehicle, and searched his pockets. (Id. at 0:03:40-0:04:00). Detective Irvin did not find any contraband on Beatty in this search. (Detective Irvin Dep. at 19:16-17).

After removing a phone and wallet from Beatty's pockets and while Lopez continued speaking loudly to Officer Gardner, Detective Irvin quietly conversed with Beatty about the marijuana and Beatty assured him that he could convince

4

Lopez to agree to a search of her vehicle. (Detective Irvin 1 at 0:03:51-0:04:08; Doc. 27 ¶ 25x). Lopez admitted that there was a marijuana roach from two days before in the car. (Gardner 1 at 0:04:24-0:04:37). Detective Irvin escorted Beatty to the backseat of the squad car and the two spoke as Detective Irvin stood outside the open back door, where Beatty provided his first and last name and discussed Lopez's behavior. (Detective Irvin 1 at 0:04:18-0:06:00; Doc. 27 ¶ 25z). Defendants cannot pinpoint at what point in time backup assistance was called, but Williamsport City Officer Zachary Geary arrived while Beatty and Detective Irvin were talking at the squad car and assisted Officer Gardner with escorting Lopez and placing her inside the backseat of another squad car. (Officer Gardner Dep. at 22:24-24:12; Officer Gardner 1 at 0:05:06-0:05:42).

Officer Gardner returned to inform Beatty that Lopez was under arrest for aggravated assault; Beatty maintained that he and Lopez did not do anything to warrant these events, and Detective Irvin replied that "with the marijuana and the smell and the actual roach in the car, there was an investigation" during which Beatty vehemently objected. (Detective Irvin 1 at 0:06:02-0:06:37). Williamsport City Officer Tyson Minier arrived at the scene and defendants gave him their summary of the situation at hand, as well as pointed him to look in Lopez's vehicle through the window. (Doc. 27 ¶ 25jj; Doc. 31-2 ("Officer Gardner 2") at 0:00:34-0:01:11).

Officer Gardner opened the squad car door to Beatty, still handcuffed in the backseat, and asked for his name. (Doc. 27 ¶ 25mm). Beatty did not offer his name to Officer Gardner, reasoning defendants already possessed his identification, and Officer Gardner told Beatty, "I'll arraign you as a John Doe. Until you decide to give

5

the court your name, you can sit in jail." (Id. ¶ 25nn-oo, rr). Detective Irvin retrieved Beatty's driver's license from his wallet, ran Beatty's name and date of birth on radio, discovered that Beatty's license is subject to ignition interlock restrictions, and noted to Officer Gardner there is no ignition interlock in Lopez's vehicle. (Id. ¶ 25uu-ww). Defendants returned to the squad car to discuss the incident and to inform Beatty they would take him to City Hall once a tow arrived for Lopez's vehicle, when Beatty explained that he is from Pennsylvania, but Lopez is from Boston, Massachusetts and drove to Williamsport from there; he had warned her of the difference in legality and treatment of marijuana between the two states. (Id. ¶ 25xx-yy).

Officer Gardner drove Detective Irvin and Beatty from Turkey Hill to City Hall and Detective Irvin brought Beatty into an interview room. (Doc. 27 ¶ 26; Detective Irvin 2 at 0:00:00-0:00:15). Beatty and Detective Irvin remained in the interview room together making casual conversation for approximately twelve minutes before Officer Gardner joined, bearing latex gloves, and Detective Irvin shut his bodycam off. (Id. at 0:00:15-0:12:30). Beatty was then strip-searched, which he claims was without probable cause or reasonable suspicion and performed in retaliation against protected speech activity. (Doc. 25 ¶ 42; Doc. 31 ¶ 43). Officer Gardner contends the strip search was necessary and was justified by his experience in the Narcotics Unit. (See Officer Gardner Dep. at 30:2-31:3). Defendants did not find any contraband on Beatty's person as a result of this strip search. (Doc. 25 ¶ 44).

Lopez was later charged in a three-count information of aggravated assault, simple assault, and harassment in the Court of Common Pleas of Lycoming County. (Doc. 25-7 at ECF 4). The government filed an amended information charging her with harassment and disorderly conduct. (<u>Id.</u> at ECF 5). During the bench trial, the court found "Officer Gardner's testimony to be credible" and found Lopez guilty of both offenses. (Doc. 25-12). Beatty was never charged with a criminal offense. (Doc. 25 ¶ 46).

Beatty sued Officer Gardner and Detective Irvin, raising the same seven claims in his complaint against both defendants. (Doc. 1 at 5-9). Four arise under 42 U.S.C. § 1983: (1) unreasonable arrest, (2) unreasonable stop, (3) unreasonable search, and (4) First Amendment retaliation. (<u>Id.</u> at 5-7). The remaining are Pennsylvania state law tort claims: (1) false arrest/false imprisonment, (2) battery, and (3) assault. (<u>Id.</u> at 8-9). Discovery has completed, and both defendants have moved for summary judgment. (Docs. 22, 26). These motions are fully briefed and are ripe for disposition. (Docs. 23, 30, 32, 34, 36, 40).

## II.    **<u>Legal Standard</u>**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Mall Chevrolet, Inc. v. General Motors LLC</u>, 99 F.4th 622, 631 (3d Cir. 2024) (quoting

7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

There are "two closely related methods for a movant to succeed at summary judgment." Mall Chevrolet, 99 F.4th at 630. "First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(a)). "Second, under the Celotex approach, a moving party may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case *on which that party will bear the burden of proof at trial.*'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The nonmoving party can defeat a motion for summary judgment by producing evidence to establish a genuine issue of material fact. Anderson, 477 U.S. at 256. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477

8

U.S. at 252. Moreover, if the nonmovant's version of disputed facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## III.    Discussion

Defendants move for summary judgment on all claims. First, they contend Lopez's state conviction stemming from the parties' encounter bars judgment against them in Beatty's civil case under Heck v. Humphrey, 512 U.S. 477 (1994). On the merits, defendants maintain they had probable cause to stop, search, and arrest Beatty, which negates his constitutional and state law tort claims. In the alternative, they contend qualified immunity shields them from judgment on the constitutional claims, and the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA") immunizes them on the state law claims.

### A.  The Heck Doctrine Does Not Apply

As a threshold matter, defendants claim Heck precludes all of Beatty's claims. (Doc. 23 at 2 n.1; Doc. 30 at 19-21). Since Lopez was convicted of criminal offenses stemming from the Turkey Hill incident and because the judge in those proceedings found Officer Gardner's testimony regarding observing marijuana to be credible, defendants contend that allowing the jury to make an adverse credibility determination would upset Lopez's state court conviction. Id. Not so.

Heck concerned a state prisoner challenging the constitutionality of his conviction in a Section 1983 action. Heck, 512 U.S. at 478. The prisoner alleged, among other things, law enforcement had "knowingly destroyed evidence which

9

was exculpatory in nature and could have proved [petitioner's] innocence[.]" <u>Id.</u> at 479 (internal quotation marks omitted). The Supreme Court held where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." <u>Id.</u> at 487. Conversely, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed[.]" <u>Id.</u> (emphasis in original).

Beatty's claims are not barred by <u>Heck</u>. He was not charged with, let alone convicted of, any offense stemming from the Turkey Hill incident. (Doc. 25 ¶ 36). And so, the state court judge made no findings regarding Officer Gardner's credibility with respect to Beatty. <u>Heck</u> stands for the proposition that persons cannot bring civil rights actions which would invalidate *their* criminal convictions, not convictions of others. <u>Heck</u>, 512 U.S. at 487 (prohibiting civil rights claim which would invalidate "any outstanding criminal judgment against the *plaintiff*") (emphasis added). Perhaps Lopez would be precluded from bringing claims against Officer Gardner and Detective Irvin under <u>Heck</u>, but Beatty is not.

**B. Probable Cause Existed, So Beatty's Constitutional Claims Fail**

Section 1983 prohibits state and local officials, acting under color of law, from depriving persons "of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. As the Supreme Court has observed, this statute "creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." <u>City of Oklahoma v. Tuttle</u>, 471 U.S.

10

808, 816 (1985). Therefore, a plaintiff seeking to establish a claim under Section 1983 "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

Beatty's constitutional claims—unreasonable arrest, unreasonable stop, unreasonable search, and First Amendment retaliation—all hinge on whether defendants had probable cause or reasonable suspicion. As discussed below, the totality of the circumstances demonstrates beyond dispute that they did with respect to the arrest, stop, and two of the search claims, so these claims do not survive summary judgment, nor does the retaliation claim relating to these underlying claims. While the third search—Beatty's strip search—was not clearly supported by reasonable suspicion, qualified immunity shields defendants from judgment on this claim and the resultant retaliation claim. Thus, none of these claims survive summary judgment.

### 1. Unreasonable Arrest

A plaintiff asserting an unreasonable arrest claim "must establish '(1) that there was an arrest; and (2) that the arrest was made without probable cause.'" Harvard v. Cesnalis, 973 F.3d 190, 199 (3d Cir. 2020) (quoting James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012)). Such a claim "will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee[.]" Dempsey v. Bucknell Univ., 834 F.3d 457, 477 (3d Cir. 2016).

"Probable cause exists if there is a fair probability that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (quotation

11

marks and citation omitted). Law enforcement have probable cause to arrest an individual "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). This determination requires officers to "consider plainly exculpatory evidence in addition to inculpatory evidence . . . 'even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists.'" Harvard, 973 F.3d at 200 (quoting Wilson, 212 F.3d at 790).

Courts evaluating probable cause at the summary judgment stage "must assess probable cause based upon the 'totality-of-the-circumstances' available to the arresting officer and view those circumstances in the light most favorable to" the plaintiff. Id. (citing Dempsey, 834 F.3d at 467-68). This requires comparing "whether the plainly exculpatory evidence available to the arresting officer" carries more weight than the probable cause that otherwise exists. Id. Because an assessment of probable cause is "necessarily fact-intensive," the factfinder at trial, rather than a judge at summary judgment, typically resolves this question. Dempsey, 834 F.3d at 468; see also Montgomery v. De Simone, 159 F.3d 120, 124 (3d Cir. 1998) (remarking "the question of probable cause in a section 1983 damage suit is one for the jury."). But summary judgment is appropriate where "a reasonable jury could not find a lack of probable cause" for the plaintiff's arrest. Id.

The parties dispute only whether probable cause existed for Beatty's arrest, not whether such arrest occurred. (Doc. 25 ¶ 30; Doc. 27 ¶ 25ii; Doc. 31 ¶ 25). Beatty

12

was never charged with committing any crimes. (Doc. 25 ¶ 46). Officer Gardner and Detective Irvin contend, however, that Officer Gardner's detection of a marijuana joint and flakes in the vehicle, coupled with the fact that the surrounding area was known for drug activity, established probable cause. (Docs. 23 at 7-9; 30 at 7-8). Beatty disputes both that he drove in a high narcotics trafficking area and that there was marijuana in the vehicle. (Doc. 31 ¶¶ 7, 16).

The record demonstrates defendants had probable cause to arrest Beatty. While footage from his body-worn camera is inconclusive, Officer Gardner provided uncontroverted testimony that he saw a marijuana roach and marijuana flakes in the vehicle. (Officer Gardner Dep. at 13:18-14:21). It is irrelevant that Beatty claims there was nothing illegal in the vehicle since he was not present and has offered no evidence whatsoever to counter Officer Gardner's eyewitness account. In fact, Officer Gardner's observations were bolstered by Lopez's later admission that there was a marijuana roach in the car. (Gardner 1 at 0:04:24-0:04:37).

Even assuming, for the sake of argument, the marijuana was medicinal in nature, it is illegal to possess medical marijuana in Pennsylvania in "dry leaf or plant form." 35 P.S. § 10231.303(b)(3); id. § 10231.304(b)(1) ("It is unlawful to . . . [s]moke medical marijuana."). Therefore, viewing the record in the light most favorable to Beatty, the totality of the circumstances makes evident there was a "fair probability" marijuana was in the vehicle. Harvard, 973 F.3d at 200; Wilson, 212 F.3d at 789. And because there was, defendants had probable cause to arrest Beatty. Orsatti, 71 F.3d at 483.

13

### 2. Unreasonable Stop

Beatty claims defendants unreasonably stopped him "in the complete absence of reasonable suspicion to believe that he was engaged in criminal conduct or was armed and dangerous." (Doc. 1 ¶ 40). Defendants maintain they had reasonable suspicion to stop Beatty for the same reasons they had probable cause to arrest him: among other things, Officer Gardner's observation of a marijuana joint and flakes in the vehicle, the fact that the surrounding area was known for drug activity, and Beatty's "not making eye contact and appearing unusually vigilant." (Docs. 23 at 7-9; 30 at 7-8).

Unreasonable stops offend the Fourth Amendment. United States v. Jackson, 120 F.4th 1210, 1218 (3d Cir. 2024); Terry v. Ohio, 392 U.S. 1, 9 (1968). An officer may conduct a stop after obtaining a warrant, or he may conduct a brief, investigatory stop absent a warrant if he has a reasonable, articulable suspicion of criminal activity. Jackson, 120 F.4th at 1218; Illinois v. Wardlow, 528 U.S. 119, 123 (2000). The reasonable suspicion required for a Terry stop is less than probable cause but requires an officer "to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." Wardlow, 528 U.S. at 123-24 (quoting Terry, 392 U.S. at 27).

The legality of Terry stop is a two-part inquiry. Jackson, 120 F.4th at 1218. At step one, courts consider if the stop was "justified at its inception—that is, whether the stop was supported by reasonable suspicion at the outset." United States v. Johnson, 592 F.3d 442, 452 (3d Cir. 2010) (internal quotation marks and citations omitted). Next, courts must determine "whether the manner in which the stop was

14

conducted was reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 451, 452 (internal quotation marks and citations omitted).

Since they had probable cause to arrest Beatty, defendants necessarily bore a reasonable suspicion to stop him inside the Turkey Hill. Wardlow, 528 U.S. at 123-24. Beatty challenges the justification for this stop; he disputes whether he was driving in a high-crime area, avoiding eye contact with the officers, and the presence of marijuana in the vehicle. (Doc. 31 ¶¶ 6, 7, 16). True, merely driving in a high crime area alone does not provide reasonable suspicion of criminal activity. See Wardlow, 528 U.S. at 124 ("[I]t was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police."). But, as noted above, Officer Gardner believed he saw marijuana in the vehicle and the forms of the marijuana—a joint and marijuana flakes—are prohibited by Pennsylvania law. (Officer Gardner Dep. at 13:18-14:21); 35 P.S. § 10231.303(b)(3); id. § 10231.304(b)(1). Therefore, as Officer Gardner bore a reasonable, articulable suspicion of criminal activity justifying the stop, defendants did not violate Beatty's Fourth Amendment rights in effectuating it.

15

### 3. Unreasonable Search

Beatty alleges Officer Gardner and Detective Irvin unreasonably searched him three times: (1) inside the Turkey Hill store; (2) on the hood of the vehicle; and (3) during the strip search conducted at the police station. (Doc. 1 ¶ 43).

Just like unreasonable stops, unreasonable searches violate the Fourth Amendment. United States v. Williams, 898 F.3d 323, 329 (3d Cir. 2018); Horton v. California, 496 U.S. 128, 133 (1990). Courts assessing the reasonableness of a search "have balanced the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Maryland v. Buie, 494 U.S. 325, 331 (1990). For example, a search incident to arrest is permissible "when, under all the circumstances, there remains a reasonable possibility that the arrestee could access a weapon or destructible evidence in the container or area being searched." United States v. Shakir, 616 F.3d 315, 321 (3d Cir. 2010).

As to the first search inside the Turkey Hill store, Beatty maintains he did not consent to a search, but that is "blatantly contradicted by the record." Scott, 550 U.S. at 380. Bodycam footage depicts Beatty stating "Do you want to search me? Go ahead." (Officer Gardner 1 at 0:00:54-0:00:56). His consent thus negates this unreasonable search claim. Williams, 898 F.3d at 329; Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (noting the validity of "a search that is conducted pursuant to consent."); Florida. v. Jimeno, 500 U.S. 248, 251 (1991) (assessing consent to a search under an objective reasonableness standard). Therefore, defendants are granted summary judgment as to this first unreasonable search claim.

16

The second search, on the hood of the vehicle after Beatty was arrested, also was permissible. It is axiomatic "that a search incident to a warrantless arrest is valid if the arrest itself is valid." United States v. Brown, 33 F. App'x 606, 608 (3d Cir. 2002) (citing United States v. Kithcart, 134 F.3d 529, 531 (3d Cir. 1998)); see also Beck v. Ohio, 379 U.S. 89, 91 (1964) ("The constitutional validity of the search . . . must depend on the constitutional validity of the . . . arrest."). Beatty's arrest was lawful as it was supported by probable cause, and thus the search incident to his arrest also was lawful.

Conversely, Beatty's strip search at the police station was arguably unlawful. "Undergoing such an inspection is undoubtedly humiliating and deeply offensive." Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 566 U.S. 318, 341 (2012) (Alito, J., concurring); see also Canedy v. Boardman, 16 F.3d 183, 185 (7th Cir. 1994) ("[O]ne of the clearest forms of degradation in Western Society is to strip a person of his clothes. The right to be free from strip searches and degrading body inspections is thus basic to the concept of privacy."). Precisely due to its invasiveness, a strip search must be supported by "reasonable suspicion of concealment of weapons or contraband." United States v. Parker, 458 F. Supp. 3d 260, 265 (M.D. Pa. 2020) (observing that neither the Supreme Court nor the Third Circuit have not directly addressed non-institutional strip searches and collecting cases from courts which have established this standard). "Reasonable suspicion could arise from the offense of arrest itself or from the particularized facts and circumstances known to the arresting officer." Id.

17

The record does not clearly demonstrate defendants bore such reasonable suspicion. For one, they already searched Beatty twice—once inside the Turkey Hill and another incident to his arrest—before they strip-searched him, neither of which uncovered weapons or contraband. (Officer Gardner 1 at 0:00:38-0:00:50); (Id. at 0:03:40-0:04:00); (Detective Irvin Dep. at 19:16-17). Second, by this point, defendants were aware both that the vehicle was owned by Lopez and that Lopez admitted the marijuana in the vehicle was hers as well. (Doc. 25 ¶¶ 1-2); (Gardner 1 at 0:04:24-0:04:37). Defendants merely support their decision to strip search Beatty with their past experience, rather than "particularized facts and circumstances" to Beatty which would bear a reasonable suspicion that he, rather than Lopez, had illicit materials on his person. Parker, 458 F. Supp. 3d at 265.

But while defendants may have violated Beatty's rights by subjecting him to a strip search, they are insulated from judgment by qualified immunity. This doctrine shields officers from Section 1983 liability unless they violate a right that was clearly established at the time the events transpired. Urda v. Sokso, No. 24-1804, __ F.4th __, 2025 WL 2046175, at *1 (3d Cir. July 22, 2025). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Kisela v. Hughes, 584 U.S. 100, 104 (2018) (quoting White v. Pauly, 580 U.S. 73, 79 (2017)).

Beatty does not cite to caselaw clearly establishing that law enforcement, in the non-institutional setting, may not strip search an individual without reasonable suspicion of weapons and contraband. That is unsurprising, as this court previously observed neither the Supreme Court nor the Third Circuit directly addressed the

18

constitutional standards governing non-institutional strip searches. <u>Parker</u>, 458 F. Supp. 3d at 265. Because this right was not clearly established when defendants conducted the strip search, they are shielded from judgment for doing so by qualified immunity and will be granted summary judgment on this claim.

### 4. First Amendment Retaliation

Beatty's final constitutional claim is for First Amendment retaliation. He alleges defendants "retaliated against him for engaging in . . . protected activity by following him, harassing him, holding him against his will, laying hands on him multiple times, handcuffing, detaining, arresting, and searching him three separate times all in the complete absence of probable cause and reasonable suspicion." (Doc. 1 ¶ 46). The protected speech, according to Beatty, was his refusal to provide defendants with his identification and his instruction to Lopez to withdraw her consent to search the vehicle. (<u>Id.</u> ¶¶ 17-18).

The government generally may not retaliate against a person for engaging in constitutionally protected speech. <u>Nieves v. Bartlett</u>, 587 U.S. 391, 398 (2019) (citing <u>Hartman v. Moore</u>, 547 U.S. 250, 256 (2006)). A person whose First Amendment rights are violated in such fashion may seek judicial relief. <u>Id.</u> But to do so, the "plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" <u>Id.</u> (quoting <u>Hartman</u>, 547 U.S. at 259). The animus must be the but-for cause of the First Amendment violation. <u>Id.</u>

This analysis turns on whether probable cause existed for the plaintiff's arrest. <u>Id.</u> at 404. If it did, "a retaliatory arrest claim fails." <u>Id.</u> As noted above,

19

defendants had probable cause to arrest Beatty. Therefore, this claim cannot survive summary judgment. Id. Nor can Beatty demonstrate a causal connection between his stop, search in the Turkey Hill, and search incident to his arrest with purported retaliatory animus because those actions also were lawful. Therefore, his First Amendment retaliation claim on these grounds fail, too.

Conversely, whether defendants' decision to strip-search Beatty was lawful is not clearly supported by the record. But even assuming it was not, and that Beatty could demonstrate a causal connection between his speech and his strip search, his retaliation claim still would be barred by qualified immunity. Put simply, if binding caselaw does not clearly establish the constitutional standard for engaging in a non-institutional strip search, then caselaw also does not clearly establish the right to be free from retaliation relating to such a strip search. Therefore, the court will grant summary judgment to defendants on this claim.

### C. The Court Declines To Exercise Supplemental Jurisdiction Over Beatty's State Law Claims

In addition to his federal constitutional claims, Beatty also alleges false arrest, assault, and battery claims under state law. Having granted defendants summary judgment on all federal claims, this court has the discretion to exercise supplemental jurisdiction over Beatty's state law claims. 28 U.S.C. § 1367(c)(3). The court will decline to exercise its discretion to resolve these claims because doing so is not unfair to the parties and does not unduly hinder judicial economy. Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) ("where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must*

20

decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (emphasis in original) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)); see also Reiner v. Northumberland Cnty., 734 F. Supp. 3d 379, 390 (M.D. Pa. 2024) (declining to exercise supplemental jurisdiction where all federal claims had been dismissed); Vorobyev v. Wolfe, 638 F. Supp. 3d 410, 429 (M.D. Pa. 2022) (same). Therefore, Beatty's state law claims will be dismissed without prejudice.

## IV.   Conclusion

Defendants move for summary judgment on all of Beatty's claims. (Docs. 22, 26). The court will grant these motions as they relate to Beatty's federal constitutional claims. The court will decline to exercise supplemental jurisdiction over Beatty's state law claims and will dismiss these claims without prejudice. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    August 29, 2025

## CERTIFICATE OF SERVICE

I, Joshua J. Cochran, hereby certify that I served a true and correct copy of the Brief of Appellant and Appendix via electronic mail on this 16th day of December, 2025:

**Electronically:**     electronic_briefs@ca3.uscourts.gov

slaughli@travelers.com

awhite@mcclaw.com

SCHEMERY ZICOLELLO, P.C.

By:    _s/Joshua J. Cochran_____
    Joshua J. Cochran, Esquire
    Pa. I.D.# 206807
    Attorneys for Appellant

    333 Market Street
    Williamsport, PA 17701
    Telephone: (570) 321-7554
    Email: josh@sz-law.com