# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## No. 25-2860

_____

KYLE BEATTY,

Appellant

v.

CLINTON GARDNER AND CLAVIN IRVIN,

Appellees

_____

Pennsylvania - Williamsport

United States District Court for the Middle District of Pennsylvania

4:23-cv-00364

_____

## RESPONDING BRIEF OF APPELLEE CLINTON GARDNER

Shawna R. Laughlin, Esq.
William J. Ferren & Associates
P.O. Box 2903
Hartford, CT 06104-2903
(570) 330-8284
slaughli@travelers.com
*Attorney for Appellee Gardner*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

COUNTER STATEMENT OF THE CASE ............................................................ 1

SUMMARY OF THE ARGUMENT ..................................................................... 7

STANDARD/SCOPE OF REVIEW ..................................................................... 7

ARGUMENT FOR APPELLEE ........................................................................... 8

    I.    The trial court correctly held that probable cause supported the arrest and the search incident to arrest ........................................... 8

        A.    The Receipt/Inventory of Seized Property indicating "Nothing Recovered" following a search of the car does not defeat probable cause ................................................... 11

        B.    Beatty's and Lopez's denial of having marijuana at least 16 times does not defeat probable cause ......................... 15

        C.    Irvin's statement there very well may not be contraband in the car does not defeat probable cause .............. 17

        D.    Beatty's after-the-fact argument that Lopez stated there was a marijuana roach in the car as a way to explain the presence of one – if one so happened to be there – does not defeat probable cause ............................................... 19

    II.    The trial court correctly held that reasonable suspicion supported the initial stop ................................................................ 21

    III.    The trial court properly held the officers were entitled to qualified immunity related to the strip search ................................ 25

    IV.    The trial court properly dismissed the claim for First Amendment retaliation ................................................................... 27

CONCLUSION .................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Adams v. Williams,
407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) .......................................9

Alabama v. White,
496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) .............................21

Anderson v. Groga,
2013 WL 3242445 (W.D. Pa. June 25, 2013) ................................... 16, 17, 19

Ashcroft v. al-Kidd,
131 S.Ct. 2074 (2011).................................................................................25

Beck v. Ohio,
379 U.S. 307 (1959)................................................................................ 9, 10

Brinegar v. United States,
338 U.S. 160 (1949)....................................................................................10

Brockington v. City of Philadelphia,
354 F.Supp.2d 563 (E.D. Pa. 2005).............................................................9

Commonwealth v. El,
933 A.2d 657 (Pa.Super.Ct.2007)..............................................................10

Commonwealth v. Smith,
979 A.2d 913 (Pa.Super.Ct.2009)..............................................................10

Copeland v. Reading Police Department,
2008 WL 3890006, 2008 U.S.Dist.LEXIS 63957
(E.D.Pa. Aug. 21, 2008) .............................................................................10

District of Columbia v. Wesby,
583 U.S. 48, 138 S.Ct. 577, 199 L.Ed.2d 453 (U.S. 2018) .................... 15, 25

Donahue v. Gavin,
280 F.3d 371 (3d Cir. 2002) ........................................................................9

Eckman v. Lancaster City,
742 F.Supp.2d 638 (E.D.Pa. 2010)............................................................10

Fasold v. Justice,
409 F.3d 178 (3d Cir. 2005) ......................................................................7, 8

Garcia v. Cnty. of Bucks,
      155 F.Supp.2d 259 (E.D.Pa.2001)....................................................15

Gilles v. Davis,
      427 F.3d 197 (3d Cir. 2005) ...........................................................25

Hartline v. Gallo,
      546 F.3d 95 (2d Cir. 2008) ..................................................... 26, 28

Heck v. Humphrey,
      512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) .............5, 6

Hunter v. Bryant,
      502 U.S. 224 (1991)........................................................................25

Kokinda v. Breiner,
      557 F.Supp.2d 581 (M.D.Pa., 2008)................................................9

Merkle v. Upper Dulin Sch. Dist.,
      211 F.3d 782 (3d Cir. 2000) ...........................................................15

Navarette v. California,
      572 U.S. 393, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014) ...............21

Nieves v. Bartlett,
      587 U.S. 391, 139 S.Ct. 1715, 204 L.Ed.2d 1 (2019) ...................27

Palardy v. Township of Millburn,
      906 F.3d 76 (3d Cir. 2018) .............................................................27

Pitney v. City of Chester,
      461 F.Supp.3d 173 (E.D.Pa. 2020)................................... 25, 26, 28

Quinn v. Cintron,
      2013 WL 5508667 (E.D.Pa. October 3, 2013)..................... 15, 16

Sherwood v. Mulvihill,
      113 F.3d 396 (3d Cir. 1997) ..................................... 10, 11, 12, 13

Taha v. County of Bucks,
      862 F.3d 292 (3d Cir. 2017) ................................... 13, 14, 20, 28

Terry v. Ohio,
      392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ......................21

U.S. v. Joseph,
      730 F.3d 336 (3d Cir. 2013) ...................................... 13, 20, 28

iii

United States v. Cortez,
  449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ...................................21

United States v. Sokolow,
  490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) .....................................22

Wright v. City of Philadelphia,
  409 F.3d 595 (3d Cir.2005) ........................................................................10

**Statutes & Other Authorities:**

42 U.S.C. § 1983 .............................................................................. 1, 9, 27

Fed.R.Civ.P. 56 ...................................................................................7

## COUNTER STATEMENT OF THE CASE

Beatty initiated this action with claims for 42 U.S.C. §1983 unreasonable arrest, 42 U.S.C. §1983 unreasonable stop, 42 U.S.C. §1983 unreasonable search, 42 U.S.C. §1983 First Amendment retaliation, state law false arrest/false imprisonment, state law battery, and state law assault as the result of his interaction with the Defendants on August 31, 2021. (Appx30-40 (Compliant)). At that time, Beatty was the driver of the Nissan Altima. (Appx31 at ¶7 (Complaint); Appx113 at 16:24-25 (Beatty); Appx238 at 10:5-7 (Irvin)). The vehicle was owned by Beatty's girlfriend, Anaise Lopez. (Appx133 at 16:24-25 (Beatty)). The vehicle had an out-of-state license plate. (Appx258-269 (Incident Rpt); Appx273 11:21-22 (Gardner)). It was not overly personalized. (Appx258-269 (Incident Rpt); Appx273 at 11:24-12:2 (Gardner)). The vehicle and its occupants had been seen downtown. (Appx258-269 (Incident Rpt); Appx112 at 10:20 (Beatty); Appx272-273 at 8:16-9:17 (Gardner)). The occupants made efforts to ignore the police presence. (Appx258-269 (Incident Rpt); Appx272-273 at 8:16-9:17 (Gardner). Shortly thereafter they were seen leaving a high narcotics trafficking area. (Appx258-269 (Incident Rpt); Appx245 at 37:9- 16 (Irvin); Appx273 at 11:15-20 (Gardner)). The occupants continued to ignore the police presence. (Appx258-269 (Incident Rpt); Appx273 at 12:2-6 (Gardner)).

Beatty parked the vehicle at the Turkey Hill near the gas pumps. (Appx258-269 (Incident Rpt); Appx238 at 11:8-16 (Irvin); Appx273 at 12:23-24 (Gardner)).

No one stopped the vehicle. (Appx125 at 63:16-20 (Beatty)). The occupants went inside the gas station. (Appx258-269 (Incident Rpt); Appx238 at 11:24-25 (Irvin)). The driver's side window was down. (Appx133 at 95:3-5 (Beatty); Appx274 at 13:18 Gardner); Appx312 (videos)). They did not acknowledge the police were present. (Appx258-269 (Incident Rpt); Appx274 at 13:1-4 (Gardner)). The Turkey Hill is a high narcotics trafficking area. (Appx258-269 (Incident Rpt)). Defendant Gardner walked over towards the vehicle from which Beatty had exited. (Appx258-269 (Incident Rpt); Appx274 at 13:16 (Gardner); Appx312 (videos)). He immediately detected the odor of marijuana coming from the vehicle. (Appx258-269 (Incident Rpt); Appx322 at 9:13-25 (Lopez trial trx); Appx274 at 13:18-19 (Gardner)). Defendant Gardner also observed a marijuana joint and marijuana flakes inside the vehicle. (Appx258-269 (Incident Rpt); Appx322 1 at 9:13-25 (Lopez trial trx); Appx239 at 13:7-8 (Irvin); Appx274 at 13:20-24 (Gardner)). Defendant Irvin also observed the roach. (Appx239 at 13:11-14 (Irvin)). These were in plain view. (Appx258-269 (Incident Rpt); Appx239 at 13:12-14 and 14:7-22 (Irvin); Appx274 at 15:1-2 (Gardner)). The roach was located in the top of an ashtray in the driver's side door cupholder. (Appx239 at 13:19-23 (Irvin); Appx274 at 13:25-14:3(Gardner)). When Gardner entered the Turkey Hill, Beatty immediately put his hands up and permitted Gardner to pat him down. (Appx137 at 112:8-25 (Beatty); Appx275 at 17:4-5 (Gardner); Appx312 (videos)). Beatty then exited the Turkey Hill with his hands on his head even though Gardner told him he could put them down.

2

(Appx138 at 113:1-8 (Beatty); Appx312(videos)). The vehicle owner, Anaise Lopez, initially gave the officers consent to search the vehicle. (Appx258-269 (Incident Rpt); Appx275 at 19:2-5 (Gardner); Appx312 (videos)). She revoked that consent at the direction of Beatty when the officers requested they produce identification. (Appx138 at 115:10-19 (Beatty); Appx275 at 19:2-10 (Gardner); Appx312 (videos)). They both refused to identify themselves. (Appx258-269 (Incident Rpt); Appx240 at 17:10-12 (Irvin); Appx275 at 19:9-10 (Gardner); Appx312 (videos)). Lopez became loud and was yelling at the officers. (Appx258-269 (Incident Rpt); Appx275 at 19:20-21 (Gardner); Appx312 (videos)). She was not listening to simple commands. (Appx275 at 19:20-21 (Gardner); Appx312 (videos)). Lopez admitted there was an old roach in the car from her smoking marijuana in the car while in Massachusetts where it is legal. (Appx312 at video1 at 4:19-4:32). Beatty, too, began arguing with the officers and would not stay in one place as instructed. (Appx275 at 19:24-20:17 and 21:9-14 (Gardner); Appx312 (videos)). Beatty was handcuffed and placed in the back of the police car to remove him from the situation that was escalating with Lopez. (Appx240 at 18:23-19:2 (Irvin); Appx312 (videos)). Lopez was also escorted to a police vehicle. (Appx276 at 22:24-23:7 (Gardner); Appx312 (videos)). En route she drug her feet. (Appx312 (videos)). Once at the police car, she placed her feet on the outside of the vehicle and pushed backwards to restrict the officers from placing her inside the vehicle. (Appx312 (videos)). She then proceeded to kick one of the officers. (Appx276 at 22:24-23:7 (Gardner); Appx312 (videos)).

3

During this interaction, there was a woman at the gas pumps that was yelling at the officers. (Appx241 at 22:2-23:22 (Irvin); Appx277 at 26:14-25 (Gardner); Appx312 (videos)). There had to be a request for back up due to the actions of Beatty and Lopez. (Appx312 (videos); Appx276 at 23:9-13 (Gardner)). Lopez was charged with aggravated assault of a police officer, simple assault, harassment, disorderly conduct, and resisting arrest. (Appx313-350 (Lopez trial trx)).

At the time of this incident, Beatty's driver license was a limited license that required an ignition interlock. (Appx258-269 (Incident Rpt); Appx351-370 (PennDOT Driver Hx)). He was eligible to obtain a license without the restriction as of August 16, 2021. (Appx371-372 (PennDOT Ltr)). As of the date of the subject interaction, Beatty had not secured a license without the interlock ignition restriction. (Appx351-370 (PennDOT Driver Hx); Appx371-372 (PennDOT Ltr); Appx132 at 92:3-5 (Beatty)). The vehicle he had been driving that was owned by Lopez was not equipped with an ignition interlock. (Appx258-269 (Incident Rpt); Appx123 at 55:2-4 (Beatty)).

Beatty was transported to City Hall and was strip searched. (Appx278 at 29:22-30:7 (Gardner); Appx312(videos)). The strip search was completed to confirm or deny if there were drugs on his person. (Appx242 at 27:24-28:1 (Irvin); Appx278 at 30:8-31:3(Gardner)). Nothing was found on Beatty's person. (Appx242 at 28:2-4 (Irvin); Appx279 at 33:7-9 (Gardner)). He was released. (Appx243 at 30:11-12

4

(Irvin)). No charges were filed against him. (Appx243 at 30:13-15 (Irvin); Appx279 at 36:18-20(Gardner)).

A search warrant was obtained for the vehicle. (Appx373-376). The receipt/inventory indicates that there was nothing seized from the vehicle. (Appx377-378). Defendant Gardner searched the vehicle and found the originally seen roach and flakes as well as additional roaches. (Appx280 at 39:3-40:8 (Gardner)). At his discretion, those items were not retained. (Appx280 at 40:9-16 (Gardner)).  Also, at the discretion of the officers, no charges were filed against Beatty – although he could have been charged with possession, paraphernalia, disorderly conduct, and driving a vehicle without an ignition interlock. (Appx279-280 at 36:18-37:13 (Gardner)).

A non-jury summary trial was held for Lopez's charges of harassment and disorderly conduct. (Appx313-350 (Lopez Trial Trx)). She was found guilty by Judge Linhardt of disorderly conduct and summary harassment. (Appx381:3-6 and 384:4-8 (Lopez Trial Trx 2)). She was sentenced to jail time as a result. (Appx384:9-24 (Id.)). Judge Linhardt found that Defendant Gardner's testimony that he observed a marijuana roach and marijuana residue was credible. (Appx381 at 7-13[1] (Id.)). Judge Linhardt stated that "this entire matter escalated solely because of [Lopez's] behavior and [Beatty's] behavior, all of which was unnecessary." (Appx381 at 2:17-

---

[1] This determination cannot be upset or it would affect that underlying trial.  Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

19 (<u>Id</u>.)). Defendant Gardner has an extensive background in narcotics. (Appx389-393 (Gardner CV)).

Based upon the facts, the trial court properly held that the defendants were entitled to summary judgment related to the constitutional counts. The Court dismissed without prejudice the state law claims as it declined to exercise supplemental jurisdiction. (Appx8 (Order)).

## SUMMARY OF THE ARGUMENT

There is no genuine issue of material fact that the defendants had reasonable suspicion to stop and search Beatty and probable cause to arrest Beatty thereby precluding his constitutional claims as the trial court correctly held. There is also no genuine issue of material fact that the defendants were entitled to qualified immunity related to the strip search as the trial court correctly held.

## STANDARD/SCOPE OF REVIEW

This Court's review is *de novo*, "applying the same standard as did the District Court." Fasold v. Justice, 409 F.3d 178, 183 (3d Cir. 2005). "Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Id., *citing* Fed.R.Civ.P. 56.

## ARGUMENT FOR APPELLEE

I.     **The trial court correctly held that probable cause supported the arrest and the search incident to arrest.**

The trial court correctly held that there was probable cause support the arrest and the search incident to arrest based upon a totality of the circumstances known to the officers at the time of the arrest.  Most importantly, Gardner observed the smell of marijuana as well as a marijuana roach and marijuana flakes in plain view on the driver's side of the car after Beatty parked at a gas station known for drug activity, Irvin also observed the marijuana roach, and the car's owner, Beatty's girlfriend, Lopez, admitted there was a marijuana roach in the car.

Beatty argues that the trial

> court erroneously held: Officer Gardner provided uncontroverted testimony that he saw a marijuana roach and marijuana flakes in the vehicle. It is irrelevant that Beatty claims there was nothing illegal in the vehicle since he was not present and has offered no evidence whatsoever to counter Officer Gardner's eyewitness account.  In fact, Officer Gardner's observations were bolstered by Lopez's later admissions that there was a marijuana roach in the car.

(Appellant Brief p. 12). In support of this argument, he argues that the officers lied about the presence of marijuana in the car. Id. In support thereof, he offers that the vehicle search **AFTER** Beatty's arrest "found no contraband," Beatty and Lopez denied having marijuana at least 16 times, Irvin stated there very well may not be contraband in the car, and a self-proclaimed mischaracterization of Lopez's statement there WAS a marijuana roach in the car. Id.

8

"A claim under §1983 for false arrest . . . is grounded in the Fourth Amendment guarantee against unreasonable seizures." Kokinda v. Breiner, 557 F.Supp.2d 581 (M.D. Pa., 2008), *citations omitted*. "An 'arrest without probable cause is a constitutional violation actionable under section 1983.'" Brockington v. City of Philadelphia, 354 F.Supp.2d 563, 568 (E.D. Pa. 2005), *citations omitted*. However, to the extent the Court determines the arrest was initiated with probable cause, then the claim must fail. Id. *See also* Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002). "Probable cause to arrest depends 'upon whether, at the moment the arrest was made … the facts and circumstances within (the arresting officers) knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" Adams v. Williams, 407 U.S. 143, 148, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), *citing* Beck v. Ohio, 379 U.S. 307, 311-312 (1959). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Id. at 149, *citation omitted*. "Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action:

> 'in dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"

9

Id., *citing* Brinegar v. United States, 338 U.S. 160, 175 (1949).  In assessing probable cause, police officers are permitted to weigh evidence and make credibility determinations, even if those decisions later prove incorrect.  Eckman v. Lancaster City, 742 F.Supp.2d 638, 650 (E.D. Pa. 2010), *citing* Wright v. City of Philadelphia, 409 F.3d 595, 603 (3d Cir.2005).  "The constitutional validity of an arrest does not depend on the ultimate conviction of the accused."  Id., *citing* Wright.   "Instead, 'the facts must support a reasonable belief that there is a fair probability that the person committed the crime at issue.'"  Id., *citing* Copeland v. Reading Police Department, 2008 WL 3890006, at *5, 2008 U.S.Dist.LEXIS 63957, at *15 (E.D.Pa. Aug. 21, 2008).  "Police have probable cause when 'criminality is one reasonable inference; it need not be the only, or even the most likely, inference....'"  Id., *citing* Commonwealth v. Smith, 979 A.2d 913, 917 (Pa.Super.Ct.2009) (quoting Commonwealth v. El, 933 A.2d 657, 661 (Pa.Super.Ct.2007)).  "The Court may conclude, however, that probable cause existed as a matter of law if the evidence, viewed in the light most favorable to Beatty, would not support another factual finding."  Id., *citing* Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir.1997).

The trial properly held that there was probable cause for Beatty's arrest and the search incident to arrest.

10

**A. The Receipt/Inventory of Seized Property indicating "Nothing Recovered" following a search of the car does not defeat probable cause.**

After Beatty's and Lopez's arrests, the car was impounded and a search warrant secured to search the car. The Receipt/Inventory of Seized Property form filled out at that time indicated "Nothing Recovered." Beatty argues this indicates that the officers lied about seeing marijuana in the car. But, Lopez – the owner of the vehicle – admitted **<u>on scene</u>** there was a marijuana roach in the car. The admission as well as the totality of the circumstances from that stop established probable cause. The fact that Gardner decided against seizing the small amount of marijuana when a larger amount was not discovered upon searching the vehicle does not defeat probable cause.

A search warrant was secured for the subject vehicle. (Appx373-376 (App. for Search Warrant)). In the Affidavit of Probable Cause, Gardner stated he "immediately detected the odor of marijuana emitting from the vehicle," he "observed in plain view a marijuana joint, and marijuana flakes in plain view…." <u>Id</u>. After the search was completed, a Receipt/Inventory of Seized Property was completed indicating "nothing recovered." (Appx378). Gardner is the one the completed the search of the car and he has testified that he did find the originally seen roach and flakes as well as some additional roaches, but he did not seize them. (Appx280 at p. 38:7-40:16 (Gardner)). He explained:

> It's extremely common for us, especially in the narcotics unit, to not seize paraphernalia. If we seized every bit of paraphernalia our

11

evidence locker would be insane because we find a lot. So it's not uncommon to not seize paraphernalia.

Id. This housekeeping item of not seizing a small amount of marijuana does not mean that there was no marijuana at all thereby defeating probable cause. Not only has Gardner testified under oath (deposition and Lopez non-jury summary trial) that he had seen the marijuana roach and flakes, but he also swore to those facts in his Affidavit of Probable Cause to secure the warrant. Irvin has also testified that he saw the marijuana roach. (Appx239 at 13:4-14:22 (Irvin)). Most telling is that Lopez, the owner of the car, admitted to the officers on scene that there was a marijuana roach in the car from when she was in Massachusetts, noting it is legal there. (Appx312 video 1 at 3:56-4:32/7:28). At that time, the body-camera video captured the following exchange:

> Lopez: I'm really just frustrated. Just frustrated. And you would be fucking frustrated too. If you were out of town, legit just enjoying your fucking day and then cops out of nowhere accuse you….
>
> Gardner: You're being disorderly.
>
> Lopez: I'm being disorderly because I'm being vocal. Because I'm being mouthing off. You're being ridiculous. This is so fucking ridiculous. Because you all going to look so fucking stupid when you find no fucking weed on me.
>
> Beatty (in background): If you say there is a roach in there, that might be the most you are going to find in there …
>
> Lopez: Is a roach.

12

Gardner:  It's a roach and you guys are making ….

Lopez:    I'm from Massachusetts.

Gardner:  This is Pennsylvania.

Lopez:    I have an old roach from when I smoked in Massachusetts. Clearly two days ago.  Where it's legal. ….

Id.  Lopez does not say or allude to "**IF** there had actually been a roach in the car" or that the statement was given as an "explanation for how a roach could have been in the car" as Beatty offers now. In fact, Beatty did not even make this argument related to a distinction between an admission and an explanation in his response to statement of facts or any opposition to the Motions for Summary Judgment. (Appx587-601 (Beatty ANS to Gardner Facts); 988-1015 (Counterstatement); SAppx1-55 (Beatty Briefs in Opposition)). In response to Gardner's Statement of Facts, Beatty indicates that Lopez "misspoke" when she admitted there was marijuana roach in the car. (Appx593 #28 (Answer to Gardner Facts)). There is no evidence of record that is the case. It was not an argument at the trial court and was thereby waived. **See** U.S. v. Joseph, 730 F.3d 336 (3d Cir. 2013) and Taha v. County of Bucks, 862 F.3d 292 (3d Cir. 2017).

After a bench summary trial on charges filed against Lopez for disorderly conduct and summary harassment, Judge Linhardt found the testimony of Gardner about seeing the marijuana roach and flakes in the car was credible. (Appx381

13

(Lopez Trial Trx 2)). Lopez had been represented at the time by competent defense counsel. (Appx313-350 (Lopez Trial Trx)). He cross examined Gardner. Id. Gardner testified that Lopez admitted there was a roach in the car. (Appx334 at 21:20-23 (Id.); Appx335 at 22:19-23:3 (Id.)). Gardner's bodycam footage was reviewed and admitted as an exhibit. (Appx313-350 (Id.)). Lopez's attorney argued that there was no proof any marijuana being in the car because no one confiscated or took possession of it, there were no lab reports documenting it, "or anything else" to substantiate its existence. (Appx340 (Id.)). Judge Linhardt stated:

> The argument that [Lopez] Counsel makes that no roach was seized somehow suggesting that Officer Gardner's testimony that he observed marijuana residue and a marijuana roach in the vehicle was somehow a pretext and a lie, the Court does not find credible in the least. The Court finds Officer Garnder's testimony to be credible in that regard.

(Appx381 (Lopez Trial Trx 2)). He also did not agree that Lopez and Beatty did nothing wrong. Id. Judge Lindhardt found that "this entire matter escalated solely because of [Lopez's] behavior and [Beatty's] behavior, all of which was unnecessary and that "the officers had every right to conduct an investigation …." Id.

The totality of the circumstances led to probable cause here and the admission of Lopez that there was a marijuana roach in the car strengthens that probable cause regardless of whether or not the officer retained the small amount of marijuana/paraphernalia ultimately found during the search of the car.

14

**B. Beatty's and Lopez's denial of having marijuana at least 16 times does not defeat probable cause.**

The fact that two people facing arrest for possession of marijuana deny such possession does not defeat the probable cause of Gardner observing the smell of marijuana coming from the car and his actual observation of what he perceived to be a marijuana roach and marijuana flakes on the driver's side of the vehicle. Even Irvin has testified to seeing what Gardner has described as the marijuana roach. (Appx239 at 13:4-14:22 (Irvin)). The observation of the marijuana roach and flakes was not the only item that led to the arrests here. If this were the case, everyone could deny wrongdoing and the police would be required to let them go.

"Police do not have a constitutional duty to investigate a defendant's protestations of innocence or to search for evidence of affirmative defenses prior to making an arrest." Quinn v. Cintron, 2013 WL 5508667 at *4 (E.D. Pa. October 3, 2013), citing *Merkle v. Upper Dulin Sch. Dist.*, 211 F.3d 782, 790 n. 8 (3d Cir. 2000) (stating police officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed."); *Garcia v. Cnty. of Bucks,* 155 F.Supp.2d 259, 266 (E.D.Pa.2001) ("[A]n arresting officer does not, of course, have to accept at face value an arrestee's claim of innocence or mistaken identity"). **See also** District of Columbia v. Wesby, 583 U.S. 48, 67-68, 138 S.Ct. 577, 199 L.Ed.2d 453 (U.S. 2018). "A reasonable, competent officer may conclude that a putative defendant's protestations of innocence do not negate the

determination of probable cause because 'the protestations of innocence by an arrestee are so common as to be virtually a matter of course.'" Quinn at *4, *citing* Anderson v. Groga, 2013 WL 3242445 at *3 (W.D. Pa. June 25, 2013) (further citations omitted).

Furthermore, after her protestations of innocence, Lopez admitted to a marijuana roach being in the car. (Appx312, video 1 at 3:56-4:32/7:28). At that time, the body-camera video captured the following exchange:

> Lopez: I'm really just frustrated. Just frustrated. And you would be fucking frustrated too. If you were out of town, legit just enjoying your fucking day and then cops out of nowhere accuse you ….
>
> Gardner: You're being disorderly.
>
> Lopez: I'm being disorderly because I'm being vocal. Because I'm being mouthing off. You're being ridiculous. This is so fucking ridiculous. Because you all going to look so fucking stupid when you find no fucking weed on me.
>
> Beatty (in background): If you say there is a roach in there, that might be the most you are going to find in there ….
>
> Lopez: Is a roach.
>
> Gardner: It's a roach and you guys are making ….
>
> Lopez: I'm from Massachusetts.
>
> Gardner: This is Pennsylvania.
>
> Lopez: I have an old roach from when I smoked in Massachusetts. Clearly two days ago. Where it's legal.

16

Id. Lopez does not say or allude to "**IF** there had actually been a roach in the car" or that the statement was given as an "explanation for how a roach could have been in the car" as Beatty offers now. In fact, Beatty did not even make this argument related to a distinction between an admission and an explanation in his response to statement of facts or any opposition to the Motions for Summary Judgment. (Appx587-601 (Beatty Answer to Gardner Facts); 988-1015 (Beatty Counterstatement); SAppx1-55 (Beatty Briefs in Opposition)). In response to Gardner's Statement of Facts, Beatty indicates that Lopez "misspoke" when she admitted there was marijuana roach in the car. (Appx593 #28 (Beatty Answer to Gardner's Facts)). There is no evidence of record that is the case. Beatty and Lopez repeatedly denying any wrongdoing does not defeat or call into question probable cause here.

**C. Irvin's statement there very well may not be contraband in the car does not defeat probable cause.**

Beatty argues that because Irvin can be heard stating that "there very well may not be" related to contraband in the car while speaking with him defeats or calls into question probable cause. However, this statement is taken out of context. The interaction was as follows:

> Beatty: There's nothing in the car. Dude, I'm telling you.
>
> Irvin: And there well may not be.
>
> Beatty: If you say there's a roach in there that might be the most thing you're gonna find in there.

17

Irvin:  Come here.

Beatty: I'm saying if you see one ….

Irvin: Hold on, hold on. Have a seat in here, I'm gonna talk to you. Alright.

Beatty: Yeah, I'm listening. I'm not resisting. I'm from here, she is not.

Irvin:  That is fine. What is your name, so I know who I'm talking to?  That's it.  I'm Detective Irving from the District Attorney's office.

Beatty:  I don't know you.

Irving:  I'm introducing myself.  What is your name?

Beatty:  Kyle Beatty.

Irvin: Kyle Beatty, ok.  There's a roach in the car, we already got to that.

Beatty:  Ok. That's like a ticket.

Irvin:  I understand that.

Beatty: We aren't trafficking drugs over here.  That's my girlfriend.

Irvin: I get that. Ok. But the way she's acting ….

Beatty:  She's a hostile woman.

(Appx312 at video 2 at 3:30-5:00). Irvin states that there was a marijuana roach in the car to Beatty during the same conversation.  He also admitted seeing the roach at the scene during his sworn deposition testimony. (Appx239 at 13:11-14 (Irvin)). The statement attributed to Irvin does not defeat or call into question probable cause.

18

**D. Beatty's after-the-fact argument that Lopez stated there was a marijuana roach in the car as a way to explain the presence of one – if one so happened to be there – does not defeat probable cause.**

Lopez admitted to a marijuana roach being in the car. (Appx312 at video 1 at 3:56-4:32/7:28).   At that time, the body-camera video captured the following exchange:

> Lopez:   I'm really just frustrated. Just frustrated. And you would be fucking frustrated too. If you were out of town, legit just enjoying your fucking day and then cops out of nowhere accuse you ….
>
> Gardner:   You're being disorderly.
>
> Lopez:   I'm being disorderly because I'm being vocal. Because I'm being mouthing off. You're being ridiculous. This is so fucking ridiculous. Because you all going to look so fucking stupid when you find no fucking weed on me.
>
> Beatty (in background): If you say there is a roach in there, that might be the most you are going to find in there ….
>
> Lopez:   Is a roach.
>
> Gardner:   It's a roach and you guys are making ….
>
> Lopez:   I'm from Massachusetts.
>
> Gardner:   This is Pennsylvania.
>
> Lopez:   I have an old roach from when I smoked in Massachusetts. Clearly two days ago.  Where it's legal. ….

Id.  Lopez does not say or allude to "**IF** there had actually been a roach in the car" or that the statement was given as an "explanation for how a roach could have been

19

in the car" as Beatty offers now. In fact, Beatty did not even make this argument related to a distinction between an admission and an explanation in his response to statement of facts or any opposition to the Motions for Summary Judgment. (Appx587-601 (Beatty Answer to Gardner Facts); 988-1015 (Beatty Counterstatement); SAppx1-55 (Beatty Briefs in Opposition)). In response to Gardner's Statement of Facts, Beatty indicates that Lopez "misspoke" when she admitted there was marijuana roach in the car. (Appx593 #28 (Beatty Answer to Gardner Facts)). There is no evidence of record that is the case. This explanation cannot be considered by the Court on appeal. **See** U.S. v. Joseph, 730 F.3d 336 (3d Cir. 2013) and Taha v. County of Bucks, 862 F.3d 292 (3d Cir. 2017).

**II.    The trial court correctly held that reasonable suspicion supported the initial stop.**

The trial court correctly held there was reasonable suspicion for the initial stop as Gardner observed the smell of marijuana as well as a marijuana roach and marijuana flakes in plain view in the car Beatty had just been driving combined with the behavior observed of them prior to stopping at the Turkey Hill – a location known for drug activity. "The Fourth Amendment permits brief investigative stops … when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Navarette v. California, 572 U.S. 393, 396, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014), *citing* United States v. Cortez, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) and Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" Id. at 397, *citing* Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). "The standard takes into account 'the totality of the circumstances—the whole picture.'" Id., *citing* Cortez, *supra,* at 417, 101 S.Ct. 690. "Although a mere "'hunch'" does not create reasonable suspicion, *Terry, supra,* at 27, 88 S.Ct. 1868, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is

21

necessary for probable cause, *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)." Id.

Gardner has an extensive background in narcotics. (Appx389-393 (Gardner CV)). Based upon his experience, there were many factors that led him to stop Beatty. The vehicle he was driving had an out-of-state license plate. (Appx258-269 (Incident Rpt); Appx273 at 11:21-22 (Gardner)). It was not overly personalized. (Appx258-269 (Incident Rpt); Appx273 at 11:24-12:2 (Gardner)). The vehicle and its occupants had been seen downtown. (Appx258-269 (Incident Rpt); Appx112 at 10:20 (Beatty); 272-273 at 8:16-9:17 (Gardner)). The occupants made efforts to ignore the police presence. (Appx258-269 (Incident Rpt); Appx272-273 at 8:16-9:17 (Gardner)). Shortly thereafter they were seen leaving a high narcotics trafficking area. (Appx258-269 (Incident Rpt); 245 at 37:9-16 (Irvin); 273 at 11:15-20 (Gardner)). The occupants continued to ignore the police presence. (Appx258-269 (Incident Rpt); Appx272 at 12:2-6 (Gardner)). Beatty parked the vehicle at the Turkey Hill near the gas pumps. (Appx258-269 (Incident Rpt); Appx238 at 11:8-16 (Irvin); Appx273 at 12:23-24 (Gardner)). The occupants went inside the gas station. (Appx258-269 (Incident Rpt); Appx238 at 11:24-25 (Irvin)). The driver's side window was down. (Appx133 at 95:3-5 (Beatty); 274 at 13:18 (Gardner); 312 (videos)). They did not acknowledge the police were present. (Appx258-269 (Incident Rpt); Appx274 at 13:1-4 (Gardner)). The Turkey Hill is a high narcotics trafficking area. (Appx258-269 (Incident Rpt)). Gardner walked over towards the

vehicle from which Beatty had exited. (Appx258-269 (Incident Rpt); Appx274 at 13:16 (Gardner); 312 (videos)). He immediately detected the odor of marijuana coming from the vehicle. (Appx258-269 (Incident Rpt); Appx322 at 13-25 (Lopez Trial Trx); Appx274 at 13:18-19 (Gardner)). Gardner also observed a marijuana joint and marijuana flakes inside the vehicle. (Appx258-269 (Incident Rpt); Appx322 at 13-25 (Lopez Trial Trx); Appx239 at 13:7-8 (Irvin); 274 at 13:20-24 (Gardner)). These were in plain view. (Appx258-269 (Incident Rpt); 239 at 13:12-14 and 14:7-22 (Irvin); 274 at 15:1-2 (Gardner)). The roach was located in the top of an ashtray in the driver's side door cupholder. (Appx239 at 13:19-23 (Irvin); 274 13:25-14:3 (Gardner). When Gardner entered the gas station and talked to Beatty, he immediately put his hands up and told Gardner to pat him down. (Appx137 at 112:8-25 (Beatty); 275 at 17:4-5 (Gardner); 312 (videos)). The exchange was as follows:

Gardner: How's it going man?

Beatty: Good.

Gardner: What are you up to?

Beatty: Nothing man. You want to search me? Go ahead.

Gardner: (pats down Beatty's waistband using the back of his hands) Why don't you come out and chat with me. Put that down (referring to the soda Beatty was holding in his hand).

Beatty: Yo, man. (putting his hands up after walking outside of the Turkey Hill).

23

Gardner: I just want to talk about the roach and the weed in your car.

(Appx312 at Video 1 00:49-01:13).

All of these factors certainly amount to reasonable suspicion and even probable cause for the stop. The trial court properly held there was reasonable suspicion for the stop.

**III.    The trial court properly held the officers were entitled to qualified immunity related to the strip search.**

The trial court properly held that the officers were entitled to qualified immunity related to the strip search any possible unlawfulness of their conduct was not properly established at the time related to a non-institutional strip search.  Here, marijuana/paraphernalia was observed on Beatty's side of the car along with the smell of marijuana and the owner of the car, Beatty's girlfriend, assaulted an officer during the stop. It was reasonable to believe that Beatty may have been concealing contraband.  "Qualified immunity gives governmental officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2085 (2011).  "The qualified immunity standard 'gives ample room for mistaken judgements by protecting all by the plainly incompetent or those who knowingly violate the law." Gilles v. Davis, 427 F.3d 197, 203 (3d Cir. 2005), *quoting* Hunter v. Bryant, 502 U.S. 224, 229 (1991).  Officials are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" D.C. v. Wesby, 138 S.Ct. 577, 589 (2018), *citation omitted*.

"Police may strip search an arrestee based upon individualized, reasonable suspicion."  Pitney v. City of Chester, 461 F.Supp.3d 173, 175 (E.D. Pa. 2020), *citations omitted*.  There needs to be a "particularized and objective basis."  Id., *citation omitted*.  The Second Circuit has set out the following standard: "The Fourth

25

Amendment requires an individualized reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest before she may be lawfully subjected to a strip search." Id., *citing* Hartline v. Gallo, 546 F.3d 95, 100 (2d Cir. 2008). The strip search was completed to confirm or deny if there were drugs on his person. (Appx242 at 27:24-28:1 (Irvin trx); Appx278 at 30:8-31:3 (Gardner trx)). Specifically, Gardner testified that the strip search was done because:

> In my experience, specifically with narcotics, it is extremely commonplace for individuals to have something, you know, smaller, like smaller offense. I've had guys and girls offer up, like, small amounts of marijuana to just essentially make me go away. Or maybe the initial part of that investigation is just observing paraphernalia or something along those lines and then digging deeper into that.
>
> Often times, in my experience, both traffickers and users, one of the most common places that they conceal narcotics is in their groin area. So as a result of that, it's common practice for both the Narcotics Unit and the city police, specifically, when dealing with narcotics offenses, to strip search an individual to uncover if there are additional, you know, narcotics or what not, like specifically within those area. I've done body warrants on individuals that have concealed narcotics within their anus.

(Appx278 at 30:10-31:2 (Gardner)). Based upon the factors related to Beatty's actions on the date of the incident and Gardner's experience, there was nothing clearly established that the strip search violated Beatty's rights and Gardner is entitled to qualified immunity as that right was not clearly established.

26

**IV.    The trial court properly dismissed the claim for First Amendment retaliation.**

The trial court properly dismissed the claim for First Amendment retaliation as there was probable cause for the stop, arrest, and searches and there is no evidence set forth on appeal that the retaliation was a substantial or motivating force behind the arrest or that the arrest would not have occurred despite any protected speech. "To prevail on a § 1983 First Amendment retaliation claim, the plaintiff must prove that (1) he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link [existed] between the constitutionally protected conduct and the retaliatory action.'" Palardy v. Township of Millburn, 906 F.3d 76, 80-81 (3d Cir. 2018).   Instead of focusing on these elements, Beatty argues that the lack of probable cause he believes he has established proves that there is a First Amendment Retaliation Claim. While the U.S. Supreme Court has stated that probable cause for an arrest defeats a claim for retaliatory arrest, it stated that "if the plaintiff establishes the absence of probable cause, 'then … the plaintiff must show that the retaliation was a substantial or motivating factor behind the arrest, and, if that showing is made, the defendant can prevail only by showing that the arrest would have been initiated without respect to retaliation.'" Nieves v. Bartlett, 587 U.S. 391, 404, 139 S.Ct. 1715, 204 L.Ed.2d 1 (2019), *citations omitted*. While the trial court did find summary judgment for this claim because there was

27

probable cause, it also indicated that he could not "demonstrate a causal connection between his stop, search in the Turkey Hill, and search incident to arrest with purported retaliatory animus because those actions were lawful." (Appx20 (Memo)). Beatty's appellate brief is completely devoid of any argument against that finding and is hereby waived.  **See** <u>U.S. v. Joseph</u>, 730 F.3d 336 (3d Cir. 2013) and <u>Taha v. County of Bucks</u>, 862 F.3d 292 (3d Cir. 2017).

As for the argument related to probable cause, there is no genuine issue of material fact that the defendants had probable cause to stop, arrest, and strip search Beatty as indicated the sections above.  Furthermore, the strip search was justified and not in response to any protected speech.  "Police may strip search an arrestee based upon individualized, reasonable suspicion." <u>Pitney v. City of Chester</u>, 461 F.Supp.3d 173, 175 (E.D. Pa. 2020), *citations omitted*.  There needs to be a "particularized and objective basis." <u>Id</u>., *citation omitted*.  The Second Circuit has set out the following standard:  "The Fourth Amendment requires an individualized reasonable suspicion that a misdemeanor arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest before she may be lawfully subjected to a strip search." <u>Id</u>., *citing* <u>Hartline v. Gallo</u>, 546 F.3d 95, 100 (2d Cir. 2008).  The strip search was completed to confirm or deny if there were drugs on his person. (Appx242 at 27:24-28:1 (Irvin); Appx278 at 30:8-31:3 (Gardner)).  Specifically, Gardner testified that the strip search was done because:

> In my experience, specifically with narcotics, it is extremely commonplace for individuals to have something, you know, smaller, like smaller offense. I've had guys and girls offer up, like, small amounts of marijuana to just essentially make me go away. Or maybe the initial part of that investigation is just observing paraphernalia or something along those lines and then digging deeper into that.
>
> Often times, in my experience, both traffickers and users, one of the most common places that they conceal narcotics is in their groin area. So as a result of that, it's common practice for both the Narcotics Unit and the city police, specifically, when dealing with narcotics offenses, to strip search an individual to uncover if there are additional, you know, narcotics or what not, like specifically within those area. I've done body warrants on individuals that have concealed narcotics within their anus.

(Appx278 at 30:10-31:2 (Gardner)). Based upon the factors related to Beatty's actions on the date of the incident and Gardner's experience, the search was reasonable. The trial court properly dismissed the claim for First Amendment retaliation.

## <u>CONCLUSION</u>

There is no genuine issue of material fact that the officers had reasonable suspicion for Beatty's stop and initial pat down as well as probable cause for the arrest and searches and/or are entitled to qualified immunity as the trial court has found.  The trial court did not err in granting summary judgment and therefore, its ruling(s) must be upheld.

Respectfully Submitted:

**WILLIAM J. FERREN & ASSOCIATES**

By:/s/ Shawna R. Laughlin
    Shawna R. Laughlin, Esquire
    *Attorney for Appellee Gardner*

## <u>COMBINED CERTIFICATIONS</u>

### <u>Certificate of Bar Membership</u>

I hereby certify that I am a member of the Bar of this Court.

### <u>Certificate of Word Count</u>

I hereby certify that this Brief contains 6,443 words and meets this Court's word count requirements.

### <u>Certificate of Service</u>

I hereby certify that on this 15th day of January, 2026, this brief has been served on the Filing Users identified below through the Electronic Case Filing (ECF) system:

Joshua J. Cochran, Esquire
Schemery Zicolello
333 Market St
Williamsport, PA 17701
570.321.7554
josh@sz-law.com
*Attorney for Appellant Beatty*

Austin White, Esquire
McCormick Law Firm
835 West Fourth St
Williamsport, PA  17701
570-326-5131
awhite@mcclaw.com
*Attorney for Appellee Irvin*

### <u>Certificate of Identical Compliance of Briefs</u>

I hereby certify that the electronically filed/mailed brief sent to the Court is identical to the hard copy filed in the Third Circuit.

## Certificate of Virus Check

I hereby certify that a virus check was performed through Vipre Virus Protection, version 3.1 prior to filing and is virus free.

**WILLIAM J. FERREN & ASSOCIATES**

By:/s/ Shawna R. Laughlin
      Shawna R. Laughlin, Esquire
      *Attorney for Appellee Gardner*