No: 25-2860

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

KYLE BEATTY,
Appellant

v.

CLINTON GARDNER; CALVIN IRVIN

Pennsylvania - Williamsport

U.S. District Court M.D. Pa.

4:23-cv-00364

## BRIEF OF APPELLEE CALVIN IRVIN

Appeal from Order, Decision, and Judgment entered in the
United States District Court for the Middle District of Pennsylvania
at No. 4:23-CV-00364-KMN on August 29, 2025

Austin White, Esquire, PA I.D. No. 312789
N. Randall Sees, Esquire. PA I.D. No. 89386
Attorneys for Appellee Calvin Irvin
835 West Fourth Street
Williamsport, PA 17701
(570) 326-5131
(570) 326-5529 (fax)
awhite@mcclaw.com
rsees@mcclaw.com

**TABLE OF CONTENTS**

**Page**

Table of Contents .................................................................................i

Table of Authorities .......................................................................... iii

I.    Statement of Issues ......................................................................1

II.   Statement of Related Cases and Proceedings ...................................3

III.  Concise Statement of the Case ......................................................4

IV.   Summary of Argument ................................................................10

V.    Argument ..................................................................................11

      1. Probable Cause for Arrest and Searches ...................................11

         A. Standard of Review ...........................................................11

         B. Defendants Had Probable Cause ..........................................11

      2. Reasonable Suspicion for Initial Stop ......................................20

         A. Standard of Review ...........................................................20

         B. Defendants Had Reasonable Suspicion ..................................20

      3. Qualified Immunity ...............................................................22

         A. Standard of Review ...........................................................22

         B. Defendants Have Qualified Immunity Regarding Strip Search ....23

      4. First Amendment Retaliation....................................................26

         A. Standard of Review ...........................................................26

         B. Beatty Failed to Establish His Claim.....................................27

5. Waiver of Beatty's New Groody/Ybarra Theory ....................................32

VI. Conclusion ...............................................................................................35

Certification of Bar Membership....................................................................37

Certification of Word Count............................................................................38

Certification of Service....................................................................................39

Certification of Identical Filing ......................................................................40

Certification of Virus Check............................................................................41

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

Anderson v. Creighton, 483 U.S. 635 (1987) .................................................. 24

Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011) ............................................... 24

Barna v. City of Perth Amboy, 42 F.3d 809 (3d Cir. 1994) .............................. 17

Bell v. Wolfish, 441 U.S. 520 (1979) ............................................................... 14

Brinegar v. United States, 338 U.S. 160 (1949) .............................................. 12

Chenault-Vaughan Fam. P'ship, Ltd. v. MDC Reeves Energy, LLC,
    136 F.4th 506 (3d Cir. 2025)................................................ 11, 20, 22, 27

Chimel v. California, 395 U.S. 752 (1969) .................................................. 14, 15

Commonwealth v. Miller, 130 A.3d 1 (Pa. Super. Ct. 2015)............................ 17

DIRECTV Inc. v. Seijas, 508 F.3d 123 (3d Cir. 2007) ............................... 32, 33

District of Columbia v. Wesby, 583 U.S. 48 (2018) ........................... 24, 30, 34

Doe v. Groody, 361 F.3d 232 (3d Cir. 2004) .................................................... 33

Eichenlaub v. Twp. of Indiana, 385 F.3d 274 (3d Cir. 2004) .......................... 27

Falcone v. Dickstein, 92 F.4th 193 (3d Cir. 2024) ........................................... 28

Florida v. Bostick, 501 U.S. 429 (1991) .......................................................... 22

Gonzalez v. Trevino, 144 S. Ct. 1663 (2024) ................................................... 28

Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177 (2004)............................... 28

Illinois v. Gates, 462 U.S. 213 (1983) ............................................................. 12

Illinois v. Wardlow, 528 U.S. 119 (2000) ........................................................ 21

James v. City of Wilkes-Barre, 700 F.3d 675 (3d Cir. 2012) ........................... 11

Karns v. Shanahan, 879 F.3d 504 (3d Cir. 2018) ........................................ 26, 30

Keenan v. City of Philadelphia, 983 F.2d 459 (3d Cir. 1992) ........................... 32

Lauren W. v. DeFlaminis, 480 F.3d 259 (3d Cir. 2007) ................................... 27

Lear v. Phoenixville Police Dep't, 734 F. App'x 809 (3d Cir. 2018) ............... 16

Malley v. Briggs, 475 U.S. 335 (1986) ........................................................ 24

Michigan v. DeFillippo, 443 U.S. 31 (1979) ............................................. 12, 17

Nieves v. Bartlett, 587 U.S. 391 (2019) ..................................................... 27, 28

Orsatti v. N.J. State Police, 71 F.3d 480 (3d Cir. 1995) .................................. 12

Pearson v. Callahan, 555 U.S. 223 (2009) ........................................... 23, 24, 26

Reichle v. Howards, 566 U.S. 658 (2012) .................................................. 30, 31

Saucier v. Katz, 533 U.S. 194, 206 (2001) ...................................................... 23

Shell Petroleum, Inc. v. United States, 182 F.3d 212 (3d Cir. 1999) ......... 32, 33

Suppan v. Dadonna, 203 F.3d 228 (3d Cir. 2000) ........................................... 27

Terry v. Ohio, 392 U.S. 1 (1968) ............................................................... 20, 21

Thomas v. City of Harrisburg, 88 F.4th 275 (3d Cir. 2023)............................. 23

United States v. Arvizu, 534 U.S. 266 (2002)................................................... 17

United States v. Cortez, 449 U.S. 411 (1981)................................................... 18

United States v. Joseph, 730 F.3d 336 (3d Cir. 2013) ............................... 32, 33

United States v. Parker, 458 F. Supp. 3d 260 (M.D. Pa. 2020).................... 25, 26

United States v. Ramos, 443 F.3d 304 (3d Cir. 2006)........................................ 13

United States v. Shakir, 616 F.3d 315 (3d Cir. 2010) ...................................... 15

Urda v. Sokso, 146 F.4th 311 (3d Cir. 2025) ................................................... 23

Wilson v. Layne, 526 U.S. 603 (1999) ............................................................. 23

Wright v. City of Philadelphia, 409 F.3d 595 (3d Cir. 2005) ............... 11, 14, 17

Ybarra v. Illinois, 444 U.S. 85 (1979) ....................................................... 33, 34

Zaloga v. Borough of Moosic, 841 F.3d 170 (3d Cir. 2016)............................. 30

**UNITED STATES CODE**

42 U.S.C. § 1983 ............................................................................................. 23

**FEDERAL RULES OF CIVIL PROCEDURE/LAWS**

Fed. R. Civ. P. 56 ....................................................................... 11, 20, 22, 27

**PENNSYLVANIA STATUTES**

35 P.S. § 780-102 ............................................................................................ 12

35 P.S. § 780-113 ........................................................................................ 12, 17

35 P.S. § 10231.304 ........................................................................................ 13

v

## I. STATEMENT OF ISSUES

1. WHETHER SUMMARY JUDGMENT WAS PROPERLY GRANTED TO THE DEFENDANTS ON THE PLAINTIFF'S CLAIMS OF UNREASONABLE ARREST AND SEARCH BECAUSE THE DEFENDANTS HAD PROBABLE CAUSE?

   (Suggested answer in the affirmative.)

2. WHETHER SUMMARY JUDGMENT WAS PROPERLY GRANTED TO THE DEFENDANTS ON THE PLAINTIFF'S CLAIM OF UNREASONABLE STOP BECAUSE THE DEFENDANTS HAD REASONABLE SUSPICION?

   (Suggested answer in the affirmative.)

3. WHETHER SUMMARY JUDGMENT WAS PROPERLY GRANTED TO THE DEFENDANTS ON THE PLAINTIFF'S UNREASONABLE STRIP SEARCH CLAIM BECAUSE THEY HAVE QUALIFIED IMMUNITY AS THEY HAD PROBABLE CAUSE AND VIOLATED NO CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT?

   (Suggested answer in the affirmative.)

4. WHETHER SUMMARY JUDGMENT WAS PROPERLY GRANTED TO THE DEFENDANTS ON THE PLAINTIFF'S CLAIM OF FIRST AMENDMENT RETALIATION BECAUSE THE PLAINTIFF FAILED TO PRESENT SUFFICIENT EVIDENCE OF RETALIATORY ANIMUS OR CAUSATION, AND BECAUSE QUALIFIED IMMUNITY APPLIES TO THAT CLAIM?

   (Suggested Answer in the Affirmative.)

1

5.  WHETHER BEATTY WAIVED ANY ARGUMENT THAT
    GROODY AND YBARRA "CLEARLY ESTABLISHED" A
    PROBABLE-CAUSE/INDIVIDUALIZED-SUSPICION
    REQUIREMENT FOR THE STATIONHOUSE STRIP
    SEARCH, WHERE HE DID NOT PRESENT THAT
    THEORY OR THOSE AUTHORITIES TO THE DISTRICT
    COURT?

    (Suggested Answer in the Affirmative.)

## II. STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court on any prior date, and counsel for Detective Irvin is not aware of any other case or proceeding that is in any way related, completed, pending, or about to be presented before this Court.

### III.   CONCISE STATEMENT OF THE CASE

Plaintiff, Kyle Beatty ("Beatty"), initiated this civil action by a Complaint filed February 28, 2023 alleging Section 1983 claims stemming from his stop, arrest, and search on August 31, 2021. Appx30-40.  Discovery concluded and, on or around April 4, 2024, Defendant Clinton Gardner ("Officer Gardner") filed a Motion for Summary Judgment, together with a Statement of Material Facts and Brief. Appx80-85, 86-393.  On April 5, 2024, Defendant Calvin Irvin ("Detective Irvin") filed a Motion for Summary Judgment and Statement of Material Facts. Appx394-398, 399-986.  Detective Irvin filed his Brief on April 19, 2024 and a Reply Brief on May 31, 2024.  Appx4, 5.

All of Beatty's claims stem from interactions with Officer Gardner and Detective Irvin on August 31, 2021.  The details of what transpired are as follows. Officer Gardner is a member of the Lycoming County District Attorney's Office Narcotics Enforcement Unit, where he focuses on narcotics offenses, firearms, and large drug crimes.  Appx400.  Detective Irvin was assisting Officer Gardner that day, August 31, 2021, on patrol.  Appx400.  The officers saw Beatty and his girlfriend, Anaise Lopez, driving in downtown Williamsport in Lopez's Nissan Altima.  Appx88.  This area of Williamsport is known for drug activity and Beatty and Lopez exhibited behavior that aroused legitimate suspicion.  Appx400.  Both Beatty and Lopez engaged in avoidance behaviors, such as not making eye contact

4

and appearing unusually vigilant, which are commonly associated with criminal involvement.  Appx400.  Additionally, the vehicle's lack of personalization and out-of-state plates, coupled with its location, suggested it might be used for drug trafficking – a practice known for employing low-profile vehicles to avoid law enforcement detection.  Appx273.

However, the officers did not stop the vehicle.  Appx401. Instead, Beatty voluntarily made a pit stop, stopping at a Turkey Hill gas station, and the officers parked near the Altima.  Appx399, 401.    Beatty and Lopez went inside the gas station, leaving the driver's side window down.  Appx401.  Officer Gardner walked over to the vehicle, looked inside the open window with a flashlight, and signaled for Detective Irvin to come to the vehicle.  Appx604. Exhibit A (videos), video 3, at 0:00:00-0:00:26.  Officer Gardner immediately detected the odor of marijuana coming from the Vehicle and observed a marijuana roach and marijuana flakes inside the vehicle, as did Detective Irvin.  Appx89-90, 238, 274.  The spent marijuana roach was in the driver's side door ashtray.  Appx402-403.

Lopez exited the gas station and approached the officers. Appx404. Officer Gardner entered the gas station and patted Beatty down while Detective Irvin remained outside with Lopez.  Appx90.  Appx604.  Exhibit A (videos), video 3, at 0:00:38-0:00:50.  However, before Officer Gardner patted down Beatty, Beatty stated "Do you want to search me? Go ahead." Appx604.  Exhibit A (videos),

video 1, at 0:00:54-0:00:56.  When Officer Gardner returned with Beatty and

rejoined Detective Irvin and Lopez near the Altima, Lopez initially denied there

was any marijuana in the vehicle.  Exhibit A (videos), video 3, at 0:01:22-0:01:25

Beatty and Lopez were detained for an investigation related to the drugs.

Appx407. During this interaction, both became vocally and physically

confrontational, inciting other patrons and prompting additional police support.

Appx404-405.  This altercation with Beatty and Ms. Lopez was recorded via

bodycams.  Appx403.  Officer Gardner informed Beatty and Lopez that they could

either consent to a search of the vehicle or the officers would tow the vehicle and

apply for a search warrant.  Appx404.  Beatty responded to Officer Gardner with

"you can search it right now," and Lopez added "there's literally nothing in it."

Appx404.

Before any search of the vehicle, the officers asked Beatty and Lopez for

identification.  Appx604.  Exhibit A (videos), video 1, at 0:02:08-0:02:11.  Beatty

replied defiantly with "I'm not under arrest" and he told Lopez not to permit the

officers to search the vehicle and Lopez withdrew consent.  Appx604.  Exhibit A

(videos), video 1, at 0:02:12-0:02:18.  Appx403.  After Lopez revoked her consent,

the officers placed Beatty and Lopez in handcuffs.  Appx604.  Exhibit A (videos),

video 3, at 0:02:16-0:02:36.  Lopez repeatedly and with increasingly more volume

requested a female officer, and Defendants had Beatty sit on the hood of the

vehicle. Appx604. Exhibit A (videos), video 1, at 0:02:48-0:03:40. Beatty said to the officers, "You're real tough." The demeanor of Beatty and Lopez escalated. Appx275. Detective Irvin placed Beatty face-down on the hood of Lopez's vehicle and searched his pockets. Appx604. Exhibit A (videos), video 1, at 0:03:40-0:04:00. Lopez admitted that there was a marijuana roach from two days before in the car. Appx604. Exhibit A (videos), video 1, at 0:04:24-0:04:37).

Detective Irvin retrieved Beatty's driver's license from his wallet and ran Beatty's name and date of birth on the police radio. He discovered Beatty's license was subject to ignition interlock restrictions, and noted to Officer Gardner there was no ignition interlock in Lopez's vehicle. Appx408. Beatty explained he is from Pennsylvania, but Lopez is from Massachusetts, and that she drove to Williamsport. He asserted he had warned Lopez of the differing treatment of marijuana between the two commonwealths. Appx408. Beatty offered to take a citation for possession of a small amount of marijuana, which drug traffickers will often do in an attempt to prevent a more thorough inquiry. Appx411, 410.

The officers drove Beatty from the Turkey Hill to City Hall and Detective Irvin took Beatty into an interview room. Appx409. Appx604. Exhibit A (videos), video 4, at 0:00:00-0:00:15. A short time later, Officer Gardner joined and Detective Irvin turned off his bodycam. Appx604. Exhibit A (videos), video 4, at 0:00:15-0:12:30. Beatty was then strip searched. Appx93. The strip search was

7

necessary and justified by the officers' experience in the Narcotics Enforcement Unit.  Appx278.  Narcotics traffickers tend to hide drugs in their groin area.  Appx410, 278.  The officers did not find any contraband on Beatty's person.  Appx94.  Ultimately, Beatty was not charged with any criminal offense.  Appx46.  The primary concern was a large drug crime and the Narcotics Enforcement Unit often chooses not to charge for small amounts of paraphernalia.  Appx411.  Beatty was released shortly after the strip search.  Appx411.

On September 2, 2021, the officers obtained a search warrant for the Altima for "illegal narcotics, and related packaging material, scales, means of ingestion and measuring devices."  Appx959.  The search was conducted that same day.  Finding no evidence of drug trafficking, Officer Gardner did not seize anything in the vehicle.  Appx378.  He did, however, locate the roach he had seen earlier, marijuana flakes, and some additional roaches.  Appx866.  It is common in Officer Gardner's position to not seize small amounts of evidence.  Appx867.

Beatty's claims arise under the Fourth Amendment, regarding allegedly unreasonable arrest, stop, and searches, as well as First Amendment retaliation (Counts I through IV).  Appx34-37.  Beatty also asserted pendent claims under state law for false arrest/false imprisonment, battery, and assault (Counts V through VII).  Appx37-38.  The District Court entered summary judgment in favor of Officer Gardner and Detective Irvin on the federal claims, and dismissed the

pendent state claims without prejudice. Appx8. Specifically, the court held "the totality of the circumstances demonstrates beyond dispute" that the officers had probable cause with respect to Beatty's stop, arrest, and two of his three searches. Appx19. The Court then held that while the subsequent strip search of Beatty was not clearly supported by reasonable suspicion, qualified immunity shielded the officers from suit on that claim, along with Beatty's First Amendment retaliation claim. Appx19. Beatty has appealed that grant of summary judgment.

## IV.    SUMMARY OF ARGUMENT

Upon approaching the parked vehicle Beatty had been driving, Officer Gardner and Detective Irvin smelled the aroma of marijuana emanating from the vehicle and saw a spent marijuana roach in the ashtray of the driver's side door and marijuana flakes on the driver's side floor.  This provided reasonable suspicion to stop Beatty and, in fact, probable cause to arrest him for marijuana possession.  Accordingly, Beatty cannot sustain his claims under Section 1983 with respect to his stop, arrest, Terry frisk (to which Beatty consented), and search incident to arrest, or his First Amendment retaliation claim.  Moreover, Beatty failed to produce any evidence that any retaliatory animus was the impetus for his arrest and searches to support the latter claim.

With respect to Beatty's subsequent strip search, even assuming in retrospect the officers did not have probable cause, a proposition with which Detective Irvin disagrees, Irvin is still shielded from Beatty's claim by qualified immunity because there is no case law clearly establishing that law enforcement officers, in a non-institutional setting, may not strip search an individual without probable cause to believe he is hiding contraband.  In addition, the officers have qualified immunity with respect to Beatty's unreasonable stop, arrest, search, and First Amendment retaliation claims.  Accordingly, the District Court's granting of summary judgment on the four federal claims should be affirmed.

10

## V.    ARGUMENT

### 1.    Probable Cause for Arrest and Searches

A.  Standard of Review.

This Court's review of a district court's grant of summary judgment is plenary and the standard is the same as that of the district court: summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Chenault-Vaughan Fam. P'ship, Ltd. v. MDC Reeves Energy, LLC, 136 F.4th 506 (3d Cir. 2025) (*citing* Fed. R. Civ. P. 56(a)).

B.  Defendants Had Probable Cause.

First, Beatty claims he was the victim of an unreasonable arrest.  To state an unreasonable arrest claim under the Fourth Amendment, Beatty must establish (1) that there was an arrest and (2) that the arrest was made without probable cause. James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012); Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005).  The existence of probable cause defeats an unreasonable arrest claim.  Id.

Probable cause is established when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Michigan v.

11

DeFillippo, 443 U.S. 31, 37 (1979).  The standard does not require evidence sufficient to prove guilt beyond a reasonable doubt.  Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995).  Even in the absence of probable cause, however, a police officer will not be personally liable when he acts in way he reasonably believes to be lawful.  Id.  The Supreme Court has provided further guidance that probable cause evaluations must account for "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  Brinegar v. United States, 338 U.S. 160, 175 (1949).  This emphasizes that the standard is one of fair probability, not certainty or proof beyond a reasonable doubt.  Illinois v. Gates, 462 U.S. 213, 238 (1983).

Pennsylvania law prohibits the possession of even a small amount of marijuana for personal use.  35 P.S. § 780-113(a)(31).  It also prohibits the use of or possession with intent to use drug paraphernalia.  35 P.S. § 780-113(a)(32).  For purposes of the statutes outlawing the possession of marijuana and drug paraphernalia, drug paraphernalia is defined as follows: "All equipment, products and materials of any kind which are used, intended for use or designed for use in . . . ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act."  35 P.S. § 780-102 (subsection b, defining "drug paraphernalia").  That term specifically includes objects used to ingest or inhale

12

marijuana.  Id.  Even if one has a prescription for medical marijuana, it is still illegal to smoke marijuana.  35 P.S. § 10231.304(b)(1).

Applying these principles, Beatty's stop, searches, and arrest were clearly supported by probable cause.  Beatty was observed in control of a vehicle with a visible marijuana roach in the driver's side door and with marijuana flakes on the driver's side floor – clear violations of Pennsylvania law.  Officer Gardner and Detective Irvin smelled marijuana and saw the roach immediately upon approaching the car.  The Third Circuit has held that the smell of marijuana alone may establish probable cause.  United States v. Ramos, 443 F.3d 304, 308 (3d Cir. 2006).  Even if Beatty had a medical marijuana prescription – and there is no evidence that he did – the smoking consumption method, as indicated by the presence of the roach, is illegal in Pennsylvania.

Additional observations by Detective Irvin further substantiated the probable cause for arrest.  Prior to the interaction at the Turkey Hill, Beatty was seen driving through an area known for drug activity and exhibited behaviors that aroused legitimate suspicion.  He was driving a nondescript car with out-of-state plates and a notable lack of personalization.  Along with the drugs in the car, these additional circumstances collectively provided a well-founded basis for a belief that drug-related criminal activity was occurring, and Beatty's arrest was in furtherance of investigating the extent of that suspected drug-related activity.

13

The standard for probable cause was met here. It was not an unreasonable arrest. The ultimate decision not to press charges against Beatty does not change the fact that the arrest was valid. See Wright, 409 F.3d at 602 ("the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime"). There are no genuine issues of material fact regarding probable cause for Beatty's arrest and Detective Irvin was entitled to summary judgment as a matter of law.

Beatty further alleges he was subjected to three unreasonable searches: initially during the pat-down inside the Turkey Hill store (by Officer Gardner), subsequently on the hood of the car (by Detective Irvin), and finally a strip search at the police station. Each search was based on probable cause, or at least reasonable suspicion, and thus Beatty's unreasonable search claims fail as a matter of law.

The reasonableness of a search involves a balancing of the need for the search with the invasion of personal rights – factors such as the scope, manner, justification, and location of the search must be considered. Bell v. Wolfish, 441 U.S. 520, 559 (1979). For instance, a search conducted incident to a lawful arrest, which allows officers to ensure their safety and prevent the destruction of evidence, is generally considered reasonable. Chimel v. California, 395 U.S. 752, 762-63 (1969). After police make an arrest, they are justified to conduct a search

14

of the person arrested.  United States v. Shakir, 616 F.3d 315, 317 (3d Cir. 2010)

(*citing* Chimel).

Here, Detective Irvin acted reasonably at all times relative to what

transpired.  With respect to the initial pat-down inside the Turkey Hill – which was

performed by Officer Gardner – Beatty voluntarily raised his arms and consented

to a search, explicitly stating, "Do you want to search me? Go ahead," without any

prompting by Officer Gardner.  This consent permitted Officer Gardner to conduct

a pat-down, for instance, to check for weapons, which was reasonable given the

presence of drugs in the vehicle, even in the absence of reasonable suspicion.

Following the initial interaction and incident to the arrest, Detective Irvin checked

Beatty's pockets and patted him down, on the hood of the car.  That search was

reasonable to make sure Beatty did not possess weapons or contraband, prior to

being placed in the cruiser, and was justified further by Beatty's refusal to provide

identification and Lopez becoming unruly and disruptive. Because the officers had

probable cause to arrest Beatty, they certainly had the right to search him incident

to that arrest.

Despite the District Court's concern that it required a higher level of

scrutiny, the strip search conducted at the station was also justified under the

circumstances, as there was, at a minimum, reasonable suspicion that Beatty was

concealing contraband.  Officer Gardner found a marijuana roach on Beatty's side

15

of the car and smelled marijuana.  Drug traffickers tend to hide drugs in their groin area.  Frequently, a drug trafficker will offer up a smaller offense like a small amount of marijuana, in order to make the officer "go away" – like Beatty did – in order to prevent a more thorough inquiry.  Moreover, by the time of the strip search, Lopez had already admitted there was a roach in the car.  The officers had a particularized and objective basis for the search of Beatty for contraband under these circumstances. See, e.g. Lear v. Phoenixville Police Dep't, 734 F. App'x 809, 813 (3d Cir. 2018)(not precedential)(finding probable cause existed to strip search the plaintiff at the police station due to his criminal history, his arrest in a high drug and crime area, and confidential informant provided information that the plaintiff frequently stored drugs in his crotch area).

Each search here was supported by a reasonable suspicion and probable cause founded on the presence of drugs, Beatty's conduct and the conduct of Lopez, and the other surrounding circumstances.  Each search was tailored to the level of risk and necessity posed at different stages of the encounter, per the requirements of the Fourth Amendment.  Beatty's argument that the absence of recovered contraband or charges against him defeats probable cause misconstrues the probable cause standard.  An officer need not be absolutely certain that a crime was committed, nor does an officer need to actually recover contraband in order for there to be probable cause; all that is required is an initial reasonable basis for

16

believing that a crime may have been committed. Wright, 409 F.3d at 601. The officers surely had that.

Further, an officer needs only some reasonable basis to believe a crime has been committed for an arrest "as to any offense that could be charged under the circumstances." Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994). As the Supreme Court explained in DeFillippo, police are permitted to act on reasonable suspicion arising from the circumstances as they unfold, and "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime." DeFillippo, 443 U.S. at 36.

In this case, the initial observations by Officer Gardner and Detective Irvin, corroborated by multiple indicators of illegal activity, provided a sufficient basis to justify the stop, arrest, and subsequent searches. Drugs were both seen and smelled around the driver's seat of the car Beatty was driving. At that time, there was probable cause to believe Beatty had committed a crime. See Commonwealth v. Miller, 130 A.3d 1, 5 (Pa. Super. Ct. 2015) (possession of partially smoked joint supports conviction of possession of a small amount of marijuana under Section 780-113(a)(31)). That Beatty was not actually charged with and convicted of a crime is "irrelevant to the validity of the arrest." DeFillippo, 443 U.S. at 36.

Additionally, in United States v. Arvizu, 534 U.S. 266 (2002), the Supreme Court emphasized that law enforcement officers may draw on their own experience

17

and reasonable inferences in terms of making reasonable suspicion determinations. The decision by Officer Gardner to initially stop Beatty in the store, based on the totality of the circumstances, including suspicious behavior he and Detective Irvin observed prior to arriving at the Turkey Hill, was within the bounds of reasonable police work.  See id. at 273 (*quoting* United States v. Cortez, 449 U.S. 411, 418 (1981)) (explaining that a court must look at the totality of the circumstances to determine whether there was a "particularized and objective basis for suspecting legal wrongdoing.  . . .  This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'").

Beatty seems to base his entire case on an unsubstantiated assertion that the officers lied about the presence of drugs in the car.  He curiously contends there was no roach or other marijuana found in the car.  He bases this assertion, at least in part, upon the Receipt/Inventory of Seized Property resulting from the search of the Altima.  Appx378.  That Receipt simply says that nothing was recovered from the vehicle.  Beatty asserts this proves there was no marijuana in the car and, therefore, no probable cause.  However, as Officer Gardner testified at Lopez's criminal trial, "nothing recovered" means Officer Gardner did not take anything from the vehicle.  Appx538.

18

As evidenced by the search warrant, Officer Gardner was specifically looking for "illegal narcotics, and related packaging material, scales, means of ingestion and measuring devices." Appx959.  In his deposition, Officer Gardner testified that, during the search of the vehicle, he located the roach and flakes he had seen previously, along with additional roaches within the ashtray.  Appx866. He further explained that it is common in the Narcotics Enforcement Unit to not seize paraphernalia found because officers in that unit find a lot and it would be unwieldy to seize every bit of paraphernalia.  Appx867.  Thus, the Receipt/Inventory of Seized Property does not indicate that nothing was found in the car, as Beatty suggests; it merely indicates that nothing was seized from the car. Moreover, Beatty's contention that there was nothing in the driver's side door ashtray is disingenuous given that Lopez admitted as much, and Beatty testified as follows when asked what was in the ashtray: "I do not know.  It's not my car." Appx629.  Thus, Beatty's contention that there was no marijuana in the car is not supported by, and is in fact belied by, the evidence in this case, including his own testimony and Lopez's admission.

Here, Detective Irvin and Officer Gardner had the right to consider the totality of the circumstances when they were determining whether to stop, investigate, arrest, and search Beatty.  Given the presence and smell of marijuana in the car and the suspicious actions of Beatty and Lopez, the police actions were

19

reasonable and, therefore, Beatty's claims fail as a matter of law. Accordingly, the District Court's grant of summary judgment on Counts I through III in favor of the officers should be affirmed.

## 2. Reasonable Suspicion for Initial Stop

### A. Standard of Review.

This Court's review of a district court's grant of summary judgment is plenary and the standard is the same as that of the district court: summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Chenault-Vaughan Fam. P'ship, Ltd. v. MDC Reeves Energy, LLC, 136 F.4th 506 (3d Cir. 2025) (*citing* Fed. R. Civ. P. 56(a)).

### B. Defendants Had Reasonable Suspicion.

Beatty claims the initial stop, frisk, and subsequent detention were unreasonable and the officers lacked reasonable suspicion. However, the facts of record demonstrate that the stop was justified based on reasonable suspicion of criminal activity (in fact, probable cause), and summary judgment in favor of Detective Irvin was thus appropriate relative to Beatty's unreasonable stop claim.

While the Fourth Amendment protects individuals from unreasonable searches and seizures, it allows officers to conduct brief investigatory stops when they have a reasonable, articulable suspicion that criminal activity is afoot. Terry

20

v. Ohio, 392 U.S. 1, 30 (1968); Illinois v. Wardlow, 528 U.S. 119, 123 (2000). That is, the officer must have more than an "inchoate and unparticularized suspicion or 'hunch' of criminal activity." Wardlow, 528 U.S. at 124 (*quoting* Terry, 392 U.S. at 27). Reasonable suspicion involves a less demanding standard than probable cause and requires "considerably less than preponderance of the evidence." Id. at 123. It demands only a minimum level of objective justification. Id.

In this case, Detective Irvin observed Beatty in a situation that raised legitimate suspicions justifying an investigatory stop. Initially, Beatty was seen in a known high drug trafficking area. Both Beatty and Lopez engaged in avoidance behaviors, such as not making eye contact and appearing unusually vigilant, which are commonly associated with criminal involvement. Additionally, the vehicle's lack of personalization and out-of-state plates, coupled with its location, suggested it might be used for drug trafficking.

Of course, Detective Irvin did not pull Beatty over. Rather, Beatty voluntarily pulled into the Turkey Hill gas station, parked, and went into the store, leaving the windows down. Officer Gardner detected the odor of marijuana and observed a marijuana roach in plain view in the ashtray on the door of the driver's side of the vehicle. No stop at all occurred until after Officer Gardner made these observations, which observations confirmed the original suspicion of illegal drug

21

activity and provided a concrete basis for a stop.  These specific observations provided a lawful basis for believing that Beatty was engaged in criminal activity, far beyond satisfying the requirements for a <u>Terry</u> stop.  The officers had probable cause to stop Beatty at the Turkey Hill.  In any event, Beatty consented to the pat down.  Thus, he cannot complain about any unreasonable frisk.  <u>See</u>, <u>e.g.</u>, <u>Florida v. Bostick</u>, 501 U.S. 429, 434-45 (1991) (officers may request consent to search an individual even in the absence of any basis for suspicion). As noted above, Beatty's subsequent detention was supported by probable cause.  Given this evidence, summary judgment was properly entered against Beatty relative to his unreasonable stop claim.

### 3.  Qualified Immunity

A.  <u>Standard of Review.</u>

This Court's review of a district court's grant of summary judgment is plenary and the standard is the same as that of the district court: summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  <u>Chenault-Vaughan Fam. P'ship, Ltd. v. MDC Reeves Energy, LLC</u>, 136 F.4th 506 (3d Cir. 2025) (*citing* Fed. R. Civ. P. 56(a)).

B.  Defendants Have Qualified Immunity Regarding the Strip Search.

Under federal law, the doctrine of qualified immunity protects government officials from civil damages in actions under 42 U.S.C. § 1983, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable official would have known.  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment."  Id. at 243-44.  "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'"  Id. at 244 (*quoting* Wilson v. Layne, 526 U.S. 603, 614 (1999)).  Qualified immunity balances the need to hold public officials accountable and the need to protect them from harassment and liability when they reasonably perform their duties.  Id. at 231.  It requires "before officers are subjected to suit, they are on notice their conduct is unlawful."  Thomas v. City of Harrisburg, 88 F.4th 275, 283 (3d Cir. 2023) (*quoting* Saucier v. Katz, 533 U.S. 194, 206 (2001)).

Qualified immunity applies to officers "who make wrong but reasonable judgment calls absent clearly established law."  Urda v. Sokso, 146 F.4th 311, 313 (3d Cir. 2025).  In order for a right to be clearly established, there usually must be "controlling precedent or a 'robust consensus of cases of persuasive authority.'"

23

Id. at 314 (*quoting* Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)).  Courts must

not analyze rights too abstractly; the issue is whether "what *this* officer did in *these*

circumstances violated the plaintiff's rights."  Id. (emphasis in original) (*citing*

Anderson v. Creighton, 483 U.S. 635, 639-41 (1987)).  Significantly, law

enforcement officials "are entitled to rely on existing lower court cases without

facing personal liability for their actions."  Pearson, 555 U.S. at 244-45.

Indeed, the Supreme Court has emphasized that "clearly established" law

must place the unlawfulness of the challenged conduct "beyond debate."  See

District of Columbia v. Wesby, 583 U.S. 48 (2018). The standard "protects all but

the plainly incompetent or those who knowingly violate the law." See id *quoting*

Malley v. Briggs, 475 U. S. 335, 341 (1986). This is not one of the rare "obvious

cases" where unlawfulness is apparent without controlling case law. See Wesby.

Beatty contends on appeal that the District Court erred in finding the officers

enjoyed qualified immunity from Beatty's Section 1983 claim regarding the strip

search.  He bases this contention on his completely unsubstantiated accusation that

the officers "lied" about the presence of a marijuana roach and flakes near the

driver's seat of the Altima.  Of course, there is no evidence to back Beatty's

accusation.  Rather, as noted above, Officer Gardner's sworn testimony establishes

that he saw the marijuana roach and flakes near the driver's seat at the time of the

initial stop and at the time of the later search of the vehicle.  In addition, Beatty

24

testified he did not know what was in the ashtray in the door of the car because it was not his car and Lopez admitted there was a roach in the car. Accordingly, the entire premise of Beatty's argument regarding the alleged invalidity of probable cause for the strip search is without any basis in fact.

Assuming *arguendo*, however, that there may not have been probable cause for the strip search, as the District Court opined, the officers are nonetheless entitled to qualified immunity shielding them from Beatty's claim. Neither the Supreme Court nor this Court has issued binding precedent clearly establishing the constitutional standard governing non-institutional strip searches incident to arrest. United States v. Parker, 458 F. Supp. 3d 260, 265 (M.D. Pa. 2020). In Parker, the plaintiff was subjected to a warrantless arrest, search incident to arrest, and strip search. Id. at 263. As noted above, the court found no Supreme Court or Third Circuit Court of Appeals cases directly addressing the constitutionality of strip searches incident to arrest outside of the institutional setting. Id. at 265. Nonetheless, the court held "the prevailing consensus from courts that have considered the issue is that these intrusive searches must be supported by, at minimum, reasonable suspicion of concealment of weapons or contraband." Id. Ultimately, that court held the officers had at least reasonable suspicion to perform the strip search and that it was therefore constitutionally permissible. Id.

That the Parker court found the non-institutional strip search incident to arrest constitutionally permissible and that there is no Third Circuit or Supreme Court precedent holding otherwise is critical.  Parker confirms the absence of controlling precedent and reflects the prevailing approach requiring at least reasonable suspicion, and it underscores that the law was not clearly established against Irvin and Gardner. Pearson, 555 U.S. at 244-45.  Given the circumstances, the officers here had at least reasonable suspicion that Beatty may have been hiding drugs on his person.  Even if the officers can be deemed to have been technically wrong about that in retrospect, they certainly had a reasonable belief that they had reasonable suspicion or probable cause to perform a strip search on Beatty.  Where an officer's belief in probable cause is reasonable, he is entitled to qualified immunity.  Karns v. Shanahan, 879 F.3d 504, 522 (3d Cir. 2018).

Therefore, the District Court's grant of summary judgment in favor of the officers on Beatty's Section 1983 claim regarding the strip search on the basis of qualified immunity should be affirmed.

### 4.  First Amendment Retaliation

A.  Standard of Review.

This Court's review of a district court's grant of summary judgment is plenary and the standard is the same as that of the district court: summary judgment is appropriate where "there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Chenault-Vaughan

Fam. P'ship, Ltd. v. MDC Reeves Energy, LLC, 136 F.4th 506 (3d Cir. 2025)

(*citing* Fed. R. Civ. P. 56(a)).

    B.  Beatty Failed to Establish His Claim.

In his final issue on appeal, Beatty contends the District Court erred in

granting the officers summary judgment on his First Amendment retaliation claim.

The standard for First Amendment retaliation requires Beatty to prove three

elements: (1) he engaged in constitutionally-protected activity; (2) the government

responded with retaliation sufficient to deter a person of ordinary firmness from

exercising his or her rights; and (3) the protected activity caused the retaliation.

Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004); Lauren W. v.

DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).  This Court has emphasized that to

satisfy the causation element, a plaintiff must show the protected activity was a

substantial or motivating factor in the decision to take the adverse action.  Suppan

v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000).

The Supreme Court has held the presence of probable cause for an arrest

generally defeats a First Amendment retaliation claim.  Nieves v. Bartlett, 587 U.S.

391, 406 (2019).  There is a narrow exception in which a plaintiff does not need to

establish the absence of probable cause to prove a First Amendment retaliation

case "where officers have probable cause to make arrests, but typically exercise

27

their discretion not to do so." Falcone v. Dickstein, 92 F.4th 193, 211 (3d Cir. 2024) (*quoting* Nieves, 587 U.S. at 393). However, in order for a plaintiff to avail himself of this "slim" exception, he must "present objective evidence" that his arrest occurred under such circumstances. Gonzalez v. Trevino, 144 S. Ct. 1663, 1667 (2024) (*citing* Nieves, 587 U.S. at 407). Beatty offered no such evidence. In any event, a plaintiff claiming First Amendment retaliation must establish the adverse action would not have been taken but for the retaliatory motive. Nieves, 587 U.S. at 399. Beatty has failed to meet his burden on that element as well.

Again contending the officers did not have probable cause for the stop, arrest, or searches, Beatty asserts the officers retaliated against him based upon his alleged protected First Amendment conduct. He suggests retaliatory animus, and not probable cause, was the reason for his stop, arrest, and searches. The District Court interpreted Beatty's purported "protected speech" to be his refusal to provide identification to the officers and his instructions to Lopez to withdraw her consent to search the Altima. Appx27. Plainly, a refusal to provide identification is not protected First Amendment speech. See, e.g., Hiibel v. Sixth Judicial Dist. Court, 542 U.S. 177, 188 (2004) (requiring a suspect to disclose his name during a Terry stop is permissible). Beatty does not explain how instructing Lopez to withdraw her consent to search the Altima is speech protected by the First Amendment.

28

Here, Beatty has not shown he engaged in any protected activity in the first instance. Beatty has not explained how his comment to Lopez on what she should allow with respect to a search of her car somehow amounted to constitutionally protected speech. Nor does Beatty explain how any other actions he took amounted to protected activity under the First Amendment. Even if he did, however, Beatty has completely failed to produce any evidence to show any retaliatory motive or that any such motive was the reason for the arrest and search.

Beatty has utterly failed to connect his alleged injury to any protected conduct. Officer Gardner and Detective Irvin had probable cause to believe a drug crime had been committed. In the absence of consent to search the car, the officers arrested Beatty and impounded the car pending further investigation. There is simply nothing to suggest any retaliatory animus toward speech protected by the First Amendment. Simply stated, Beatty has failed to prove that any action by Detective Irvin was causally linked to any protected activity engaged in by Beatty. In addition, Beatty has not produced any evidence that anyone similarly situated but not engaging in the same sort of allegedly protected speech had not been arrested. Accordingly, his retaliation claim fails as a matter of law as to Detective Irvin.

Even if Beatty could prove his arrest and searches were retaliatory, the proper inquiry in this case is whether Beatty had a "right to be free from retaliatory

29

arrest that is otherwise supported by probable cause." Karns, 879 F.3d at 522

(*quoting* Zaloga v. Borough of Moosic, 841 F.3d 170, 175 (3d Cir. 2016)).  If he

had no such right, qualified immunity applies.  Id.  This Court, in Karns, found no

such clearly established right.  Id. (*citing* Reichle v. Howards, 566 U.S. 658, 665

(2012)). Detective Irvin is entitled to qualified immunity on Beatty's First

Amendment retaliation claim, as well.

Even assuming, *arguendo*, Beatty could satisfy the elements of a retaliation

claim, qualified immunity independently bars his First Amendment retaliation

claim. Qualified immunity applies unless existing precedent placed the

unlawfulness of the challenged conduct "beyond debate" in the factual context

confronted by the officers. District of Columbia v. Wesby, 583 U.S. 48 (2018).

Here, Beatty's alleged "retaliation" is inseparable from the challenged enforcement

actions themselves -- his arrest, searches, and, the stationhouse strip search. But as

the District Court correctly recognized, the constitutional standard governing a

non-institutional strip search was not clearly established on August 31, 2021, as

explained by the District Court:

> Conversely, whether defendants' decision to strip-search Beatty was lawful is not clearly supported by the record. But even assuming it was not, and that Beatty could demonstrate a causal connection between his speech and his strip search, his retaliation claim still would be barred by qualified immunity. Put simply, if binding caselaw does not clearly establish the constitutional standard for engaging in a non-institutional strip search, then caselaw also does not clearly establish the right to be free from retaliation relating to such a strip search. Therefore, the court will grant summary

30

judgment to defendants on this claim.

Appx28.

Where the legality of the underlying enforcement action is not clearly established, a plaintiff cannot defeat qualified immunity by relabeling that same action as "retaliation." See Reichle, 566 U.S. at 664–66. At minimum, reasonable officers could have believed their conduct was lawful under then-existing law; accordingly, Detective Irvin is entitled to qualified immunity on Beatty's First Amendment retaliation claim.

Finally, it is beyond cavil that the officers had legitimate grounds for arresting Beatty based on observable evidence and the behavior of Beatty and Lopez. First, there was the suspicious actions of Beatty and Lopez in an area known for a high prevalence of drug activity. Then, there was an observation of contraband (the presence of marijuana in the vehicle), to which Lopez admitted. Subsequent to that, there was an escalation by Beatty and Lopez, including Lopez assaulting an officer. Given these circumstances, the actions of Detective Irvin and Officer Gardner were based on probable cause derived from the direct observation of apparent illegal activity coupled with Lopez's admission and suspicious behavior. Beatty failed to produce any evidence he engaged in any protected conduct.

31

Beatty also produced no evidence retaliatory action was taken against him because of any protected conduct or that any similarly situated individual not engaging in the same sort of allegedly protected speech had not been arrested. Thus, there is no genuine issue of material fact and summary judgment was properly entered against Beatty as to his First Amendment retaliation claim.

### 5.    Waiver of Beatty's New <u>Groody</u>/<u>Ybarra</u> Theory

"It is well established that arguments not raised before the District Court are waived on appeal." <u>DIRECTV Inc. v. Seijas</u>, 508 F.3d 123, 125 n.1 (3d Cir. 2007). The preservation requirement is not satisfied by loosely gesturing at the general "issue." Rather, to preserve a position for appeal, a party must "unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits." <u>Shell Petroleum, Inc. v. United States</u>, 182 F.3d 212, 218 (3d Cir. 1999) <u>citing</u> <u>Keenan v. City of Philadelphia</u>, 983 F.2d 459, 471 (3d Cir. 1992)("The crucial question regarding waiver is whether defendants presented the argument with sufficient specificity to alert the district court").

Consistent with that principle, the Third Circuit draws a distinction between an "issue" and an "argument." "[F]or parties to preserve an argument for appeal, they must have raised the same *argument* in the District Court—merely raising an *issue* that encompasses the appellate argument is not enough." <u>United States v. Joseph</u>, 730 F.3d 336, 337 (3d Cir. 2013)(emphasis in original). In other words,

raising a broad topic below does not preserve a conceptually distinct theory for the first time on appeal. Id. at 337–40.

Those rules dispose of Beatty's attempt to reframe "clearly established" law on appeal, for the first time, by citing the cases of Doe v. Groody. 361 F.3d 232 (3d Cir. 2004) and Ybarra v. Illinois, 444 U.S. 85 (1979). Specifically, in opposing summary judgment, Beatty's arguments regarding the strip search and qualified immunity revolved around the factual and merits disputes (his contention the officers lacked probable cause) and did not advance the theory he now presses, i.e., that Groody and Ybarra themselves clearly established a particularized probable-cause/individualized-suspicion rule that made the stationhouse strip search unlawful "beyond debate." SAppx23-24; SAppx50-51.  Beatty made no mention whatsoever regarding Groody or Ybarra as the controlling "clearly established" authorities. Id. Because Beatty did not present that argument, or those authorities, "at a point and in a manner" that allowed the District Court to evaluate and rule on them, the argument is waived and should not be considered on appeal. Shell Petroleum, 182 F.3d at 218; Joseph, 730 F.3d at 337; DIRECTV, 508 F.3d at 125 n.1.

Even if this Court were to reach the merits, Groody and Ybarra do not clearly establish the specific rule Beatty advances. Groody addressed the scope of a warrant and whether unnamed persons could be searched based on that warrant,

33

and not the constitutional standard for a stationhouse, non-institutional strip search incident to arrest during a narcotics investigation. 361 F.3d at 239–45. Similarly, Ybarra involved the search of a patron during execution of a premises warrant and stands for the uncontroversial proposition that generalized suspicion tied to a location does not supply individualized cause to search every bystander. 444 U.S. at 91–94. Neither case involves, or "beyond debate" resolves, what level of suspicion is required for a non-institutional strip search of an arrestee under these circumstances, and Beatty cannot transform those factually distinct decisions into the kind of particularized, controlling precedent needed to avoid qualified immunity. See District of Columbia v. Wesby, 583 U.S. 48, 63–64 (2018).

## VI. CONCLUSION

The District Court's judgment should be affirmed. The record evidence demonstrates that Officer Gardner and Detective Irvin smelled marijuana and observed marijuana in plain view inside the vehicle Beatty had been driving, establishing probable cause for Beatty's detention and arrest and supporting the challenged searches. Beatty's attempt to reframe the case around post hoc developments (no seized contraband and no charges) does not undermine probable cause or render the officers' actions unconstitutional.

With respect to the stationhouse strip search, even assuming arguendo that the Court would scrutinize the search more closely on the merits, qualified immunity independently bars liability because Beatty cannot point to binding Supreme Court or Third Circuit precedent clearly establishing the specific rule he advances for a non-institutional strip search incident to arrest in these circumstances. The existing case law does not make unlawfulness beyond debate.

Finally, Beatty's First Amendment retaliation claim fails for the additional reason that probable cause defeats the claim and Beatty has not produced the objective evidence required to invoke the narrow exception. Nor has he identified protected speech that caused the challenged actions or adduced evidence of retaliatory motive. That claim is also barred by qualified immunity.

Accordingly, Appellee Calvin Irvin respectfully requests that this Court affirm the District Court's grant of summary judgment in his favor.

Respectfully submitted,

McCORMICK LAW FIRM

By:   _s/ Austin White_
      Austin White
      PA I.D. No. 312789
      N. Randall Sees
      PA I.D. No. 89386
      Attorneys for Appellee, Calvin Irvin

      835 West Fourth Street
      Williamsport, PA 17701
      (570) 326-5131
      (570) 326-5529 (fax)
      awhite@mcclaw.com
      rsees@mcclaw.com

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I, AUSTIN WHITE, hereby certify that I am a member of the Bar of this

Court.

McCORMICK LAW FIRM

By: <u>*s/ Austin White*</u>
Austin White
PA I.D. No. 312789
N. Randall Sees
PA I.D. No. 89386
Attorneys for Appellee, Calvin Irvin

835 West Fourth Street
Williamsport, PA 17701
(570) 326-5131
(570) 326-5529 (fax)
awhite@mcclaw.com
rsees@mcclaw.com

## <u>CERTIFICATION OF WORD COUNT</u>

I, AUSTIN WHITE, hereby certify that this Brief contains 7,441 words and meets the word count requirements.

McCORMICK LAW FIRM

By:   *s/ Austin White*
Austin White
PA I.D. No. 312789
N. Randall Sees
PA I.D. No. 89386
Attorneys for Appellee, Calvin Irvin

835 West Fourth Street
Williamsport, PA 17701
(570) 326-5131
(570) 326-5529 (fax)
awhite@mcclaw.com
rsees@mcclaw.com

## CERTIFICATION OF SERVICE

I, AUSTIN WHITE, ESQUIRE, hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a true and correct copy of this document via the Court's CMECF system, pursuant to Rule 25(c)(2) of the Federal Rules of Appellate Procedure Rule, on this 15th day of January, 2026.

McCORMICK LAW FIRM

By:   *s/ Austin White*
     Austin White
     PA I.D. No. 312789
     N. Randall Sees
     PA I.D. No. 89386
     Attorneys for Appellee, Calvin Irvin

     835 West Fourth Street
     Williamsport, PA 17701
     (570) 326-5131
     (570) 326-5529 (fax)
     awhite@mcclaw.com
     rsees@mcclaw.com

# CERTIFICATION OF IDENTICAL FILING

I, AUSTIN WHITE, do hereby certify that the document presented for

e-filing is the identical document filed as a hard copy.


McCORMICK LAW FIRM

By:  _s/ Austin White_____
     Austin White
     PA I.D. No. 312789
     N. Randall Sees
     PA I.D. No. 89386
     Attorneys for Appellee, Calvin Irvin

     835 West Fourth Street
     Williamsport, PA 17701
     (570) 326-5131
     (570) 326-5529 (fax)
     awhite@mcclaw.com
     rsees@mcclaw.com

## <u>CERTIFICATION OF VIRUS CHECK</u>

I, AUSTIN WHITE, do hereby certify that the e-filing was checked for a

virus through SentinelOne (version 21.6.4.423) Anti-malware and is virus free.


McCORMICK LAW FIRM

By:    /s/ *Austin White*
       Austin White
       PA I.D. 312789
       N. Randall Sees
       PA I.D. 89386
       Attorneys for Appellee
       Calvin Irvin

       835 West Fourth Street
       Williamsport, PA 17701
       (570) 326-5131
       (570) 326-5529 (fax)
       awhite@mcclaw.com
       rsees@mcclaw.com