IN THE
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

**No. 25-2860**

KYLE BEATTY,
Appellant

v.

CLINTON GARDNER and CALVIN IRVIN
Appellees

**REPLY BRIEF OF APPELLANT**

Appeal from Order, Decision, and Judgment entered
in the United States District Court for the Middle District of Pennsylvania
at No. 4:23-CV-00364-KMN on August 29, 2025

Joshua J. Cochran, Esquire
Pa. I.D.# 206807
Attorney for Appellant
333 Market Street
Williamsport, PA 17701
Telephone: (570) 321-7554
Email: josh@sz-law.com

**TABLE OF CONTENTS**

| | **PAGE** |
|---|---|
| TABLE OF AUTHORITIES | iii |
| ARGUMENT | 4 |
| CONCLUSION | 18 |
| CERTIFICATE OF MEMBERSHIP | 19 |
| CERTIFICATE OF WORD COUNT | 20 |
| CERIFICATE OF IDENTICAL FILING | 21 |
| CERTIFICATE OF VIRUS CHECK | 22 |
| CERTIFICATE OF SERVICE | 23 |

## TABLE OF AUTHORITIES

**PAGE**

## CASES

Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist., 877
     F.3d 136, 146 (3d Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . .    7,9

Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218
     (3rd Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

Doe v. Groody, 361 F.3d 232, 238 (3rd Cir. 2004) . . . . . . . . . . . . . . .    12

Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) . . . . . . . . . . . . . .    10

Irving v. Chester Water Auth., 439 F. App'x 125, 127 (3d Cir. 2011) . . .    6

Lear v. Phoenixville Police v. Dep't, 734 Fed. Appx. 809
     (3d Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

Nieves v. Bartlett, 587 U.S. 391, 401-404 (2019) . . . . . . . . . . . . . . . . .    15

Reppert v. Marino, 259 F. App'x 481, 492 (3d Cir. 2007) . . . . . . . . . . .    9

United States v. Kithcart, 134 F.3d 529, 531 (3d Cir. 1998) . . . . . . . . . .    9

United States v. Parker, 458 F.Supp. 3d 260 (M.D. Pa. 2020) . . . . . . . . .    13,14

**ARGUMENT**

**I.**    **The officers' appeal briefs violate the standard and scope of review at summary judgment and urge this Court to disregard the evidence proffered by Kyle Beatty and the reasonable inferences in his favor and to credit inferences and contested evidence in their favor.**

The scope and standard of review on appeal of a grant of summary judgment is quite well established and may not be violated no matter how urgently the officers entreat.   "We exercise plenary review over a district court's grant of summary judgment. A court may grant a motion for summary judgment if, after it considers all probative materials of record, with inferences drawn in favor of the non-moving party, the court is satisfied that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law."   Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 218 (3rd Cir. 2015).   The officers urge this Court to violate this standard of review and decide contested issues of fact and inferences in their favor.

First, and crucially the officers contend that Officer Gardner approached the vehicle and smelled marijuana coming from it and Officer Gardner and Detective observed a roach and marijuana flakes in the car.   This evidence is contested directly by evidence which includes, (1) the car search at the impound lot found no contraband, marijuana, flakes, roach or otherwise, (2) Mr. Beatty and Ms. Lopez

denied wrongdoing or having marijuana in the car at least 16 times, (3) Detective Irvin conceded that there may very well not be contraband in the car, and 4) Officer Tyson Minier did not recall seeing any paraphernalia in the vehicle.

To begin, the search warrant for the vehicle which was towed to the police impound lot sought "any and all illegal narcotics, and related packaging material, scales, means of ingestion and measuring devices. Specifically marijuana and marijuana related paraphernalia." Appx959. Thus, any "roach" or "weed" in the car was precisely the purpose of the search, and the Return of Search, completed by Gardner after searching, showed "*Nothing Recovered*". Appx629-632, 865, 870-871, 961, 970-971. Notably, nothing that would have been mistaken for a roach and flakes has ever been identified by the officers. This evidence directly **contradicts** the unsubstantiated police claims to have smelled marijuana and to have observed a roach and marijuana flakes in the car. Mr. Beatty must be given the inference from this evidence that **no roach or weed was ever in the car** and further there was no smell emanating from the car. Appx629-632, 865, 870-871, 961, 970-971. Indeed, this fact seemed to be acutely evident to Detective Irvin as he conceded immediately after arresting Mr. Beatty on video that *"there may very well not be"* any contraband in the car, after having already supposedly been shown the roach and flakes by Officer Gardner. Appx 604. Exhibit A (videos)

–5–

video 3, at 3:30-4:40. Fourth, Officer Tyson Minier was allegedly shown the "roach" in the cupholder at the time of the arrest but was unable to confirm seeing anything there at all. Appx1383-1384.   While the trial court credited the officers' bald assertions of a roach and marijuana in the car over this contrary evidence, the court erred, as they are self-serving statements contradicted by the clear evidence of record, including the return of search.   *See e.g.* Irving v. Chester Water Auth., 439 F. App'x 125, 127 (3d Cir. 2011) ("subsequent self-serving deposition testimony is insufficient to raise a genuine issue of material fact.").   In essence, there is a material dispute of fact concerning whether the officers are being truthful in claiming to have seen a roach and flakes or if they used this false assertion to leverage Mr. Beatty and Ms. Lopez during the interaction and later to justify their actions during the seizure and searches.   So, claims of a roach and flakes in the car cannot be credited for probable cause. Thus, the trial court erred.

II. **Kyle Beatty waived no argument pertaining to the second prong of the qualified immunity analysis at summary judgment.**

The officers next erroneously contend that Mr. Beatty somehow waived at summary judgment argument presented in his appeal brief addressing an issue raised by the trial court on its own as to whether the right to be free from the strip search was clearly established.   However, Mr. Beatty did cite case law

demonstrating the violation of law existed well before August 2021, and whether the right was clearly established was not raised by the officers at summary judgment but rather by the trial court. At summary judgment, Irvin and Gardner only argued the first prong of qualified immunity, whether Mr. Beatty had proven a violation of a constitutional right, and they **did not assert in any way** , whether in their briefs or reply briefs that the second element of qualified immunity was being raised. Rather, the court raised that on its own, for the first time, in its decision. And, the court did so despite Mr. Beatty citing cases in his brief opposing summary judgment to indicate that the search was palpably illegal well before August 2021. Thus, waiver is wholly inapplicable for several reasons.

First, the law does not support any finding of waiver. "The terms waiver and forfeiture – though often used interchangeably by jurists and litigants – are not synonymous." Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist., 877 F.3d 136, 146 (3d Cir. 2017). "Forfeiture is the failure to make the timely assertion of a right, an example of which is an inadvertent failure to raise an argument." Id. While "waiver, in contrast, is the intentional relinquishment or abandonment of a known right." Id. Irvin invokes waiver, not forfeiture, and does not provide any evidence of intentional relinquishment of a known right (nor could he in the facts of this matter), it is clear that waiver is inapplicable and Mr. Beatty's argument

–7–

concerning the second prong of immunity must be reviewed on the merits.

Second, even if Irvin's waiver argument is analyzed instead under forfeiture, Mr. Beatty's arguments must be reviewed on the merits. The focus for finding forfeiture lies in "the failure to make the **timely** assertion of a right." Id. (emphasis added).   Here, neither Irvin nor Gardner raised the second prong of qualified immunity at summary judgment.   Gardner merely listed the two elements of qualified immunity and then argued the first prong only: "As Plaintiff has failed to properly plead constitutional violations as to Defendant Gardner – as argued in the individual sections above – he is entitled to qualified immunity." Doc. 23, at 22.   While, at summary judgment, Irvin simply contended as follows:

> The facts of record substantiate that Defendant Irvin's actions were reasonable and the arrest was supported by probable cause.   Irvin's actions were reasonable and the arrest was supported by probable cause. The Court has in its possession the bodycam videos – it is respectfully requested that the Court review the footage.   Upon review, Detective Irvin is confident that the Court will reach the same conclusion – he acted reasonably and in accordance with the law. Doc. 30, at 23.

Therefore, neither officer raised the second prong of qualified immunity, choosing instead to rest on the first element, whether Mr. Beatty had proven a constitutional violation.   In fairness to Officer Gardner, he has not joined in this absurd waiver argument.   In short, the trial court first raised the "clearly established" prong in its decision granting summary judgment.   Mr. Beatty has

–8–

addressed this issue on appeal in depth as this was the first "timely" opportunity for him to do so.   Therefore, forfeiture is inapplicable as well.

Third, although neither officer raised the second prong of qualified immunity, whether the right was clearly established, at summary judgment, Mr. Beatty has preserved the issue nonetheless. As noted earlier, the officers focused on the first prong, whether a violation had been proven. Doc. 23, at 22; Doc. 30, at 23. Nonetheless, Mr. Beatty cited case law in his summary judgment brief, demonstrating that the strip search incident to arrest was illegal due to insufficient particularized suspicion based upon United States v. Kithcart, 134 F.3d 529, 531 (3d Cir. 1998) and Reppert v. Marino, 259 F. App'x 481, 492 (3d Cir. 2007), which both significantly predate August 2021, when the incident occurred.   This argument and these citations certainly preserved the arguments advanced in the appeal brief and show the right was clearly established.

Fourth, even if this Court would somehow find forfeiture triggered, the merits of Mr. Beatty's arguments should be addressed.   To begin, appeals courts may reach the merits of a forfeited issue in exceptional circumstances, such as "when a manifest injustice would result from the failure to consider the new issues."   Barna, 877 F.3d at 147.   Furthermore, "although our narrow exceptional circumstances rule applies to all forfeited issues, we have been slightly less

reluctant to bar consideration of a forfeited pure question of law." Id. Here, "the issue of qualified immunity is generally a question of law, although a genuine issue of material fact will preclude summary judgment on qualified immunity." Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009). So, the application of the second prong of qualified immunity presents a pure question of law and failure to address Mr. Beatty's arguments concerning the "clearly established" violation of his rights with respect to the strip search would result in a manifest injustice, where Mr. Beatty was never placed on notice that the second prong was under dispute, and the trial court also found a lack of probable cause for the strip search resulting in a violation of his rights. Thus, Mr. Beatty would have prevailed at summary judgment if the trial court had not raised the second prong on its own. In conclusion, the Court should address the merits of Mr. Beatty's argument that the trial court erred in finding the right not clearly established.

III. **Ms. Lopez's "admission" of a roach in her vehicle from her having smoked it in Massachusetts provides no probable cause to arrest or search Kyle Beatty.**

The officers contend that Ms. Lopez's sentences that "It's a roach. I'm from Massachusetts. I have an old roach from when I smoked in Massachusetts literally two days ago. Where it's legal. " provide probable cause to strip search Kyle Beatty since the statement occurred prior to the strip search. Appx604. Exhibit A

(videos), video 1, at 4:15- 4:25.   This is wrong on so many levels.

First, the trial court's finding the sentence is an admission of a roach being in the vehicle is a violation of the standard of review as her comment *must* be construed in Mr. Beatty's favor because she was responding to Mr. Beatty's hypothetical in a conversation in which police were continuing to lie about the existence of a roach and marijuana flakes on the floor. Specifically, Kyle Beaty said to Detective Irving, "If you say there is a roach in there, that might be the most that you will find in there.   I'm saying if you see one." Appx604. Exhibit A (videos), video 3, at 4:00-4:15.    To which Ms. Lopez then appended to Mr. Beatty's hypothetical, "It's a roach. I'm from Massachusetts. I have an old roach from when I smoked in Massachusetts literally two days ago.   Where it's legal. " Appx604. Exhibit A (videos), video 1, at 4:15- 4:25.   Key to the interpretation of this exchange, is the context of Mr. Beatty's hypothetical statement and the record evidence, including the Return of Search, which shows conclusively there was no marijuana or roach in the car. Appx629-632, 865, 870-871, 961, 970-971.   Thus, the sentences cannot be construed as an admission against Mr. Beatty.

Second, a crucial point remains concerning timing.   Mr. Beatty was arrested when he was handcuffed immediately after he had suggested to Ms. Lopez she revoke permission to search the car. Appx604.   Exhibit A (videos), video 1, at

–11–

2:00-2:40. And Irvin searched Beatty again to place him in the car shortly after he was handcuffed. Appx604. Exhibit A (videos), video 1, at 3:40-4:05, video 3, at 3:30-4:30.   Both his arrest and the search incident to that arrest occurred ***prior*** to Lopez's saying anything at all about any roach hypothetically being in the car. So, her statement was irrelevant to probable cause for **his** arrest and search incident to the arrest, because ***both had already occurred***.

Third, the "admission" by Ms. Lopez also provides no probable cause to strip search Mr. Beatty at the station after his arrest, in contradiction to the claims of the officers.   This is because, the "admission" implicated Ms. Lopez and exonerated Mr. Beatty.   Probable cause must be particularized to each person and not generalized to whomever happens to be in an area.   Doe v. Groody, 361 F.3d 232, 238 (3rd Cir. 2004).   Mr. Beatty had been searched **twice** prior to the strip search and police were focused only on a roach and flakes in the car owned by Ms. Lopez, so there was no probable cause to support the strip search, even including what Ms. Lopez said concerning what may have been inside her car from her own out of state actions.   These provide no particularized facts implicating Mr. Beatty and supporting a strip search. Thus, the court erred in granting summary judgment and nothing the officers argue changes that inescapable conclusion.

**IV.    Caselaw cited by the officers does not undercut the clearly established**

**violation of law in Mr. Beatty's strip search.**

The officers raise two cases to contend that the strip search did not violate Mr. Beatty's clearly established rights.   The cases are Lear v. Phoenixville Police Dep't, 734 Fed. Appx. 809 (3d Cir. 2018) (unpublished) and United States v. Parker, 458 F.Supp. 3d 260 (M.D. Pa 2020).   Neither case helps the officers.

In Lear, police arrested a purported drug dealer and found two cell phones and a large amount of cash on his person.   Lear, 734 Fed. Appx. at 811.   They then went to conduct a strip search based on the cash and phones, his criminal history, his arrest in a high drug and crime area, and information from an informant that he frequently stored drugs in his crotch.   Id.   After the search began, but while he was still in his boxers, the person removed drugs from his underwear and handed them to the officers. Id. They then required him to undergo the strip search. Id. The Court found the strip search was justified by the specific facts listed above which provided particularized probable cause for the strip search.   Id. at 813.   The Court expressly did not address the question of whether the search was shielded by qualified immunity. Id. at 813, at n. 10.   Here, none of the facts apply to Mr. Beatty, so Lear is legally and factually inapposite.

Parker actually supports the right being clearly established.   In that case, police observed a controlled sale of cocaine between Parker and a confidential

informant but did not arrest him.    Parker, 458 F. Supp. 3d at 261-262. Around 4 months later another controlled buy was arranged through the same confidential informant, but police arrested Parker when he arrived where the transaction was to occur.    Id. at 262.    He was searched incident to his arrest and a cell phone and $1,100 was found, but no drugs.    Id.    The confidential informant told police that Parker "frequently concealed drugs in his underwear or anal cavity", information which had been confirmed independently through another confidential informant. Id.    He was strip searched and a plastic bag containing cocaine and other paraphernalia was recovered from his anal cavity.    Id. at 262-263. In finding the strip search legal, the court noted "certainly, the Fourth Amendment does not permit warrantless strip searches incident to arrest for every infraction."    Id. at 264.    The court noted that "his offense of arrest was possession with intent to distribute cocaine, a felony drug-trafficking offense rather than an unrelated misdemeanor."    Id. at 265.    Noting the above specific and particularized facts, the court found the strip search proper.    None of these facts apply to Mr. Beatty, as there was no drug paraphernalia found on him in two prior searches, he was never charged, and the only alleged drug connection was a roach and flakes in a car, not on himself.    So, this case further demonstrates, and as the trial court found, that there was no particularized suspicion to justify the strip search.    And this case was

decided in May 2020, well prior to the August 2021 strip search of Mr. Beatty.

Thus, these cases actually help show the right was clearly established.

**V.    The appeal brief addresses the trial court's erroneous finding that there was no causation because there was probable cause for the arrest and the search incident to the arrest.**

The officers also erroneously contend that Mr. Beatty failed to address the trial court's finding that there was no causation on the First Amendment retaliation claim with respect to the stop, the arrest and the search incident to the arrest because the Appeal Brief focused on probable cause.   This argument is just wrong, legally, and factually, and mistakes the role of probable cause in the chain of causation and the trial court's decision.   As has been clear for quite some time, in retaliatory arrest cases, probable cause is inextricably tied into the element of causation, such that a plaintiff must plead and prove an absence of probable cause as an essential element of causation.   Nieves v. Bartlett, 587 U.S. 391, 401-404 (2019).   The trial court understood this and focused only on this element of causation in finding, albeit erroneously, "This [causation] analysis turns on whether probable cause existed for plaintiff's arrest.   If it did, a retaliatory arrest claim fails.   As noted above **defendants had probable cause to arrest Beatty**. Therefore, this claim cannot survive summary judgment.   Nor can Beatty demonstrate a causal connection between his stop . . .   and search incident to his

–15–

arrest with purported retaliatory animus **because those actions were lawful**. Therefore, his First Amendment retaliation claim on these grounds fail, too." Appx27-28 (emphasis added).   The trial court was wrong in how it applied the law of probable cause inherent in causation in this case to the facts of this case, but it was correct in its understanding that generally speaking the presence of probable cause can break the chain of causation.   That finding is what is challenged on appeal, and the officers are completely wrong in the assertion that the trial court found that causation failed in any way whatsoever separate from the trial court's finding of probable cause as the sole factor breaking the chain of causation for Mr. Beatty.   Indeed, the retaliation by police occurred within seconds of Mr. Beatty's protected speech and occurred in real time on the video.   Causation in the general sense could not be more clear.

**VI.   The trial did not reach the issue of whether Mr. Beatty's speech was protected and that issue is not before this Court.**

On appeal, Detective Irvin raises one last contention in support of the dismissal of the First Amendment retaliation claim, namely that somehow Mr. Beatty did not engage in protected conduct.     However, the trial court did not reach that issue in granting summary judgment.   As noted earlier, the trial court looked only at probable cause and its impact on causation saying, "This analysis

–16–

turns on whether probable cause existed for plaintiff's arrest. . . . Nor can Beatty demonstrate a causal connection between his stop . . .  and search incident to his arrest with purported retaliatory animus because those actions were lawful. Therefore, his First Amendment retaliation claim on these grounds fail, too." Appx27-28 (emphasis added).   The trial court did not expressly address the protected nature of Mr. Beatty's speech, but to the extent that it focused only on the issue of probable cause, it impliedly found protected activity and the officers did not appeal that issue. Even a cursory review of the video, however, clearly demonstrates constant protected speech by Mr. Beatty throughout the interaction, such as asserting his and Ms. Lopez's rights throughout the interaction, asking bystanders to record the interaction, recommending to Ms. Lopez that she revoke consent, criticizing police actions and excesses during the incident, and above all protesting their innocence.   So, the issue of whether Mr. Beatty's speech was protected is not before this court and may not be addressed in this appeal, but even if it somehow is addressed there is absolutely no merit to the contention.

## CONCLUSION

In conclusion, this Appeal is not difficult.    The trial court decided summary judgment as a jury of one and did not follow the standard of review. The officers have doubled down on that error in their Briefs. Thus, Kyle Beatty requests this Court to grant his appeal in full, reverse the trial court's grant of summary judgment, and remand the matter for trial on all counts in the Complaint.

Respectfully submitted,

**SCHEMERY ZICOLELLO, P.C.**

By:    *s/Joshua J. Cochran*
Joshua J. Cochran, Esquire
Pa. I.D.# 206807
Attorneys for Appellant

333 Market Street
Williamsport, PA 17701
Telephone: (570) 321-7554
Email: josh@sz-law.com

−18−

## <u>CERTIFICATE OF MEMBERSHIP</u>

I, Joshua J. Cochran, hereby certify that I am a member of the Bar of this Court.

**SCHEMERY ZICOLELLO, P.C.**

By:    *s/Joshua J. Cochran*
        Joshua J. Cochran, Esquire
        Pa. I.D.# 206807
        Attorneys for Appellant

        333 Market Street
        Williamsport, PA 17701
        Telephone: (570) 321-7554
        Email: josh@sz-law.com

## CERTIFICATE OF WORD COUNT

I, Joshua J. Cochran, hereby certify that this Brief contains 3,479 words and meets the word count requirements.

**SCHEMERY ZICOLELLO, P.C.**

By:    *s/Joshua J. Cochran*
        Joshua J. Cochran, Esquire
        Pa. I.D.# 206807
        Attorneys for Appellant

        333 Market Street
        Williamsport, PA 17701
        Telephone: (570) 321-7554
        Email: josh@sz-law.com

## <u>CERTIFICATE OF IDENTICAL FILING</u>

I, Joshua J. Cochran, do hereby certify that the document presented for e-filing is the identical document filed as a hard copy.

**SCHEMERY ZICOLELLO, P.C.**

By:  *s/Joshua J. Cochran*
Joshua J. Cochran, Esquire
Pa. I.D.# 206807
Attorneys for Appellant

333 Market Street
Williamsport, PA 17701
Telephone: (570) 321-7554
Email: josh@sz-law.com

## CERTIFICATE OF VIRUS CHECK

I, Joshua J. Cochran, Esquire, do hereby certify that the e-filing was

checked for a virus through Malwarebytes' Anti-malware and is virus free.

**SCHEMERY ZICOLELLO, P.C.**

By:    _s/Joshua J. Cochran_____
            Joshua J. Cochran, Esquire
            Pa. I.D.# 206807
            Attorneys for Appellant

            333 Market Street
            Williamsport, PA 17701
            Telephone: (570) 321-7554
            Email: josh@sz-law.com

## <u>CERTIFICATE OF SERVICE</u>

I, Joshua J. Cochran, hereby certify that I served a true and correct copy of the Reply Brief of Appellant via electronic mail on this 5th day of February, 2026:

**Electronically:**

electronic_briefs@ca3.uscourts.gov

slaughli@travelers.com

awhite@mcclaw.com

**SCHEMERY ZICOLELLO, P.C.**

By:    s/Joshua J. Cochran
      Joshua J. Cochran, Esquire
      Pa. I.D.# 206807
      Attorneys for Appellant

      333 Market Street
      Williamsport, PA 17701
      Telephone: (570) 321-7554
      Email: josh@sz-law.com